REC'D JUN 14

URVE DRAFT OF FEDERAL CASE

**Urve Maggitti**
58 E Swedesford Road, Apt 327
Malvern, PA 19355
Phone: 917-340-0561
Email: urve.maggitti@gmail.com

## IN THE UNITED STATES DISTRICT COURT
### for the
### EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------------------------------

**URVE MAGGITTI,**
               *Plaintiff*

**Hon. BRET M. BINDER,** in both his individual
and official capacity as Judge
**Hon. ANTHONY T. VERWEY,** in both his individual
and official capacity as Judge
**Hon. WILLIAM P. MAHON**, in both his individual
and official capacity as Judge
**Hon. MARTIN G. GOCH**, in both his individual
and official capacity as Magisterial District Court Judge
**Hon. MARC J. LIEBERMAN** in both his individual
and official capacity as Magisterial District Court Judge
**Hon. JOHN HALL,** in both his individual
and official capacity as President Judge
of Court of Common Pleas
**Hon. DEBRA TODD,** in both her individual
and official capacity as Chief Justice
of Supreme Court of Pennsylvania
**DEB RYAN,** in both her individual
and official capacity as District Attorney, Chester County
**DANIEL E ROLAND,** in both his individual
and official capacity as Assistant District Attorney,
Chester County
**FREDDA L. MADDOX,** in both her individual
and official capacity as **Chester County Sheriff**
**ROSANA CASTRO,** in both her individual
and official capacity as Deputy Clerk,
County of Chester Office of the Sheriff

**Case NO.**

**COMPLAINT**
**Cause for injunctive relief**
**DEMAND FOR JURY**
**TRIAL ON ALL COUNTS**
**APPLICABLE**

**DEMAND FOR GRAND JURY**

**DEBBIE HUNTER,** in both her individual
and official capacity as Support Staff Supervisor
Chester County, Office of the Sheriff
**Hon. JACK A. PANELLA,** in both his individual
and official capacity as President Judge
of Superior Court of Pennsylvania
**MOTION'S JUDGE(S),** in both his/her individual
and official capacity(ies) as Judge, Superior Court of Pennsylvania
**BENJAMIN D. KOHLER,** Esq., in both his individual and official
capacity as Deputy Prothonotary, Superior Court of Pennsylvania
**AMY DREIBELBIS,** in both her individual and official
capacity as Deputy Prothonotary, Supreme Court of Pennsylvania
**HILLARY J. MOONAY,** in both her individual and official
capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP
**DAVID A. NASATIR,** in both his individual and official
capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP
**MATHIEU J. SHAPIRO,** in both his individual and official
capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP
**THOMAS A. LEONARD III,** in both his individual and official
capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP
**NICHOLAS PODUSLENKO,** in both his individual and official
capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP,
**MELISSA BLANCO,** in both her individual and official
capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP
**DAVID LADOV,** in both her individual and official
capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP
**ENRICO PAGANELLI,** in both his individual and official
capacity as attorney at Testa & Pagnanelli, LLC
Judge **RONALD S. MARSICO, PJ** , in both individual and official
capacity as a Judge of the Court of Judicial Discipline
Judge **DANIEL D. MCCAFFERY,** in both individual and official
capacity as a Judge of the Court of Judicial Discipline
Judge **DANIEL E. BARANOSKI,** in both individual and official
capacity as a Judge of the Court of Judicial Discipline
Judge **JILL RANGOS,** in both individual and official capacity as
a Judge of the Court of Judicial Discipline
Judge **THOMAS E. FLAHERTY,** in both individual and official
capacity as a Judge of the Court of Judicial Discipline
Judge **SONYA M. TILGHMAN,** in both individual and official
capacity as a Judge of the Court of Judicial Discipline
Judge **CHARLES L. BECKER,** in both individual and official
capacity as a Judge of the Court of Judicial Discipline
**JOSEPH U. METZ** Counsel, in both individual and official
capacity as a Judge of the Court of Judicial Discipline
Hon. **WILLIAM C. WENNER;** in both individual and official

capacity as member of the Court of Judicial Discipline
**NANCY L. CLEMENS;** in both individual and official capacity
member of the Court of Judicial Discipline
Rev. **JAMES P. MCCLOSKEY**, C.S.Sp., Ph.D. , in both individual
and official capacity as member of the Court of Judicial Discipline
Hon. **SUSAN P. GANTMAN**, in both individual and official capacity
as member of the Court of Judicial Discipline
Hon. **RENÉE COHN JUBELIRER**, in both individual and
official capacity as member of the Court of Judicial Discipline
**ANDREW E. MASICH**, Ph.D. in both individual and official
capacity as member of the Court of Judicial Discipline
**MICHAEL BRUNELLE**, in both individual and official
capacity as member of the Court of Judicial Discipline
**SCOTT B. COOPER**, Esquire, in both individual and official
capacity as member of the Court of Judicial Discipline
**SUDHIR R. PATEL**, Esquire, in both individual and official
capacity as member of the Court of Judicial Discipline
**TARA MOBLEY,** in both individual and official capacity as
member of the Court of Judicial Discipline
**THOMAS J. FARRELL**, in both individual and official capacity as
Chief Disciplinary Counsel Office Of Chief Disciplinary Counsel,
The Disciplinary Board of the Supreme Court of Pennsylvania
**RAYMOND S. WIERCISZEWSKI,** in both individual and official capacity as
Deputy Chief Disciplinary Counsel Office Of Chief Disciplinary Counsel,
The Disciplinary Board of the Supreme Court of Pennsylvania
**JESSE G. HEREDA**, in both individual and official capacity as Executive Director,
Executive Office , The Disciplinary Board of the Supreme Court of Pennsylvania
**DANA C. BELELLA**, in both individual and official capacity as Assistant Director,
Executive Office, The Disciplinary Board of the Supreme Court of Pennsylvania
**MARCEE D. SLOAN**, in both individual and official capacity as Board Prothonotary
Executive Office, The Disciplinary Board of the Supreme Court of Pennsylvania
**SUZANNE E. PRICE**, in both individual and official capacity as Attorney Registrar
Executive Office , The Disciplinary Board of the Supreme Court of Pennsylvania
**LAURA K. MOHNEY,** in both individual and official capacity as Counsel to the Board
Executive Office , The Disciplinary Board of the Supreme Court of Pennsylvania
**KIMBERLY M. HENDERSON,** in both individual and official capacity as Special Counsel
Executive Office , The Disciplinary Board of the Supreme Court of Pennsylvani
**JERRY M. LEHOCKY,** in both individual and official capacity as Esquire Board Chair,
Board of The Disciplinary Board of the Supreme Court of Pennsylvania
**DION G. RASSIAS**, in both individual and official capacity as Esquire Board Vice-Chair.
Board of The Disciplinary Board of the Supreme Court of Pennsylvania
**JOSHUA M. BLOOM,** in both individual and official capacity as Board
Member of The Disciplinary Board of the Supreme Court of Pennsylvania
**CELESTE L. DEE;** in both individual and official capacity as Board
Member of The Disciplinary Board of the Supreme Court of Pennsylvania
**LAURA E. ELLSWORTH,** in both individual and official capacity as

Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania
**CHRISTOPHER M. MILLER,** in both individual and official capacity as
Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania
**ROBERT J. MONGELUZZI,** in both individual and official capacity as
Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania
**GRETCHEN A. MUNDORFF,** in both individual and official capacity as
Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania
**JOHN C. RAFFERTY, JR.,** in both individual and official capacity as
Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania
**HON. ROBERT L. REPARD;** in both individual and official capacity as
Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania
**DAVID S. SENOFF,** in both individual and official capacity as Board Member of The
Disciplinary Board of the Supreme Court of Pennsylvania
**SHOHIN H. VANCE,** in both individual and official capacity as Board Member of The
Disciplinary Board of the Supreme Court of Pennsylvania
**RAMONA M. MARIANI,** in both individual and official capacity as
Disciplinary Counsel-in-Charge,The Disciplinary Board of the Supreme Court of Pennsylvania
**ANTHONY P. SODROSKI,** in both individual and official capacity as Disciplinary
Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania
**HAROLD E. CIAMPOLI, JR.,** in both individual and official capacity as
Disciplinary Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania
**KRISTA K. BEATTY,** in both individual and official capacity as Disciplinary
Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania
**JAMES M. FOX,** in both individual and official capacity as Disciplinary
Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania
**JANA M. PALKO,** in both individual and official capacity as (Central Intake) Disciplinary
Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania/

*Defendants*

COMES NOW, Plaintiff, Urve Maggitti, (hereafter "Plaintiff"), as pro se, before this Court to sue Defendants for monetary damages arising from malicious or wantonly deprivation of rights under color of law, to seek declaratory and injunctive relief, and to demand empanelment of a federal Grand Jury, with reservation of right to amend this Complaint, stating:

## INTRODUCTION

This action arises from concerted state and private actors' malicious or wanton conspiratorial use of statute, regulation, and custom under color of law – initiated after Plaintiff had sued Defendants from the Obermayer Rebmann Maxwell & Hippel LLP firm. By false accusation lacking Criminal Rules of Procedure, application and essential elements to force a criminal

charge and deprive First Amendment rights, all Defendants have colluded to exacerbate by obfuscations, negligence of law, and abuse.  Such treatment has thwarted all of Plaintiff's judicial attempts to seek remedy for the first damages as they seek to inflict further damage from further deprivation of rights for due process.  Most egregiously, Defendants' actions have violated their oaths to the United States and Pennsylvania Constitutions.

Thus, Plaintiff, the aggrieved party, petitions this court under authority of **42 U.S.C. § 1983** seeking damages from the named Defendants in their official capacities (crimes within scope of their jobs), and in their individual capacities (crimes outside scope of their jobs) which proximately damaged Plaintiff.  Plaintiff will demonstrate the harms and injuries to which, as a citizen of the United States and Pennsylvania, she was subjected and which violated and deprived her federal, constitutionally-protected rights, privileges, and immunities inter alia the 14th Amendment of The United States Constitution "so 'clearly established' that a reasonable official would understand that what he is doing violates that right." **Brennan v. Township of Northville, 78 F.3d 1152, 1154 (6th Cir. 1996);** with "contours …so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." **District of Columbia v. Wesby, 138 S. Ct. 16 at 589 (2018),** thus forfeiting immunity.

> "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."
> **Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)**

Plaintiff also asks the Court to grant emergency injunctive relief to prevent a false criminal charge against Plaintiff to mascarade the harms and injuries caused by Defendants for which Plaintiff seeks remedy.

Plaintiff further asks the Court to convene a federal grand jury to investigate the allegations set forth herein for what Plaintiff alleges as Defendants' violations of federal law, pursuant to Racketeer Influenced and Corrupt Organizations Act, **18 U.S.C. § 1964** *et seq.* ("RICO"),  **18 U.S. Code § 241** - Conspiracy against rights, **18 U.S.C. § 242** - Deprivation of rights under color of law; **18 U.S. Code § 1964** - Civil remedies. Or  at least under Common Law Civil Conspiracy.

## JURISDICTION

"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it. It is the only supreme power in our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives." *United States v. Lee*, *106 U.S. 196, 220, 1 S. Ct. 240, 261, 27 L. Ed. 171 (1882)*

1. Jurisdiction is proper in this court because this action arises under federal law:

    A. **Title 28 U.S.C. §1331** (federal question), as it arises under the violations of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution by the named Defendants.

    B. **Title 28 U.S.C. § 1343** because Plaintiff brings the case to prevent imminent deprivations, under color of state law, of rights, privileges, and immunities, secured by the United States Constitution and because it seeks to recover damages and secure equitable relief under an Act of Congress.

    C. **Title 42 U.S.C. § 1983** which gives this Court the authority to grant requested relief for the cause of action pursuant to Civil Action for Deprivation of Rights constitutional rights;; and **42 U.S.C. § 1988** - Proceedings in vindication of civil rights;

    D. **Title 28 U.S.C. § 2202,** to secure preliminary and injunctive relief from imminent deprivations of Plaintiff's rights to be secure in her person and her rights.

    E. **Title 28 U.S.C. § 2201 (Declaratory Judgment Act), 28 U.S.C.A. § 2202** (necessary or proper relief based on a declaratory judgment).

    F. **Title 18 U.S. Code § 241** - Conspiracy against rights; Title **18 U.S.C. § 242** - Deprivation of rights under color of law.

    G. Title **18 U.S. Code § 1964** - Civil remedies And as it involves subject-matter jurisdiction pursuant to **Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964** *et seq.* ("**RICO**")

    H. Common Law Civil Conspiracy.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims against Defendants in their official and individual capacities pursuant to **28 U.S.C. § 1367** because Plaintiff's claims

are so related within the Court's original jurisdiction that they form part of the same case of controversy under Article 3 of the US Constitution.

## VENUE

3. Venue is proper in this court under 28 USC § 1391 because Plaintiff is a resident of Chester County, Commonwealth of Pennsylvania, and because it is a judicial district where Defendant reside, and the substantial part of the events or omissions giving rise to this complaint occurred herein.

## PARTIES

4. Plaintiff URVE MAGGITTI, is an individual who is a citizen of the Commonwealth of Pennsylvania.

5. Defendant, Hon. BRET M. BINDER, is an individual who is a citizen of the Commonwealth of Pennsylvania. Binder is sued in both his individual and official capacity as Judge.

6. Defendant, Hon. ANTHONY T. VERWEY, is an individual who is a citizen of the Commonwealth of Pennsylvania. Verwey is sued in both his individual and official capacity as Judge.

7. Defendant, Hon. WILLIAM P. MAHON, is an individual who is a citizen of the Commonwealth of Pennsylvania. Mahon is sued in both his individual and official capacity as Judge.

8. Defendant, Hon. MARTIN G. GOCH, is an individual who is a citizen of the Commonwealth of Pennsylvania. Goch is sued in both his individual and official capacity as Magisterial District Court Judge.

9. Defendant, Hon. MARC J. LIEBERMAN, is an individual who is a citizen of the Commonwealth of Pennsylvania. Lieberman is sued in both his individual and official capacity as Magisterial District Court Judge.

10. Defendant, Hon. JOHN HALL, is an individual who is a citizen of the Commonwealth of Pennsylvania. Hall is sued in both his individual and official capacity as President Judge of Court of Common Pleas.

11. Defendant, Hon. DEBRA TODD, is an individual who is a citizen of the Commonwealth of Pennsylvania. Todd is sued in both her individual and official capacity as Chief Justice of Supreme Court of Pennsylvania.

12. Defendant, DEB RYAN, is an individual who is a citizen of the Commonwealth of Pennsylvania. Ryan is sued in both her individual and official capacity as District Attorney, Chester County.

13. Defendant, DANIEL E ROLAND, is an individual who is a citizen of the Commonwealth of Pennsylvania. Roland is sued in both his individual and official capacity as Assistant District Attorney, Chester County.

14. Defendant, FREDDA L. MADDOX, is an individual who is a citizen of the Commonwealth of Pennsylvania. Maddox is sued in both her individual and official capacity as Chester County Sheriff.

15. Defendant, ROSANA CASTRO, is an individual who is a citizen of the Commonwealth of Pennsylvania. Castro is sued in both her individual and official capacity as Deputy Clerk, County of Chester Office of the Sheriff.

16. Defendant, DEBBIE HUNTER, is an individual who is a citizen of the Commonwealth of Pennsylvania. Hunter is sued in both her individual and official capacity as Support Staff Supervisor Chester County, Office of the Sheriff.

17. Defendant, Hon. JACK A. PANELLA, is an individual who is a citizen of the Commonwealth of Pennsylvania. Panella in both his individual and official capacity as President Judge of Superior Court of Pennsylvania.

18. Defendant, BENJAMIN D. KOHLER, Esq., is an individual who is a citizen of the Commonwealth of Pennsylvania. Kohler is sued in both his individual and official capacity as Deputy Prothonotary, Superior Court of Pennsylvania.

19. Defendant, AMY DREIBELBIS, is an individual who is a citizen of the Commonwealth of Pennsylvania. Dreeibelbis is sued in both her individual and official capacity as Deputy Prothonotary, Supreme Court of Pennsylvania.

20. Defendant, HILLARY J. MOONAY, is an individual who is a citizen of the Commonwealth of Pennsylvania. Moonay is sued in both her individual and official capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP.

21. Defendant, DAVID A. NASATIR, is an individual who is a citizen of the Commonwealth of Pennsylvania. Nasatir is sued in both his individual and official capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP.

22. Defendant, MATHIEU J. SHAPIRO, is an individual who is a citizen of the Commonwealth of Pennsylvania. Shapiro is sued in both his individual and official capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP.

23. Defendant, THOMAS A. LEONARD III, is an individual who is a citizen of the Commonwealth of Pennsylvania. Leonard is sued in both his individual and official capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP.

24. Defendant, NICHOLAS PODUSLENKO, is an individual who is a citizen of the Commonwealth of Pennsylvania. Poduslenko is sued in both his individual and official capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP.

25. Defendant, MELISSA BLANCO, is an individual who is a citizen of the Commonwealth of Pennsylvania. Blanco is sued in both her individual and official capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP.

26. Defendant, DAVID LADOV, is an individual who is a citizen of the Commonwealth of Pennsylvania. Ladov is sued in both her individual and official capacity as attorney at Obermayer Rebmann Maxwell & Hippel LLP.

27. Defendant, ENRICO PAGANELLI, is an individual who is a citizen of the Commonwealth of Pennsylvania. Paganelli is sued in both his individual and official capacity as attorney at Testa & Pagnanelli, LLC.

28. Defendant, Judge RONALD S. MARSICO, PJ , is an individual who is a citizen of the Commonwealth of Pennsylvania. Marsico is sued in both his individual and official capacity as a Judge of the Court of Judicial Discipline.

29. Defendant, Judge DANIEL D. MCCAFFERY, is an individual who is a citizen of the Commonwealth of Pennsylvania. McCaffery is sued in both his individual and official capacity as a Judge of the Court of Judicial Discipline .

30. Defendant, Judge DANIEL E. BARANOSKI, is an individual who is a citizen of the Commonwealth of Pennsylvania. Baranoski is sued in both his individual and official capacity capacity as a Judge of the Court of Judicial Discipline.

31. Defendant, Judge JILL RANGOS, is an individual who is a citizen of the Commonwealth

of Pennsylvania. Rangos is sued in both her individual and official capacity as a Judge of the Court of Judicial Discipline .

32. Defendant, Judge THOMAS E. FLAHERTY, is an individual who is a citizen of the Commonwealth of Pennsylvania. Flaherty is sued in both his individual and official capacity as a Judge of the Court of Judicial Discipline.

33. Defendant, Judge SONYA M. TILGHMAN, is an individual who is a citizen of the Commonwealth of Pennsylvania. Tilghman is sued in both his individual and official capacity as a Judge of the Court of Judicial Discipline .

34. Defendant, Judge CHARLES L. BECKER, is an individual who is a citizen of the Commonwealth of Pennsylvania. Becker is sued in both his individual and official capacity capacity as a Judge of the Court of Judicial Discipline.

35. Defendant, JOSEPH U. METZ is an individual who is a citizen of the Commonwealth of Pennsylvania.Counsel, Metz is sued in both his individual and official capacity as a Judge of the Court of Judicial Discipline.

36. Defendant,  Hon. WILLIAM C. WENNER, is an individual who is a citizen of the Commonwealth of Pennsylvania. Wenner is sued in both his individual and official capacity as member of the Court of Judicial Discipline.

37. Defendant, NANCY L. CLEMENS,  is an individual who is a citizen of the Commonwealth of Pennsylvania. Clemens is sued in both his individual and official capacity member of the Court of Judicial Discipline /

39. Defendant,  Rev. JAMES P. MCCLOSKEY, C.S.Sp., Ph.D. , is an individual who is a citizen of the Commonwealth of Pennsylvania. McCloskey is sued in both his individual and official capacity as member of the Court of Judicial Discipline .

40. Defendant, Hon. SUSAN P. GANTMAN, is an individual who is a citizen of the Commonwealth of Pennsylvania. Gantmen is sued in both her individual and official capacity as member of the Court of Judicial Discipline.

41. Defendant, Hon. RENÉE COHN JUBELIRER, is an individual who is a citizen of the

Commonwealth of Pennsylvania.in both individual and official capacity as member of the Court of Judicial Discipline

42. Defendant, ANDREW E. MASICH, Ph.D. is an individual who is a citizen of the Commonwealth of Pennsylvania. Masich is sued in both his individual and official capacity as member of the Court of Judicial Discipline.

43. Defendant, MICHAEL BRUNELLE, is an individual who is a citizen of the Commonwealth of Pennsylvania. Brunelle is sued in both his individual and official capacity as member of the Court of Judicial Discipline.

44. Defendant, SCOTT B. COOPER, is an individual who is a citizen of the Commonwealth of Pennsylvania. Cooper is sued in both his individual and official capacity both individual and official capacity as member of the Court of Judicial Discipline.

45. Defendant, SUDHIR R. PATEL, is an individual who is a citizen of the Commonwealth of Pennsylvania. Sudhir is sued in both his individual and official capacity in both individual and official capacity as member of the Court of Judicial Discipline .

46. Defendant, TARA MOBLEY, is an individual who is a citizen of the Commonwealth of Pennsylvania. Mobley is sued in both his individual and official capacity as  member of the Court of Judicial Discipline.

47. Defendant, THOMAS J. FARRELL, is an individual who is a citizen of the Commonwealth of Pennsylvania. Farrell is sued in both his individual and official capacity as Chief Disciplinary Counsel Office Of Chief Disciplinary Counsel,  The Disciplinary Board of the Supreme Court of Pennsylvania

48. Defendant, RAYMOND S. WIERCISZEWSKI, is an individual who is a citizen of the Commonwealth of Pennsylvania.  Wierciszewski is sued in both his individual and official capacity as Deputy Chief Disciplinary Counsel, Office Of Chief Disciplinary Counsel, The Disciplinary Board of the Supreme Court of Pennsylvania.

49. Defendant, JESSE G. HEREDA, is an individual who is a citizen of the Commonwealth of Pennsylvania..Hereda is sued in both his individual and official capacity  as Executive Director, Executive Office , The Disciplinary Board of the Supreme Court of Pennsylvania.

50. Defendant, DANA C. BELELLA, is an individual who is a citizen of the Commonwealth of Pennsylvania. Belella is sued in both her individual and official capacity as Assistant Director, Executive Office, The Disciplinary Board of the Supreme Court of Pennsylvania.

51. Defendant, MARCEE D. SLOAN, is an individual who is a citizen of the Commonwealth of Pennsylvania. Sloan is sued in both her individual and official capacity as Board Prothonotary Executive Office, The Disciplinary Board of the Supreme Court of Pennsylvania

52. Defendant, SUZANNE E. PRICE, is an individual who is a citizen of the Commonwealth of Pennsylvania. Price is sued in both her individual and official capacity as Attorney Registrar Executive Office , The Disciplinary Board of the Supreme Court of Pennsylvania.

53. Defendant, LAURA K. MOHNEY, is an individual who is a citizen of the Commonwealth of Pennsylvania. Mohney is sued in both her individual and official capacity as Counsel to the Board Executive Office, The Disciplinary Board of the Supreme Court of Pennsylvania

54. Defendant, KIMBERLY M. HENDERSON, is an individual who is a citizen of the Commonwealth of Pennsylvania. Henderson is sued in both her individual and official capacity as Special Counsel Executive Office , The Disciplinary Board of the Supreme Court of Pennsylvani

55. Defendant, JERRY M. LEHOCKY, is an individual who is a citizen of the Commonwealth of Pennsylvania. Lehocky is sued in both his individual and official capacity as Esquire Board Chair, Board of The Disciplinary Board of the Supreme Court of Pennsylvania

56. Defendant, DION G. RASSIAS, is an individual who is a citizen of the Commonwealth of Pennsylvania. Rassias is sued in both his individual and official capacity as Esquire Board Vice-Chair. Board of The Disciplinary Board of the Supreme Court of Pennsylvania

57. Defendant, JOSHUA M. BLOOM, is an individual who is a citizen of the Commonwealth of Pennsylvania.  Bloom is sued in both his individual and official capacity as Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania

58. Defendant, CELESTE L. DEE, is an individual who is a citizen of the Commonwealth of Pennsylvania. Dee is sued in both her individual and official capacity as Board  Member of The Disciplinary Board of the Supreme Court of Pennsylvania.

59. Defendant, LAURA E. ELLSWORTH, is an individual who is a citizen of the Commonwealth of Pennsylvania. Ellsworth is sued in both his individual and official capacity as Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania.

60. Defendant, CHRISTOPHER M. MILLER, is an individual who is a citizen of the Commonwealth of Pennsylvania. Miller is sued in both his individual and official capacity as Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania.

61. Defendant, ROBERT J. MONGELUZZI, is an individual who is a citizen of the Commonwealth of Pennsylvania. Mongeluzzi is sued in both his individual and official capacity as Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania.

62. Defendant, GRETCHEN A. MUNDORFF, is an individual who is a citizen of the Commonwealth of Pennsylvania. Mundorff is sued in both his individual and official capacity as Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania.

63. Defendant, JOHN C. RAFFERTY, JR., is an individual who is a citizen of the Commonwealth of Pennsylvania. Rafferty is sued in both his individual and official capacity as Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania.

64. Defendant, HON. ROBERT L. REPARD. is an individual who is a citizen of the Commonwealth of Pennsylvania. Repard is sued in both his individual and official capacity as Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania.

65. Defendant, DAVID S. SENOFF, is an individual who is a citizen of the Commonwealth of Pennsylvania. Senoff is sued in both his individual and official capacity as Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania.

66. Defendant, SHOHIN H. VANCE, is an individual who is a citizen of the Commonwealth of Pennsylvania. Vance is sued in both his individual and official capacity as Board Member of The Disciplinary Board of the Supreme Court of Pennsylvania.

67. Defendant, RAMONA M. MARIANI, is an individual who is a citizen of the Commonwealth of Pennsylvania. Mariani is sued in both his individual and official capacity as Disciplinary Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania.

68. Defendant, ANTHONY P. SODROSKI, is an individual who is a citizen of the Commonwealth of Pennsylvania. Sodroski is sued in both his individual and official capacity as Disciplinary Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania

69. Defendant, HAROLD E. CIAMPOLI, JR., is an individual who is a citizen of the Commonwealth of Pennsylvania. Ciampoli is sued in both his individual and official capacity as Disciplinary Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania.

70. Defendant, KRISTA K. BEATTY, is an individual who is a citizen of the Commonwealth of Pennsylvania. Beatty is sued in both his individual and official capacity as Disciplinary Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania

71. Defendant, JAMES M. FOX, is an individual who is a citizen of the Commonwealth of Pennsylvania. Fox is sued in both his individual and official capacity as Disciplinary Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania

72. Defendant, JANA M. PALKO, is an individual who is a citizen of the Commonwealth of Pennsylvania. Palko is sued in both his individual and official capacity as (Central Intake) Disciplinary Counsel-in-Charge, The Disciplinary Board of the Supreme Court of Pennsylvania.

## INTRODUCTION

73. To adequately understand the chain of events that have led to the necessity of filing the instant action, Plaintiff has to start from the "beginning" and describe some of these events in a chronological order showing how the case has unfolded and taken its current shape.

74. Plaintiff will show and prove at the trial, that the Defendants have conspired to cover-up legal malpractice and negligence by the attorneys at law firm Obermayer Rebmann Maxwell & Hippel LLP, which caused harm and financial damage not only to Plaintiff, Urve Maggitti, but also in $$$$$$$ to their own client Victor J. Maggitti Jr. for which they are clearly liable for.

75. There was only one person who stood in their way: Plaintiff Urve Maggitti.
For the cover-up to work the Defendants needed to force the Plaintiff into action that would have "neutralized" the legal malpractice liability claim from their own client. When that failed, their actions took on a far more sinister path.

76. All of the Defendants named in this action are acting in their individual, in their official, and in their professional capacity, using law enforcement and legal system, in witness and whistleblower retaliation, commencing a malicious persecution and procecution, in a brazen violation of fundamental rights by devising a scheme under color of authority, thru a clear and affirmative abuse of power, and are doing so with the intent to permanently deprive Plaintiff of her good name, her reputation and standing in the community, through a simulated legal process, directly threatening her freedom,  and are the cause, in fact, of Plaintiff's deprivation of the peaceful enjoyment and possession of rights, and as a matter of right guaranteed by the Constitution of Pennsylvania Article I §1, §7, §8, §9, §10 , §11, §17, and guaranteed by the First, Fourth, Fifth, Sixth. Eighth, Ninth and Fourteenth Amendments of the United States Constitution.

77. Plaintiff, URVE MAGGITTI (Plaintiff") fled the authoritarian state she grew up in and sought freedom, privacy, and equity from her new home - "The Land of the Free Home of the Brave".

78. Plaintiff cannot fathom the brazenness of the local officials, sheriff office, district attorney office and judges and magistrates who have acted in concert with private attorneys and stomped on the Bill of Rights and the limitations it sets forth for government in restricting and violating those rights, as is enumerated in our United States Constitution.

## INJUNCTIVE RELIEF

79 Plaintiff is also seeking injunctive and equitable relief under title 28 U.S.C. § 2202 against the all the Defendants.

"The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' *Ex parte Virginia, 100 U.S., at 346, 25 L.Ed. 676.*

In carrying out that purpose, Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress. And this Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights. *Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714; cf. Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131; Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.*

For these reasons we conclude that, under the criteria established in our previous decisions construing the anti-injunction statute, §1983 is an Act of Congress that falls within the 'expressly

authorized' exception of that law." *Mitchum v. Foster, 407 U.S. 225, 242–43, 92 S. Ct. 2151, 2162, 32 L. Ed. 2d 705 (1972)*

## SUMMARY

80. Plaintiff, Urve Maggitti incorporates by reference the attached exhibits, and all footnotes in this action, with the same force and effect as if herein set forth.

## JUDICIAL NOTICE

81. *Pro se* complaints must be liberally construed, *Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594,595, 30 L.Ed.2d 652 (1972),* and a dismissal thereof is improper unless plaintiff has alleged "no set of facts" which could establish entitlement to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957)*

To hold a pro se plaintiff to strict compliance "would be inequitable" as courts would punish a pro se plaintiff "for lacking the linguistic and analytical skills of a trained lawyer." *Perez v. United States, 312 F.3d 191, 194–95 (5th Cir. 2002)*. To avoid such a result, "courts have adopted the rule that a pro se plaintiff's pleadings are liberally construed." Id. Even though pleadings by a pro se litigant are held to a less stringent standard, courts must be able to draw the reasonable inference from the pleadings that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)*

## BACKGROUND
### Divorce Action, Docket No. 2021-06762-DI

82. Plaintiff was a Respondent in the Divorce Action, Docket NO. 2021-06762-DI in the Court of Common Pleas, Chester County, Pennsylvania, filed on August 24, 2021, and the presiding judge in the case was the Hon. Bret M. Binder.

### Civil Tort Action, Docket NO. 2022-01774-TT

83. Plaintiff is a Plaintiff in the Civil Tort Action, Docket NO. 2022-01774-TT in the Court of Common Pleas, Chester County, Pennsylvania, filed on May 10, 2022, against defendants, Hillary J. Moonay, David A. Nasatir, Mathieu J. Shapiro, Thomas A. Leonard III, Nicholas Poduslenko, (hereinafter "Obermayer" "Defendants") and the presiding judge in the case was the Hon. Bret M. Binder, until he had to recuse himself on or about February 28, 2023.

84. The Defendants in the Tort Action, Docket NO. 2022-01774-TT are attorneys at law firm Obermayer Rebmann Maxwell & Hippel LLP, who represented Relator's (now ex) husband in:

a) Breach of Contract Action, Docket NO. 2021-07135-CT

b) Divorce Action, Docket NO. 2021-01441-DI (withdrawn)

c) Divorce Action, Docket NO. 2021-06762-DI

85. The evidence collected from the Divorce Actions Docket NO. 2021-01441-DI and Docket NO. 2021-06762-DI is being used as evidence in the Tort Action Docket NO. 2022-01774-TT.

## FACTS THAT LEAD TO FILING OF THIS ACTION

86. The following are true statements and serve as an accounting of the events that led to the filing of this complaint:

## FACTS RELEVANT TO ALL CLAIMS

87. **Plaintiff incorporates by reference the facts set forth above as if set forth herein full.** Plaintiff realleges and restates the prior paragraphs of this Verified Complaint and they are fully incorporated herein by reference thereto.

# PART 1

Time Frame: August 21, 2021- February 28, 2022

### Amicable Divorce

88. In 2021 Plaintiff Urve Maggitti (hereinafter "Plaintiff") and Victor J. Maggitti Jr. (hereinafter "husband") amicably decided to part ways and to dissolve their marriage.

89. Prior to their marriage, the couple had entered into legally binding Pre-Nuptial Agreement, prepared by their respective legal counsels.

90. Without involvement of any third party, the Plaintiff Urve Maggitti and husband Victor J. Maggitti Jr. agreed on the specific conditions of their divorce and amended their pre-nuptial agreement accordingly, the meeting of the minds was achieved between August, 21st- thru 25th 2021.

91. For the husband, an essential elements was to obtain Divorce Decree in 2021.

### Tortuous Interference with Contractual Relationship

92. The attorneys for husband at law firm Obermayer Rebmann Maxwell & Hippel

LLP deliberately and tortuously interfered between Plaintiff and her husband and between their contractual relationship, after the fact, when the contract had been negotiated by the parties.

## Breach of Fiduciary Duty

93. Plaintiff Urve Maggitti has a clear understanding of the contract law, and based on that fact it was obvious that the attorneys for husband at the law firm Obermayer Rebmann Maxwell & Hippel LLP were not proceeding with candor.

94. It was obvious that they mis-used their fiduciary duty to their own client. They were successful in convincing their client that a simple amendment into the Pre-Nuptial Agreement was not "adequate" and therefore they proceeded to re-write the original Pre-Nuptial Agreement under the guise of Marital Settlement Agreement.

# The Client

95. Victor J. Maggitti Jr., who was and is, a busy, high functioning executive, Founder and President of Vimco Inc, clearly a man with many responsibilities, including being actively involved in his *alma mater* the Villanova University, a Trustee Emeriti -formerly serving as Chair of the Board-at Malvern Preparatory School, it was unsurprising that he trusted his legal advisors, as most individuals who retain attorneys customarily do.


## Extra Element For Trusting His Legal Counsel

96. The law firm Obermayer Rebmann Maxwell & Hippel LLP, was not just a law firm that Victor J. Maggitti Jr. engaged for handling of the divorce. There was an established long standing business relationship between the law firm Obermayer Rebmann Maxwell & Hippel LLP and Vimco Inc, and the firm was also one of the Co-Trustees of Victor J. Maggitti Jr. considerable estate.

## Pecuniary Interests of The Law Firm

97. Plaintiff and her husband had engaged reputable legal counsel to draft their original Pre-Nuptial Agreement, therefore rewriting Pre-Marital Agreement under guise of Marital Settlement Agreement only served the pecuniary interests of the law firm Obermayer Rebmann Maxwell & Hippel LLP, and their scheme, intended to enrich the firm at the expense of their client and the Plaintiff.

## Self-Appointed Moving Party

98. Law firm Obermayer Rebmann Maxwell & Hippel LLP, appointed themselves a

moving-party, as per The Marital Settlement Agreement contained clause §4 MUTUAL CONSENT DIVORCE:

> "It shall be the responsibility of Husband to be the moving party and to file all such documents as are necessary to move the divorce forward through the court system until it is entered as a final Decree in Divorce."

## Timely Executed Documents

99. On or about November, 24th 2021 Plaintiff, Urve Maggitti and her husband, Victor J. Maggitti Jr, signed the documents needed to obtain Divorce Decree in 2021.

## Timely Filed Documents

100. On or about November 24th and November 29th 2021, the fully executed and signed documents were filed with the Court's Prothonotary Office.

## Hon. BRET M. BINDER is Presiding Judge in Divorce Action
## Divorce Docket NO. 2021-06762-DI

101. Hon. Bret M. Binder was assigned to Divorce Action, Docket NO. 2021-06762-DI as a presiding judge.

## Where is the Divorce Decree?

102. On or about January 4, 2022, Plaintiff called Prothonotary Office, asking: "Where is the Divorce Decree?" She was informed by Ms. I'Esha Purnell that no documents were filed by the parties to obtain their Divorce Decree.

## Attorney's Had Drafted the Documents with Incorrect Docket Number

103. On or about January 4th and 5th 2022, it became obvious to the Plaintiff that law firm Obermayer Rebmann Maxwell & Hippel LLP had made a major mistake.

The documents that Plaintiff and husband signed on November 24, 2021, were drafted with wrong inactive Docket Number.

## Timely Executed Documents Were filed Into Wrong Case File!

104. Because the documents were drafted with wrong inactive docket number, the timely signed and filed documents were filed into wrong case file.

105. Due to the negligence of husband's attorneys law firm Obermayer Rebmann Maxwell & Hippel LLP, the Plaintiff and the husband did not obtain Divorce Decree in 2021.

**Misrepresentation of Facts To Their Client in Attempt To Cover Up The Professional Malpractice**

106. Attorney Hillary J. Moonay of the law firm Obermayer Rebmann Maxwell & Hippel LLP was well aware of the fact that she and her law firm caused the error and that fact was known to her before January 4, 2022 and definitely on the January 4th 2022.

107. Despite that knowledge, attorney Hillary J. Moonay was misrepresenting facts to her client Victor J. Maggitti Jr., claiming that in order to get the divorce decree, the Respondent Urve Maggitti had to re-sign the document.

1) Defendant's Affidavit of Consent 3301(c); and

2) Defendant's Waiver of Notice of Intention to File Praecipe to Transmit Record

**Plaintiff Directed to Re-Sign the Previously Signed Documents**

108. On or about January 5, 2022, Plaintiff was directed by Mathieu Shapiro, the Managing Partner at Obermayer Rebmann Maxwell & Hippel LLP, to **re-sign** the previously timely executed documents[1] to obtain divorce decree.

**Using Legal System To Intimidate Plaintiff Into Submission.**

109. Instead of quickly amending their mistake/negligence, the law firm Obermayer Rebmann Maxwell & Hippel LLP embarked upon a strategy of intimidation and used legal system in attempt to scare the Plaintiff into re-signing the documents.

**Motion to find Wife in Contempt, Pay Fine and Attorney's Fees**

110. On January 26, 2022, Obermayer Rebmann Maxwell & Hippel LLP filed "PLAINTIFF'S PETITION FOR CONTEMPT OF AND TO ENFORCEMENT MARITAL SETTLEMENT AGREEMENT" asking the Court to:

a) "COUNT 1-FAILURE TO EXECUTE AFFIDAVIT OF CONSENT AND WAIVER OF NOTICE OF INTENTION TO FILE PRAECIPE TO TRANSMIT THE RECORD" "...enter an Order finding Wife in contempt of the MSA and directing Wife to immediately execute the Affidavit of Consent 3301 (c ) and the Waiver of Notice of Intention to File Praecipe to Transmit Record. Further, Husband respectfully requests that Wife is fined $500 per day for each day subsequent to such Order that she fails to execute such document."

b) "COUNT II – REQUEST FOR ATTORNEY FEES" "..enter an Order finding Wife in Contempt of the MSA and Ordering Wife to reimburse Husband's counsel fees and costs in an amount to be determined at time of hearing.

---

[1] November 24, 2021

## Plaintiff Filed Private Criminal Complaint Against Attorney's

111. On or about February 28, 2022, Plaintiff filed Private Criminal Complaint with Deb Ryan, Chester County District Attorney against: Hillary J. Moonay, David A. Nasatir, Mathieu J. Shapiro, Thomas A. Leonard III, and Nicholas Poduslenko from law firm Obermayer Rebmann Maxwell & Hippel LLP.

Plaintiff believed then and continues to believe now, that Defendants named in this paragraph, had violated:

Title 18 Pa. § 4114 - Securing execution of documents by deception;
Title 18 Pa. § 4107(6.7) - Deceptive or fraudulent business practices;
Title 18 Pa. § 911– Corrupt organizations;
Title 18 Pa. § 903 - Criminal conspiracy;
Title 18 Pa. § 2906 - Criminal coercion;
Title 18 Pa. § 3922 - Theft by deception;
Title 18 Pa. § 5301- Official oppression;
Title 18 Pa. § 5109 – Barratry;
Title 18 Pa. § 3922.1 - Financial exploitation of an older adult or care-dependent person;
Title 18 Pa. § 5107 - Aiding consummation of crime;
Title 18 Pa. § 5108 – Compounding, as alleged above

See attached EXHIBIT: Fed. No. 1

### Court Scheduled Hearing for March 11, 2022.

### * Continues: Part 3 *

# PART 2

## Tort Action Filed Against Obermayer Rebmann Maxwell & Hippel LLP

### Docket NO. 2022-01774-TT

112. On March, 10th 2022, Plaintiff filed in The Court of Common Pleas of Chester County, Pennsylvania, Civil Action-Law, Case No. 2022-01774-TT, against attorneys at Obermayer Rebmann Maxwell & Hippel LLP: HILLARY J. MOONAY, DAVID A. NASATIR, MATHIEU J. SHAPIRO, THOMAS A. LEONARD III, NICHOLAS PODUSLENKO, in their individual and official capacity.

113. Lawsuit filed for eleven causes of action: Negligence, Assumption Of Duty, Tortious Interference, Undue Influence, Fraud, Constructive Fraud, Duress, Economic Duress, Conspiracy, Infliction Of Emotional Distress, Negligent Supervision.

See attached EXHIBIT: Fed. No. 2

**Hon. BRET M. BINDER - is Presiding Judge in Tort Action**

114.  Hon. Bret M. Binder was assigned to Tort Action, Docket NO. 2022-01774-TT as a presiding judge.

# PART 3

## CHESTER COUNTY OFFICE OF SHERIFF

### TIME PERIOD: MARCH 10, 2022 - APRIL 26, 2022

**Original Process of Service: "Complaint"**

115.  On March 10, 2022, Plaintiff filed original process of service, original documents "Complaint and Notice to Defend"[2] as per Title 231 Pa. Code § 400, at Office of the Sheriff, Chester County Justice Center, 201 West Market Street, Suite 1201, West Chester, PA 19380-0989.

> **231 Pa. Code § 400. Person to Make Service**
> **(a)** Except as provided in subdivisions (b) and (c) and in Rules 400.1 and 1930.4, original process shall be served within the Commonwealth only by the sheriff.
> **(d)** If service is to be made by the sheriff in a county other than the county in which the action was commenced, the sheriff of the county where service may be made shall be deputized for that purpose by the sheriff of the county where the action was commenced.

116.  Ms. Rosana Castro, Deputy Clerk, County of Chester Office of the Sheriff, handled the transaction.

117. The service was for five defendants, at their office(s) and at their private residence(s) outside
Chester County, requiring Deputized Service. Making it ten large stacks of documents weighing 3.5 lbs each.

118. Plaintiff filled out "SHERIFF-FORM#150.27 REV.12/2019" as instructed by Ms. Castro and provided four (4) Money Orders, made out to be payable to Sheriff's Offices of Delaware County, Bucks County, Montgomery County and Philadelphia County.

And paid the processing fee to County of Chester Office of the Sheriff "Civil Process In -County" total of $818.00.

See attached EXHIBIT: Fed. No.11 [Payment Processed by Sheriff Office]

---

[2] Civil Tort Docket No. 2022-01774-TT.

See attached EXHIBIT: Fed. No.12 [Payment processed by Prothonotary Office]

119. Under the Title 231 Pa. Code the original process must be served in Commonwealth of Pennsylvania by the Sheriff within 30-days:

> **231 Pa. Code § 401. Time for Service. Reissuance, Reinstatement, and Substitution of Original Process**
> **(a)** Original process shall be served within the Commonwealth within 30 days after the issuance of the writ or the filing of the complaint.
> **(b)(1)** If service within the Commonwealth is not made within the time prescribed by subdivision (a) of this rule or outside the Commonwealth within the time prescribed by Rule 404, the prothonotary upon *praecipe* and upon presentation of the original process, or a copy thereof, shall continue its validity by designating the writ as reissued or the complaint as reinstated.
> **(4)** A reissued, reinstated, or substituted writ or complaint shall be served within the applicable time prescribed by subdivision (a) of this rule.

120. Plaintiff was making inquiries on regular basis by contacting Sheriff's Offices of Delaware County, Bucks County, Montgomery County and Philadelphia County – to track the progress of the civil process of service of the "Complaint."[3]

121. On or about Thursday, March, 31st 2022, - April 1st, 2022, when none of the four different counties had any record of receiving the "Complaint(s)", the Plaintiff called the Chester County Sheriff's Office.

122. Plaintiff was told, by a gentleman who picked up the phone, who stated that he remembers the Complainant from her March 10, 2022, filing for civil process of service the "Complaint(s)", and he stated that there is still time for them to arrive at their destination(s) (to the four different counties) and to be served, because the statutory 30-day period was ending on April 11, 2022.

The blame for the delay was attributed to United States Postal Service, by Chester County Sheriff's Office.

123. Plaintiff had been told by Philadelphia County Sheriff's Office that they need minimum of 10-business days after receiving the "Complaint(s)" from Chester County Sheriff's Office, to serve them on the Defendants.

124. It was obvious that no service was going to be made within the statutory time frame, even if the "Complaint(s)" were to be received on or about April 4, 2022, – there was not enough days

---

[3] Civil Tort Docket No. 2022-01774-TT.

before April 11, 2022, to serve them on Defendants by the for respective Deputized Sheriff Office's.[4]

## Praecipe to Reinstate the Complaint [5]

125. Plaintiff had to do the process of serving Defendants all over again, to file "Praecipe to Reinstate the Complaint" and have the Chester County Office of Sheriff initiate the Civil Process of Service again, which she did on Monday April 4, 2022.

See attached EXHIBIT: Fed. No. 1 and See attached EXHIBIT: Fed. No. 15

126. Ms. Rosana Castro, Deputy Clerk, County of Chester Office of the Sheriff, was in charge of processing this second Civil Process of Service, to serve the "Complaint(s)" to Defendants.[6]

127. This time Plaintiff provided pre-paid FedEx mailing labels and boxes for the Office of the Sheriff, so as not to "lose" the shipment in the mail "again."

128. On Monday, April 4th 2022, Ms. Rosana Castro was sure that United States Postal Service, was at fault and stated that mail service is really bad.

Plaintiff stated that it is highly unlikely that the U.S. Post Office is "that bad", that they lost all her mail going to four different counties.

129. Ms. Rosana Castro assured the Plaintiff, that she had processed the "Complaint(s)" for service, that it took her long time to process them, to assign internal tracking numbers for the deputized service in other counties, and that she personally took them downstairs to the Mail Room after processing.

She also printed out internal document showing that she had indeed processed them on 3/10/2022. See attached EXHIBIT: Fed. No. 3

130. On or about Tuesday, April 5, 2022, Ms. Rosana Castro emailed to the Plaintiff the "proof" of service:

> "Per our phone conversation above you'll find the link to the receipt "proof" of service in Civil Processing of your complaint 2022-01774. Please let me know if I can help you with any further information. Thank you and have a wonderful day."

See attached EXHIBIT: Fed. No. 4

---

[4] Sheriff's Offices of Delaware County, Bucks County, Montgomery County and Philadelphia County.
[5] Civil Tort Docket No. 2022-01774-TT.
[6] Civil Tort Docket No. 2022-01774-TT.

131. On or about Friday April 9, 2022, Plaintiff was at the Chester County Court of Common Pleas, trying to find out from the Mail Room, if they had any tracking numbers for the packages processed by Ms. Rosana Castro for civil service of original "Complaint(s)"[7].

132. Officer Lawson was helping the Plaintiff in her inquiry and was the one who went into the Mail Room (restricted access) and relayed her request.

133. The Mail Room employee- a middle aged, thin man, with gray hair, came out from the mail Room together with Ms. Rosana Castro, who was obviously summoned to the Mail Room due to Plaintiff's inquiry.

134. That Mail Room employee stated that he does not know how to use the mail room system and that the person who does know, is not there at the moment, and will come back in ten minutes. Plaintiff, said that she will wait.

135. To that the Mail Room employee replied, that no, he is actually pretty sure that other person left for the day and will come back on Monday.

136. On or about Monday April 11, 2022, Plaintiff was again at the Chester County Court of Common Pleas, trying to get information about the "lost" mailing from the Mail Room.

137. Mr. Vinnie Pagan, from Mail Room, stated that there was no tracking numbers on these packages[8].

138. Mr. Pagan provided Plaintiff the printout from their system, which was provided for Mr. Pagan by Mr. Shane Colburn, General Service Manager, supervisor in charge of the Mail Room, showing that the packages[9] in question were processed by the Mail Room on March 11, 2022, using Priority Mail. See attached EXHIBIT: Fed. No. 5

139. During the questioning by Plaintiff at some point Mr. Pagan mentioned that the mail is really bad. To what the Plaintiff asked, that if the mail is bad, why no tracking numbers were used for Plaintiff's packages?

140. Mr. Pagan, responded that he does not know, but it probably means no one directed the mail room to add the tracking numbers.

---

[7] Civil Tort Docket No. 2022-01774-TT.
[8] "Complaint(s)" - Civil Tort Docket No. 2022-01774-TT.
[9] "Complaint(s)" - Civil Tort Docket No. 2022-01774-TT.

### Mr. Shane Colburn, General Service Manager, Mail Room

141. On or about Monday, April 11th 2022, Plaintiff called and spoke with Mr. Shane Colburn, General Service Manager, asking about the procedure how any mail is handled and processed by the mail room, that is submitted by the Sheriff's Office for Civil Process of Service.

142 . Mr. Shane Colburn stated that the mail room is processing the mail with instructions that are provided by the department that is submitting the mail.

143. And that in the case of Plaintiff's missing mail[10] there are no tracking numbers in their system, because "probably" no instructions was provided to include them, or "possibly" was instructed that there is "no need" to add any tracking numbers.

### USPS Provides Free Tracking for Priority Mail

144. According to United States Postal Service: *"USPS Tracking® is provided for Priority Mail items at no additional charge."*

Therefore, what rational was used for not using the tracking numbers for Plaintiff's documents?

145. Mr. Shane Colburn suggested that Plaintiff ask Ms. Rosana Castro, what address did she use for the mailing of the Plaintiff's Civil Process of Service documents.

### What Address Did Ms. Rosana Castro ship the Original Complaints to?

146. On April 11th, 2022 the Plaintiff posed that question to Ms. Castro via email:

> *"What address did you use for the mailing out to ten packages?*
> *Was it addressed to the Sheriffs offices in the four counties that were deputized for service or did you have the mailing sent out to the defendants addresses?"*

See attached EXHIBIT: Fed. No. 6

### Sheriff Office Used Non-Postage Paid Envelopes Provided by Plaintiff

147. On April, 12th 2022, Ms. Rosana Castro replied:

> *"All documents were sent out on the envelopes that you provided with the addresses on them"*

See attached EXHIBIT: Fed. No. 6

148. The statement by Ms. Castro is puzzling.

On March 10, 2022, when Plaintiff handed over the original documents the "Complaint(s)" to be served on Defendants, into the care and custody of the Chester County Sheriff's Office, by way

---

[10] "Complaint(s)" -  Civil Tort Docket No. 2022-01774-TT.

of Ms. Rosana Castro, Plaintiff provided 10 large yellow envelopes for each "Complaint and Notice to Defend" which had Plaintiff info (on upper left corner: name and address) and the name and address of each defendant to be served at. Plaintiff did not provide any postage.

149 . Plaintiff specifically remembers Ms. Rosana Castro saying that there is no need for these envelopes because she will take care of everything.

Plaintiff responded, that she did not know what the official procedure of the Sheriff's Office was, but that the documents to be served need to be enclosed within envelopes for the deputized officers to serve the defendants, and Plaintiff was just trying to be helpful by providing the envelopes to the Chester County Sheriff's Office.

150. Unless the Plaintiff is severely mistaken and the official procedure and policy of the Commonwealth's Sheriff's Office in general is that serving Civil Process of Service of "Complaint(s)" to Defendants[11] are to be served without envelopes, giving anyone handling them an opportunity to "peruse" thru the pleadings?

151. <u>Questions</u>: Ms. Rosana Castro never once "realized" between April 4th 2022, April, 8th 2022, and April 11th 2022, when Plaintiff was in the court house trying to find out what happened to the original documents[12] "Complaint(s)", that she made an "error" in her processing of the civil process of service?

152. Breakdown of defendants to be served:

1) HILLARY J. MOONAY, to be served at: work address- in Bucks County, home address - in Bucks County.

2) DAVID A. NASATIR, to be served at: work address – Philadelphia County, home address - Montgomery County

3) MATHIEU J. SHAPIRO, to be served at: work address – Philadelphia County, home address- Philadelphia County
4) THOMAS A. LEONARD III, to be served at: work address – Philadelphia County, home address - Philadelphia County

5) NICHOLAS PODUSLENKO, to be served at: work address - Philadelphia County, home address – Delaware County

153. Five Defendants,[13] Civil Tort Docket No. 2022-01774-TT, each to be served at home and work, making it ten (10) large stacks of document, weighing 3.5 lbs each.

---

[11] Hillary Moonay, David A. Nasatir, Mathieu J. Shapiro, Thomas A. Leonard III, Nicholas Poduslenko,
[12] "Complaint(s)" -  Civil Tort Docket No. 2022-01774-TT.
[13] Hillary Moonay, David A. Nasatir, Mathieu J. Shapiro, Thomas A. Leonard III, Nicholas Poduslenko,

Bucks County – 2
Delaware County - 1
Montgomery County - 1
Philadelphia County - 6

154. And four (4) Money Orders, payable to Sheriff's Offices.

See attached EXHIBIT: Fed. No. 11

155. Ms. Rosana Castro stated that she processed the documents correctly, yet Ms. Rosana Castro claims to have mailed the documents "Complaint(s)" in the envelopes provided by Plaintiff addressed directly to the defendants?

156. Which means Ms. Rosana Castro would have mailed 10 individual envelopes. When Ms. Rosana Castro mailed the four money orders how did she decide into which specific envelopes to put them in?

157. For example: There was one (1) money order for Philadelphia County Sheriff's Office. If Ms. Rosana Castro put the money order made payable to Philadelphia County Sheriff's Office into one of the envelopes – how did Ms. Rosana Castro notify the Philadelphia County Sheriff's Office that there are five (5) more packages "Complaint(s)" coming their way and the money order made payable to Philadelphia County Sheriff's Office is in which "specific" "package"?

158. Or was the Philadelphia County Sheriff's Office just supposed to calculate from the money order's amount and keep an eye out for additional packages?

Is this how the Deputized Sheriff Service for the Civil Process of Service of original documents "Complaint(s)" is provided by Statute in Pennsylvania?

159. And during that point when Ms. Castro was "processing" the four money orders which were made out for Sheriff's Offices and the deputized service forms "SHERIFF-FORM#150.27 REV.12/2019" for four different counties, - during this whole time when Ms. Castro was "processing" the documents, never once did it dawn on Ms. Castro that these documents had to be mailed/delivered/handed over to four different Sheriff's Offices?

160. And it only "dawned" on Ms. Castro that she did something wrong on April 11th 2022, when Plaintiff asked what addresses did she send them to?

**Supervisor, Office of Sheriff: Ms. Castro *"processed the paperwork" "Once processed she returned the paperwork back to the envelopes you provided us."***

161. On or about on April, 13th 2022, Complainant received email from Debbie Hunter, Support Staff Supervisor Chester County, Office of the Sheriff, stating the following:

*"It is my understanding you presented to our office with 10 addressed and sealed envelopes. Ms. Castro opened each envelope and processed the paperwork accordingly, along with the money orders. Once processed she returned the paperwork back to the envelopes you provided us. As you have been made aware, all envelopes are sent via regular mail through the USPS.*

*You stated in your email below that the envelopes you provided to us contained the defendants address. It is presumed this is where the packages have been delivered to. At this time it is also presumed the defendant will not be mailing back our service affidavit.*

*"I will make up replacements forms and get them docketed in the Prothonotary as soon as possible."*

See attached EXHIBIT: Fed. No. 7

162. "Replacement Forms" were made out by the Sheriff Office and filed into the Court Docket. Carrying signatures of: Fredda L. Maddox, Sheriff of Chester County and Debra Hunter "for CCSO" Stating in box 30. REMARKS:

*"4/20/22 08:30 mailed out via USPS via envelope provided by Plaintiff, service not returned to Sheriff's office."*

See attached EXHIBIT: Fed. No. 14

163. What a puzzling reaction by Ms. Debbie Hunter, Support Staff Supervisor. From Ms. Hunter's email response it sounds like Ms. Castro, made no "error" in processing the documents "Complaint(s)"[14], and Ms. Debbie Hunter, a Supervisor very nonchalantly states:

*"You stated in your email below that the envelopes you provided to us contained the defendants address. It is presumed this is where the packages have been delivered to."*

164. On or about April 13, 2022, Complainant asked to clarify what Ms. Debbie Hunter was saying in her email.

See attached EXHIBIT: Fed. No. 8, EXHIBIT: Fed. No. 9, EXHIBIT: Fed. No. 10

### Sheriff Office - no acknowledgment of any "wrong doing"

165. There was no acknowledgment by the Debbie Hunter, Support Staff Supervisor Chester County, Office of the Sheriff, of any wrong doing by Ms. Castro's handling of the original service of civil process.

166. It was necessary to document the Plaintiff's deeply serious concerns about what

---

[14] Deputized Sheriff Service for the Civil Process of Service of original documents "Complaint(s)"

happened to the first filed Civil Process of Service of original documents "Complaint and Notice to Defend" Case No. 2022-01774-TT , filed on March 19th 2022.

167 . And the troubling possibility that her second Civil Process of Service of original documents "Complaint and Notice to Defend" Case No. 2022-01774-TT, filed on April 4th 20222, was being jeopardized and interfered with again.

168. Plaintiff submitted official request to Debbie Hunter, Support Staff Supervisor Chester County, Office of the Sheriff and copying following people to the email:

> Rosana Castro, Deputy Clerk, County of Chester Office of the Sheriff,
>
> Fredda L. Maddox, Sheriff of Chester County PA
>
> Kevin D. Dykes, Chief Deputy Sheriff of Chester County PA
>
> Deb Ryan, District Attorney of Chester County PA

See attached EXHIBIT: Fed. No. 10

169. It is a fact that Rosana Castro, Deputy Clerk, County of Chester Office of the Sheriff is employee of County of Chester Office of the Sheriff.

170. The Sheriff is the highest ranking law enforcement officer in the county.

171. The Office of the Sheriff is mandated by the Constitution of the Commonwealth of Pennsylvania.

172. The Sheriff is an independent elected official with law enforcement responsibilities as well as civil and criminal court duties.

173. Its main priority is to serve the Court of Common Pleas.

174. In addition the Office of the Sheriff is responsible for service of civil work for the Court of Common Pleas as well as service of civil process for district magistrates, private attorneys, and other agencies.

## AUTHORITIES
**Deputy Sheriffs' Association of Pennsylvania:**
"In Pennsylvania, the Sheriff is a constitutional officer and the state constitution requires a Sheriff in each county. Case law provides that, although the Sheriff's primary responsibilities are to the courts, the Sheriff retains all arrest powers he/she had at common law, including investigation of crimes. More importantly, since the Sheriff retains all arrest powers he/she had at common law, he/she has the constitutional authority to enforce the criminal laws as well as the vehicle laws of Pennsylvania. Therefore the sheriff and his/her deputies maintain full criminal and civil jurisdiction in the county, with the authority to conduct a traffic stop, direct traffic, work vehicle crashes, serve civil process, and even arrest for any onsite crimes or violations. The sheriff may but is not required to exercise this authority in most instances."

**16 Pa. Stat. § 1205-A Deputies and clerks.**
"The sheriff of each county may appoint deputies and clerks to positions established in accordance with for section 1623 the transaction of the business of the sheriff's office, and may revoke the appointment of deputies in the same manner as the chief deputy. In counties of the third through eighth classes, the sheriff may also appoint necessary special deputies, when any emergency arises, to assist the sheriff in executing any civil or criminal process or court order or in preserving the peace, who shall serve only so long as they are absolutely needed."

**16 P.S. § 1214-A Sheriff to keep docket**
Every sheriff shall provide and keep in office a book or books in which the sheriff shall enter all writs that may be received and the proceedings thereon, and, at the expiration of the term of office, such book or books shall be deposited in the office of the prothonotary for the inspection of all persons interested therein.
(16 Pa. Stat. Ann. § 1214-A (West))

**42 Pa.C.S.A. § 2921 Powers and duties of the sheriff**
The sheriff, either personally or by deputy, shall serve process and execute orders directed to him pursuant to law.
(42 Pa. Stat. and Cons. Stat. Ann. § 2921 (West))

**16 Pa. Stat. § 1208. Filed items and public records.**
The name, photograph and affidavit of any such person so filed with the prothonotary, shall constitute a public record.

**15A Am. Jur. 2d Clerks of Court § 55**
As a public administrative officer or ministerial officer, a court clerk is answerable for any act of negligence or misconduct in office resulting in an injury to the complaining party.
"When a writ is placed in the hands of a sheriff or marshal it is such officer's duty, in the absence of any instructions to the contrary, to proceed with reasonable celerity and promptness to execute it in accordance with its mandates."
*Cardenas v. Noren*, 235 Cal. App. 3d 1344, 1 Cal. Rptr. 2d 367 (6th Dist. 1991); *Grant v. Credithrift of America, Inc.*, 402 So. 2d 486 (Fla. 1st DCA 1981).


"The duty of a sheriff to do an act which is sought by a writ is plain, unequivocal, and ministerial, and ordinarily, the discharge of this duty is not in any way referable to the sheriff's discretion." *Ritter v. Castellini*, 173 N.J. Super. 509, 414 A.2d 614 (Law Div. 1980).


175.  Defendant Rosana Castro, in her official capacity as a Deputy Clerk, County of Chester Office of the Sheriff, had a statutory duty to process papers presented for processing and that duty is non-discretionary.

176. On or about April 26, 2022, Plaintiff Filed Private Criminal Complaint against Rosana. See Attached EXHIBIT Fed. No. 13

177.  Chester County District Attorney's Office did not " find probable cause."

See Attached EXHIBIT Fed. No. 46

## PROCEDURAL HISTORY[15]

# <u>PART 4</u>

## DIVORCE ACTION, DOCKET NO. 2021-06762-DI

### <u>Evidentiary Court Hearing in Divorce Action March 11, 2022</u>

### <u>Relator Hired Court Reporter</u>

178. Plaintiff contracted with Summit Court Reporting Inc. agency and hired professional Certified Court Reporter for the Evidentiary Hearing on March, 11th 2022.

179. Urve Maggitti hired the official court reporter to be present at the hearing to officially memorialize the proceeding and the testimony provided in that hearing.

### <u>Hon. BRET M. BINDER Denied Plaintiff the Right To Use the Court Reporter</u>

180. On March 11, 2022 Hon. BRET M. BINDER J. denied the Plaintiff her right to use the officially privately hired court reporter.

181. The denial by the court, Hon. BRET M. BINDER, to use the privately hired and paid for court reporter by Plaintiff Urve Maggitti, was an act that "impaired obligation of a private contract" and thereby the court "tortiously interfered with a private contract" between Plaintiff/Relator, Urve Maggitti and the party providing the court reporting services

### <u>Official Transcript Contains Mistakes, Some of Which Are Substantial</u>.

182. On or about March 16, 2022, Plaintiff ordered the official transcript of the Evidentiary Hearing from Chester County Official Court Reporters Office.

---

[15] Procedural History reflects the facts that are relevant for the purpose of this Action and do not involve all of the procedural history in the two legal actions: Divorce Action No. 2021-06762-DI & Tort Action NO. 2022-01774-TT. The two actions share the following facts:
  1) Tort Action NO. 2022-01774-TT was filed by Plaintiff/Relator against defendants who were attorneys representing the ex-husband in divorce action(s) and the causes of action stem from the issues surrounding the divorce action(s).
  2) Substantial evidence that supports the Plaintiff/Relator causes of action against the defendants in the tort case are found/obtained from documents submitted and the testimony provided in the divorce action(s).
  3) The presiding judge in both actions was the same Hon. Bret M. Binder[15], County of Chester, Court of Common Pleas, on or before February 28, 2023.

183. After reviewing the official transcript it was apparent that Bridget Galloway Owen, from Chester County Official Court Reporters Office made mistakes in the official transcript, some of which are substantial.

184. The official transcript errors needed to be corrected. Plaintiff filed motion[16] to correct the transcript stating:

> "The corrections are strictly addressing the errors made by Bridget Galloway Owen, from Chester County Official Court Reporters Office and are not to be mistaken for correction of any testimony given at the hearing by the parties."

### Plaintiff Has Undeniable Proof That Official Court Transcript Contains Mistakes

185. Plaintiff moved the Court to issue an Order that the errors made by Bridget Galloway Owen, From Chester County Official Court Reporters Office, in the Official Transcript of the Court Hearing of March 11, 2022, be corrected immediately by way of incorporating the corrections in the ERRATA SHEETS into the Official Transcript as amended.

186. The corrections to the official transcript were based on the audio recording that Plaintiff, Urve Maggitti recorded of her own divorce hearing as a litigant to an action in divorce, to memorialize the hearing for purposes of assuring the accuracy of this proceeding for the official record.

### Defendant Ms. Moonay filed Opposition to Amendment of Transcript

187. On or about April 27, 2022, Hillary J. Moonay, Defendant Civil Tort Docket No. 2022-01774-TT, submitted opposition[17] to Plaintiff's motion to amend the transcript stating:

> *"2. Wife's Motion asks this court to correct 203 alleged errors in the transcript.*
> *3. The transcript from the March 11, 2022 Hearing is the only official record of the hearing.*
> *4. As there is no other record of the March 11, 2022 hearing Husband requests this Honorable court to deny and dismiss Wife's Motion to Correct the Transcript of Court hearing on March 11, 2022."*

188. On May 4, 2022, Plaintiff filed reply[18] and stated the following:

---

[16] On April 11, 2022, Relator filed: "MOTION TO CORRECT THE TRANSCRIPT OF COURT HEARING of MARCH 11th 2022"

[17] "Response in Opposition to Defendant's Motion to Correct the Transcript of Court Hearing of march 11, 2022" dated on April 27th 2022 and signed by Hillaryy J. Moonay at Obermayer Rebmann Maxwell & Hippel LLP

[18] "Respondents Reply To "Response In Opposition To Defendant's Motion To Correct The Transcript Of Court Hearing Of March 11, 2022"

> *"10. There is in fact an audio recording of the March 11ᵗʰ, 2022, Hearing.*
> *Respondent Urve Maggitti personally recorded the hearing. The recording has*
> *not been out of Respondents custody, and has not been edited in any way shape*
> *or form. Respondent is providing copy of the audio recording on the USB Flash*
> *Drive as an EXHIBIT A in the accompanying envelope.*

### Hon. BRET M. BINDER Denied Plaintiff the Right to Amend the Transcript

189. The Court denied the motion to amend the official transcript on July 5, 2022, in it's ORDER without Memorandum, stating:

> *"3. Wife's Motion to Correct the Transcript of Court Hearing of March 11, 2022*
> *filed April 11, 2022 is DENIED."*

### Based on What Fact and Conclusion of Law Did Hon. BRET M. BINDER Deny Urve Maggitti her right to use the Court Reporter?

190. Plaintiff had filed numerous "Request For Finding Of Fact And Conclusion Of Law", moving the Court to provide legal basis on what legal ground, based on what law did the Court render its decision to deny Plaintiff the right to:

a) use the Court Reporter that she officially hired from a licensed agency to take down/memorialize the Court Hearing that took place on March 11, 2022; and

b) to deny the correction/amendment to official court transcript.[19]

191. On July 18, 2022, Plaintiff filed "Request for finding of Fact and Conclusion of Law" sating:

> *"On April 4ᵗʰ 2022, Respondent Urve Maggitti filed a motion for issuance of*
> *"Findings of Fact and Conclusion of Law" on what basis the court denied*
> *Respondent's right to use her own court reporter at the hearing on March 11ᵗʰ*
> *2022.*
> *To date, the Court has not addressed the "REQUEST FOR FINDINGS OF*
> *FACT AND CONCLUSIONS OF LAW" filed on April 4ᵗʰ 2022.*
> *Therefore Respondent is re-submitting the request to court to issue "Findings of*
> *Fact and Conclusion of Law" and asks the court to provide on what basis did the*
> *court issue its Order denying Respondent's right to use her own court reporter at*
> *the hearing on March, 11ᵗʰ 2022."*

---

[19] Generally, while every decision need not be accompanied by a written opinion, the particular nature of a case, or the issue or issues involved, may impose upon a trial court the duty to state the reasons for its decision for adequate information of the appellate court or for purposes of legal guidance. See Gandy v. State, 846 So. 2d 1141 (Fla. 2003).

### Court Never Provided The Answer

192. Hon. BRET M. BINDER never stated the law, or rationale he used in denying amendment to a clearly erroneous transcript, nor why he obstructed private contract with court reporter who's duty was to memorialize the event in the open court for the Urve Maggitti.

### Final Order August 18, 2022 - Denies the Motions

193. On August 18th 2022, Hon. BRET M. BINDER issues an Order and Memorandum, stating:

> "AND NOW, this 18th day of August, 2022, it is hereby ORDERED that all of the Motions filed by Wife described in the accompanying Memorandum are DENIED."

> "When there are mistakes in a transcript they may be, and ought to be, corrected. The judgment is founded upon the record of the justice, and the transcript should be made to truly present that record; whether it does so is to be determined by the court below, upon inspection of the docket, and all the papers and evidence before them: *Caldwell v. Thompson, 1 Rawle, 370; Miles v. Tanner, 3 Penrose & Watts, 95; Lyon v. Chalker, 2 Watts, 14.*" ___Just. v. Meeker, 30 Pa. Super. 207, 209 (1906)___

# PART 5

## CIVIL TORT ACTION - Docket NO. 2022-01774-TT

### Tort Action Filed Against Obermayer Rebmann Maxwell & Hippel LLP

194. On March 10, 2022, Plaintiff filed in The Court of Common Pleas of Chester County, Pennsylvania, Civil Action-Law, Case No. 2022-01774-TT, against attorneys at Obermayer Rebmann Maxwell & Hippel LLP: HILLARY J. MOONAY, DAVID A. NASATIR, MATHIEU J. SHAPIRO, THOMAS A. LEONARD III, NICHOLAS PODUSLENKO, in their individual and official capacity.

Lawsuit filed for eleven causes of action: Negligence, Assumption Of Duty, Tortious Interference, Undue Influence, Fraud, Constructive Fraud, Duress, Economic Duress, Conspiracy, Infliction Of Emotional Distress, Negligent Supervision.

See attached EXHIBIT: Fed. No. 2

### Hon. BRET M. BINDER - is Presiding Judge in Tort Action

195. Hon. Bret M. Binder was assigned to Tort Action, Docket NO. 2022-01774-TT as a presiding judge.

196. On April 29, 2022, the Defendants filed: "DEFENDANTS' PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT".

And the Defendants attached a copy of the Official Court Transcript [20]of March 11, 2022, in Divorce Evidentiary Hearing, using it as their primary EVIDENCE in support of their defense against Plaintiff's legal action.

### One Who Controls the Evidence Determines the Outcome

197. Hon Bret M. Binder who was in control of EVIDENCE in Divorce Action Docket No. 2021-06762-DI, has specifically denied the Plaintiff's right to correct the record/transcript.

198. Simultaneously, at the same time, the Hon Bret M. Binder, PRIOR to on or about February 28, 2023, was in control of EVIDENCE[21] that is being used by DEFENDANTS in Tort[22] Action against Plaintiff

# PART 6

## Divorce Action Docket No. 2021-01444-DI

### CONSPIRACY TO COVER-UP the EVIDENCE OF NEGLIGENCE
TIME FRAME: DECEMBER 17, 2021 - JANUARY 2022

200. Plaintiff and husband, had originally filed for Divorce on March 5, 2021.

201. Victor J. Maggitti was represented by David L. Ladov, at law firm Obermayer Rebmann Maxwell & Hippel.

203. Urve Maggitti was represented by Enrico Pagnanelli, Testa & Pagnanelli.


### Hon. BRET M. BINDER was Presiding Judge

Divorce Action Docket No. 2021-01444-DI

204. Hon. Bret M. Binder was the assigned judge in the parties first divorce action.

### Parties Reconcile and Divorce Complaint Withdrawn

205. On May 6, 2021, Praecipe to Withdraw Complaint in Divorce was filed and case permanently closed.

### MAJOR DISCOVERY NO 1

### Hon. Bret M. Binder had First Hand Knowledge of Obermayer Defendants' Negligence

---

[20] Civil Tort Action, Docket NO. 2022-01774-TT
[21] Divorce Action Docket No. 2021-06762-DI
[22] Civil Tort Action, Docket NO. 2022-01774-TT

206. On May 25, 2022, Plaintiff decided to inspect the first divorce case file.[23] And to her surprise discovered:

a) Court Order, Dated November 17, 2021, FILED December 21, 2021 issued and signed by Judge Bret M. Binder. The Order states:

> *"AND NOW, This 17th day of December, 2021. Upon review of the file in the above-captioned matter, the following deficiency in the record exists:*
> *1. This Divorce Complaint was withdrawn by joint Praecipe on May 6, 2021. No action in Divorce currently exists."*

See attached EXHIBIT: Fed. No. 16

### Unanswered Questions in Major Discovery No 1

207. The court Order [24] Filed on December 17, 2021 was (assumedly) sent to attorneys of record:

a) David L. Ladov, Obermayer Rebmann Maxwell & Hippel[25]

b) Enrico Pagnanelli, Testa &Pagnanelli.[26]

66. David L. Ladov is part of the same law firm that represented husband in the divorce action, did he alert his colleague Hillary J. Moonay of this Order?

208. If he did, then why Hillary J. Moonay took no immediate corrective action to remedy the mis-filing?

209. Relator had no idea of the existence of this Order prior to the discovering it on May 27th 2022, therefore the discovery process[27] will determine the role played here by Enrico Pagnanelli, who was Relator's attorney of record in the first divorce action.

### MAJOR DISCOVERY NO 2

### Defendant Hillary J. Moonay attempted to correct her negligence BUT Stopped in midway. WHY?

210. Relator to her amazement made another major discovery:

b) "PRAECIPE TO TRANSFER DOCUMENT TO CORRECT FILE"

---

[23] Docket No. 2021-01444-DI
[24] Docket No. 2021-01441-DI.
[25] Representing husband Docket No. 2021-01441-DI
[26] Representing wife, the Relator Docket No. 2021-01441-DI
[27] Civil Action, Docket NO. 2022-01774-TT

Dated January 4, 2022, FILED January 5, 2022, signed by Hillary J. Moonay[28], husband's attorney of record at the time.

The Praecipe states:

> **"7. On November 29, 2021, a Marital Settlement Agreement was erroneously filed in the above-captioned matter, rather than under the new Docket Number mentioned above, No. 2021-06762-DI.**
> **8. Plaintiff therefore requests that the Marital Settlement Agreement filed under the above-captioned Docket Number, be transferred to Docket Number 2021-06762-DI."**

See attached EXHIBIT: Fed. No. 17

211. Relator observed from the Case Summary Report[29] entry dated:

> "12/21/2021 ORDER-REMAND-DIVORCE BY BINDER, J. ON DECEMBER 17, 2021
> COPIES SENT TO ALL COUNSEL AND UNREPRESENTED PARTIES ON DECEMBER 22, 2021"

See attached EXHIBIT: Fed. No. 18

### Unanswered Questions in Major Discovery No 2

212. When Defendant Hillary J. Moonay filed "Praecipe to Transfer Document to Correct File" into the closed divorce (Docket No 2021-01441-DI) file she was obligated to serve copies of her filing to opposing party.

That opposing party is Plaintiff Urve Maggitti and Urve Maggitti was not served with copy of this filing.

213. Or did Defendant Hillary J. Moonay serve the attorney of record that Plaintiff had for the first divorce action[30]?

214. If Defendant Hillary J. Moonay serve the attorney of record that Plaintiff had at that time, (Enrico Pagnanelli), why did she not serve Plaintiff Urve Maggitti as well, knowing that in the second divorce action Plaintiff had no attorney?

215. In her Praecipe Hillary J. Moonay makes no reference to the fact that not only was Marital Settlement Agreement filed into wrong case file but so were all other documents that

---

[28] Obermayer Rebmann Maxwell & Hippel LLP
[29] Docket No. 2021-01444-DI
[30] Docket No. 2021-01444-DI Enrico Pagnanelli, Testa & Pagnanelli.

parties signed on November 24th 2021.

216 And Defendant Hillary J. Moonay makes no mention in her Praecipe that all the documents had been prepared by her with the inactive divorce case number which caused them to be filed into closed divorce record.

## MAJOR QUESTIONS:

217. Why didn't Defendant Hillary J. Moonay file same "Praecipe to Transfer Document to Correct File" into the active divorce case[31]?

218. Did someone advise the Defendant Hillary J. Moonay not to file same "Praecipe to Transfer Document to Correct File" into the active divorce case?

## Fraud Upon Victor J. Maggitti Jr. by his own Attorney's

219. Instead the **attorneys** at law firm Obermayer Rebmann Maxwell & Hippel LLP and Hillary J. Moonay misrepresented to their client, Victor J. Maggitti Jr. that it is Plaintiff Urve Maggitti's "fault" why the Divorce is Delayed, because Plaintiff Urve Maggitti was refusing to re-sign the documents the with a new date in 2022.

## "Killing two birds with the same stone"

220. Defendants Obermayer Rebmann Maxwell & Hippel LLP plan was simple, cover-up the legal malpractice and negligence, which caused tremendous financial loss to their client Victor J. Jr. , from their own client and simultaneously keep billing him for their "services" in obtaining the Divorce Decree.

## Hon.  BRET M. BINDER - First Hand Knowledge of the Fraud Upon Victor J. Maggitti Jr. by his Own Attorney's

221. Documented evidence, found in the official court docket, shows that the Hon. Bret M. Binder was personally aware of the fact that attorney for Relator's husband Hillary J. Moonay was deliberately misleading her own client in the Divorce Action.

222. Despite being aware of that fact Hon. Judge Bret M. Binder allowed Hillary J. Moonay to proceed and benefit from her own negligence at the expense of her own client.

These and many other questions will be subject to major discovery in Civil Tort Action, Docket NO. 2022-01774-TT

---

[31] Docket NO. 2021-06762-DI.

# PART 7

## CIVIL TORT ACTION - Docket NO. 2022-01774-TT

### Motion to Disqualify Hon. BINDER from Tort Action

223. On May 23, 2022, after finding that Hon. Bret M. Binder has been assigned to Civil Action, Docket No. 2022-01774-TT, Relator filed a "Motion to Disqualify Judge Bret M. Binder J." from the civil tort action.

224. On May 31, 2022, Hon. Bret M. Binder issued an "Order and Memorandum" denying the said motion to disqualify.

### Writ of Mandamus filed with Supreme Court

225. On June 24, 2022, Plaintiff filed Petition for Writ of Mandamus, No.72 MM 2022, with the Supreme Court of Pennsylvania to order Hon. Bret M. Binder to be disqualified from Civil Tort Action, Docket NO. 2022-01774-TT.

See attached EXHIBIT: Fed. No. 37

227. On August 15, 2022, Plaintiff/Relator filed:

"Application for Leave to File Reply to Answer *Writ of Mandamus* Alternatively "Application for Leave to File an Amended Petition for Writ of Mandamus" Docket No. 2022-01774-TT County of Chester, Court of Common Pleas"

See attached EXHIBIT: Fed. No. 38

### Writ of Mandamus, No. 72 MM 2022 - Denied

228. On December 22, 2022, Supreme Court of Pennsylvania issued an ORDER,

stating:

*"PER CURIAM. AND NOW, this 22nd day of December, 2022, the Application for Leave to File Original Process is GRANTED, and the Petition for Writ of Mandamus and the "Application for Leave to File Reply to Answer" are DENIED. The Prothonotary is DIRECTED to strike the name of the jurist from the caption."*

See attached EXHIBIT: Fed. No. 19

229. On January 10, 2023, Plaintiff filed in the Supreme Court:

"1.APPLICATION FOR CLARIFICATION 2. APPLICATION FOR RECONSIDERATION RE: Maggitti, U., Pet. v. CCP Judge No. 72 MM 2022 Lower Appellate Court Docket No: Trial Court Docket No: 2022-01774-TT"

See attached EXHIBIT: Fed. No. 20

230. On February 28, 2023, Supreme Court denied the application and request for clarification. See attached EXHIBIT: Fed. No.21

# PART 8

## CIVIL TORT ACTION - Docket NO. 2022-01774-TT

## RULES OF EVIDENCE

### Hon. Bret M. Binder is Tampering with Evidence!

231. On October 1, 1998, the Pennsylvania Supreme Court adopted Rules of Evidence[32] for use in all proceedings in Pennsylvania.

---

[32] **Rule 104. Preliminary Questions**
**(a) In General. The court must decide any preliminary question** about **whether** a witness is qualified, a privilege exists, **or evidence is admissible.** In so deciding, the court is not bound by evidence rules, except those on privilege.
**Notes of the Advisory Committee on Proposed Rules**
"*Subdivision (a).* The applicability of a particular rule of evidence often depends upon the existence of a condition. Is the alleged expert a qualified physician? Is a witness whose former testimony is offered unavailable? Was a stranger present during a conversation between attorney and client? In each instance the admissibility of evidence will turn upon the answer to the question of the existence of the condition. **Accepted practice, incorporated in the rule, places on the judge the responsibility for these determinations.** McCormick §53; Morgan, Basic Problems of Evidence 45–50 (1962)."
"To the extent that these inquiries are factual, **the judge acts as a trier of fact.** Often, however, rulings on evidence call for an evaluation in terms of a legally set standard. Thus when a hearsay statement is offered as a declaration against interest, a decision must be made whether it possesses the required against-interest characteristics. **These decisions, too, are made by the judge.**"
"**If preliminary questions of conditional relevancy were determined solely by the judge,** as provided in **subdivision (a),** the functioning of the jury as a trier of fact would be greatly restricted and in some cases virtually destroyed."
"Accepted treatment, as provided in the rule, is consistent with that given fact questions generally. **The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted.** "
"**The order of proof here, as generally, is subject to the control of the judge.**"
**Rule 613. Witness's Prior Statement**
*(a) Showing or Disclosing the Statement During Examination.* When examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness. But the party must, on request, show it or disclose its contents to an adverse party's attorney.
*(b) Extrinsic Evidence of a Prior Inconsistent Statement.* **Extrinsic evidence of a witness's prior inconsistent statement** is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2).
**Rule 607. Who May Impeach a Witness**
**Any party,** including the party that called the witness, **may attack the witness's credibility.**

These Rules closely parallel the Federal Rules of Evidence, which have been in existence for decades. The Pennsylvania Rules of Evidence provide that the rules are applicable to proceedings in all courts.

### Rules of Evidence Effect on Plaintiff's Tort Action

232. Hon. Bret M. Binder was in TOTAL CONTROL of EVIDENCE in Plaintiff's: Divorce Action and Civil Tort Action.

233. If the Tort action is allowed to proceed with incorrect testimony- memorialized in official Court Transcript, what will be the effect?

As per Rule 104:

> "The court [Hon. Bret M. Binder/Hon. Anthony T. Verwey/now Hon. William P. Mahon] must decide any preliminary question.... whether ..... evidence [testimony/transcript] is admissible"

> "Accepted practice, incorporated in the rule, places on the judge [Hon. Bret M. Binder//Hon. Anthony T. Verwey/now Hon. William P. Mahon] the responsibility for these determinations [testimony/transcript]."

> "...the judge [Hon. Bret M. Binder/Hon. Anthony T. Verwey/now Hon. William P. Mahon] acts as a trier of fact [testimony/transcript]..... decisions ....are made by the judge [Hon. Bret M. Binder/Hon. Anthony T. Verwey/now Hon. William P. Mahon]."

> "...preliminary questions of conditional relevancy [testimony/transcript] were determined solely by the judge [Hon. Bret M. Binder/Hon. Anthony T. Verwey/now Hon. William P. Mahon]."

> "The judge [Hon. Bret M. Binder/Hon. Anthony T. Verwey/now Hon. William P. Mahon] makes a preliminary determination whether the foundation evidence [testimony/transcript] is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted."

> "The order of proof [testimony/transcript] here, as generally, is subject to the control of the judge [Hon. Bret M. Binder/Hon. Anthony T. Verwey/now Hon. William P. Mahon]."

234. For the purposes of using example of Rule 607 and 613, as it relates to Plaintiff, Urve Maggitti, she is the "witness" and the "prior statements" are the testimony given by Plaintiff/Relator under oath in her divorce hearing on March 11, 2022, before the Hon. Bret M. Binder.

235. Keep in mind that the official court Transcript of that hearing is incorrect and the Hon. Bret M. Binder has refused to allow amending it without providing any legal basis for his decision.

### Hon. Anthony T. Verwey continued same path as Hon. Binder

236. And Hon. Anthony T. Verwey continued exactly same path as Hon. Binder before him, Hon. Anthony T. Verwey has denied Plaintiff's motion to stay tort action until the issue of evidence has been corrected.

### Hon. Anthony T. Verwey Recusal From Tort Action

237. On April 28, 2023, Hon. Anthony T. Verwey recused himself from Tort Action Docket No: 2022-01774-TT. See attached EXHIBIT: Fed. No. 22

### Hon. William P. Mahon a new Judge in Charge of Tort Action Docket No: 2022-01774-TT

238. On or about May 3, 2023, Hon. WILLIAM P. MAHON has been assigned to the Tort Action Docket No: 2022-01774-TT.

As per Rule 613 and 607:

> "When examining a witness [Urve Maggitti] about the witness's [Urve Maggitti] prior statement [made under oath at court hearing March 11, 2022]"

> "Extrinsic evidence of a witness's [Urve Maggitti] prior inconsistent statement [made under oath at court hearing March 11, 2022] is admissible only if the witness [Urve Maggitti] is given an opportunity to explain or deny the statement [made under oath at court hearing March 11, 2022] and an adverse party is given an opportunity to examine the witness about it."

> "Any party [Defendants, Hon. Binder, Hon. Verwey, and now Hon. William P. Mahon], including the party that called the witness, may attack the witness's [Urve Maggitti] credibility."

### Impeached by Truthful Testimony

239. Plaintiff, Urve Maggitti speaks and testifies the truth, and her testimony under oath in divorce action on March 11, 2022, court hearing is the truth that she will be speaking and testifying to in her tort action.

240. IF the March 11, 2022, court transcript is allowed to stand as is, then Plaintiff, Urve Maggitti's credibility will be attacked, and her truthful testimony will be impeached - with the "blessing" of the Hon. Bret M. Binder, because Plaintiff's truthful testimony will not match the incorrect transcript, that is being currently used as evidence in the tort action by Obermayer defendants.

## Urve Maggitti was "Set Up" to Fail

241. Looks like Plaintiff, Urve Maggitti has been "set up" to fail[33] by Hon. Bret M. Binder, in the Tort Action Docket No: 2022-01774-TT a lawsuit against attorneys at Obermayer Rebmann Maxwell & Hippel LLP who have caused serious harm to Plaintiff.

## Three Judges Have All Continued to Disregard Plaintiff's rights:
## Hon. BRET M. BINDER, Hon. ANTHONY T. VERWEY, Hon. WILLIAM P. MAHON

242. Three judges of Chester County Court of Common Pleas, have disregarded Plaintiff's motions raising substantive issues with rules of evidence.

243. Three judges of Chester County Court of Common Pleas, have disregarded Plaintiff's motions raising substantive violations by Defendant's Obermayer Rebmann Maxwell & Hippel LLP.

## Hon. BINDER, Hon, VERWEY, Hon. MAHON: All Denied to Issue STAY

244. Plaintiff has filed Stay request's into Tort Action to all three judges who have been and currently preside over the action. All three (3) have denied the request, despite the fact that active appeal based on important issue of evidence is literally pending in the appeal before the Supreme Court of Pennsylvania. Why?

## Attorney's Can Do No Wrong, Anything Goes

245. All three judges: Hon. BINDER, Hon, VERWEY, Hon. MAHON completely disregard issues of severe prejudice to Plaintiffs case in Tort Action against Defendant's Obermayer Rebmann Maxwell & Hippel LLP.

246. Despite complaints against Defendant's Obermayer Rebmann Maxwell & Hippel LLP not being truthful to the Court, or Plaintiff, none seems to matter.

## Can Attorney Simultaneously be a Defendant, a Witness, And a Defense Attorney for his Co-Defendants?

247. On June 5, 2023, Plaintiff filed "Motion To Show Cause" moving the court to ORDER the Defendant Mathieu J. Shapiro to show his authority to act.

See attached EXHIBIT: Fed. No. 23

## In what capacity is Mr. Mathieu J. Shapiro submitting the pledging(s)?

248. When a lawyer takes on both roles, jurors are likely to be confused about "whether a

---

[33] And as of this date Hon. William P. Mahon has denied Plaintiff motion to stay tort action until the issue of evidence has been corrected. See attached EXHIBIT: Fed. No. 23

statement by an advocate-witness should be taken as proof or as an analysis of the proof."

Rule 3.7, cmt. [2].[34]

"Confusion regarding the lawyer's role could prejudice a party or call into question the impartiality of the judicial process itself." *See People v. Rivera,* 986 N.E. 2d 634 (Ill. 2013)

> Rule 1.7 (a), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

### Hon. WILLIAM P. MAHON Denied to Issue Rule To Show Cause

249. See footnote in ORDER issued on June 6, 2023.

See attached EXHIBIT: Fed. No. 24

> "Both reason and authority answer this proposition in favor of correcting the transcript, thereby fulfilling the policy of the law by securing to the defendant a trial by jury.
> By the same reasoning the law should not allow to an appellant the advantages of an appeal secured and sustained by an admittedly false record." *Halfast v. Kerr,* **1910 WL 3177, at \*5 (Pa. Com. Pl. 1910)**

250. Both reason and authority are in favor of correcting the transcript, thereby fulfilling the policy of the law by securing to the Plaintiff a fair appeal and fair civil tort action[35].

By the same reasoning the law should not allow to Defendants[36] the advantages of false transcript secured and sustained by an admittedly false record, the transcript in their defense of civil tort action filed against them by Appellant.

### Different Names - Same Actions

251. The names change: Hon. BRET M. BINDER, Hon. ANTHONY T. VERWEY and Hon. WILLIAM P. MAHON- but the actions remain the same.

> **"Where a judge has had an earlier significant, personal involvement as a prosecutor in a critical decision in the defendant's case, the risk of actual bias in the judicial proceeding rises to an unconstitutional level.** Due process entitles Terrance Williams to "a proceeding in which he may present his case with assurance" that no member of the court is "predisposed to find against

---

[34] Ellen J. Bennett, Helen W. Gunnarsson. Annotated Model Rules of Professional Conduct (9th ed., 2019) (Kindle Locations 11217-11222). American Bar Association
[35] Civil Tort Action, Docket NO. 2022-01774-TT
[36] Hillary J. Moonay, David A. Nasatir, Mathieu J. Shapiro, Thomas A. Leonard III, Nicholas Poduslenko, the Partners at the law firm Obermayer Rebmann Maxwell & Hippel LLP

him." *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). The judgment of the Supreme Court of Pennsylvania is vacated, and the case is remanded for further proceedings not inconsistent with this opinion." ***Williams v. Pennsylvania,* 579 U.S. 1, 16–17, 136 S. Ct. 1899, 1910, 195 L. Ed. 2d 132 (2016)**

# **PART 9**

## SUPERIOR COURT OF PENNSYLVANIA,
### Appellate Docket NO. 2299 EDA 2022

### **APPEAL: SUPERIOR COURT OF PENNSYLVANIA**

252. On September 7, 2022, Plaintiff filed Notice of Appeal in ref: March 11, 2022, Evidentiary Hearing in Divorce Action, Docket NO. 2021-06762-DI, denying:

   a) to correct the Court Transcript; and
   b) denying the use of privately hired Court Reporter

253. On November 18, 2022, Superior Court issued an ORDER, stating:

   "Pursuant to Pa. R.A.P. 2185(a) briefs for the appellant must be filed on or before December 28, 2022."
See attached EXHIBIT: Fed. No. 25

254. The same court ORDER also specified the following fact:

   "It is your responsibility to review the record inventory list and make sure that the certified record forwarded to this court contains those documents necessary to the issues raised on appeal; failure to do so may result in waiver. Pa. R.A.P. 1926, 1931 (d); Bennyhoff v. Pappert, 790 A.2d 313 (Pa.Super.2001); Commonwealth v. Wint, 730 A.2d 965 (Pa.Super.1999)."

255. On November 17, 2022, trial/family court issued notarized:
   "CERTIFICATE AND TRANSMITTAL OF RECORDS UNDER
   PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1931 (C)"

256. This was proof that trial/family court had transferred an incorrect record, therefore requiring immediate action on the part of the Plaintiff.

### **Case of Two Jurisdictions**
### **Divorce: No. 2021-06762-DI & Tort: NO. 2022-01774-TT**

257. Divorce Action Trial Court Docket No. 2021-06762-DI: Final decree was issued August 24, 2022, and final Order was filed on August 18, 2022.

The Superior Court of Pennsylvania has the exclusive appellate jurisdiction[37] over the said appeal because it is an appeal from final order of the court of common pleas.=

258. Civil Tort Action Trial Court Docket NO. 2022-01774-TT: Is an ongoing live civil action that is pending in the Court of Common Pleas, Chester County.

The Superior Court of Pennsylvania has no jurisdiction[38] over any live pending case in the inferior court where no final Order has been entered by the court.

259. The Supreme [39] Court of Pennsylvania has the original jurisdiction of cases of mandamus and injunction to courts of inferior jurisdiction 42 Pa.C.S.A. § 721(2), and 42 Pa.C.S.A. § 722 (7) and 42 Pa.C.S.A.

260. And 42 Pa.C.S.A. § 726 exclusive, extraordinary and the King's Bench powers to issue writs of mandamus in the active pending cases, and to decide violations of inalienable rights protected by the Constitution of Commonwealth of Pennsylvania and the Federal Constitution.

## SUPREME COURT JURISDICTION

### Jurisdictional Necessity to Involve Supreme Court

261. On November 23, 2022, Plaintiff filed "Petition for Writ of Mandamus or in the Alternative Petition for Injunction" with the **Supreme Court** of Pennsylvania, Docket No. 121 MM 2022, moving the court to issue:

        a) an Order directing the trial/family court to correct the record
        b) an Order directing the trial court and the appeals court to abate all proceedings

---

[37] Pa. Title 42, § 742. Appeals from courts of common pleas.
[38] Pa. Title 42, § 742. Appeals from courts of common pleas.
[39] Mandamus in the active pending cases.
This statutory jurisdiction complements the court's supervisory or King's Bench powers conferred by Pa. Const. Art. 5, § 103 and Section 1 of the Schedule to the Judiciary Article (The Supreme Court).4 These provisions have their roots in the Judiciary Act of 17225 and are also codified in Section 502 of the Judicial Code. 6 Section 502 provides:
The Supreme Court shall have and exercise the powers vested in it by the Constitution of Pennsylvania, including the power generally to minister justice to all persons and to exercise the powers of the court, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at
Westminster, or any of them, could or might do on May 22, 1722. The Supreme Court shall also have and exercise the following powers:
(1) All powers necessary or appropriate in aid of its original and appellate jurisdiction which are agreeable to the usages and principles of law.
(2) The powers vested in it by statute, including the provisions of this title.

until Supreme Court issues a ruling on all issues raised in the mandamus[40]

262. Plaintiff was informed by the clerk of the **Supreme Court** that she has to file the request to stay the appeal process directly with the Superior Court.

263. On December 20 [41], 2022, Plaintiff filed in **Superior Court**:

"Application to Stay the Appeal No. 2299 EDA 2022 or Alternatively an Injunction EMERGENCY APPLICATION FOR STAY PENDING THE DISPOSITION OF A PETITION OF WRIT OF MANDAMUS OR IN THE ALTERNATIVE PETITION FOR INJUNCTION Ref: Supreme Court of Pennsylvania, No. 121 MM 2022 Maggitti, U., Pet. v. Hon. Binder"

- moving the court with emergency petition because brief(s) were due on or before December 28, 2022, to stay the Appeal No. 2299 EDA 2022 or in the alternative issue an injunction pending the decision on the "Petition for Writ of Mandamus or in the Alternative Petition for Injunction" by Supreme Court of Pennsylvania.

264. On December 23, 2022, the **Superior Court** issued an ORDER denying the Appellant's "Application to Stay the Appeal No. 2299 EDA 2022 or Alternatively an Injunction."

See attached EXHIBIT: Fed. No. 26

265. On December 27, 2022, Appellant filed in the **Superior Court** of Pennsylvania:

"EMERGENCY APPLICATION for:
1. Correction of Original Record of Trial Court Docket No. 2021-06762-DI
2. Leave to extend the deadline for filing of Brief in Appeal No. 2299 EDA 2022
3. Emergency Stay Application for Reconsideration of
   Court Order DENYING: "EMERGENCY APPLICATION FOR STAY PENDING THE DISPOSITION OF A PETITION OF WRIT OF MANDAMUS OR IN THE ALTERNATIVE PETITION FOR INJUNCTION Ref: Supreme Court of Pennsylvania, No.121 MM 2022 Maggitti, U., Pet. v. Hon. Binder"

266. On December 28, 2022, Appellant file in the **Supreme Court,** Docket No. 135 MM 2022:

"EMERGENCY APPLICATION FOR STAY
Docket No. 2299 EDA 2022 Superior Court of
Pennsylvania Ref: Writ of Mandamus 121 MM 2022"

267. On December 30, 2022, the **Superior Court** of Pennsylvania issued an ORDER denying Appellant's "EMERGENCY APPLICATION", filed on December 27, 2022.
The ORDER stated:

*"1. Appellant's request for an extension in which to file her brief is hereby GRANTED. Appellant shall file her brief on or before **January 6, 2023**.*

---

[40] Writ of Mandamus No. 121 MM 2022
[41] Signed on December 19, 2022

*2. All other requested relief is DENIED.*"

See attached EXHIBIT: Fed. No. 27

268. On January 6, 2023, Appellant filed with the **Superior Court** of Pennsylvania, in:[42]

"EMERGENCY APPLICATION For:1. Application for Clarification
2. Application for Reconsideration
REF: Court Order, Dated December 30, 2022"

270. On January 27, 2023, the **Superior Court** of Pennsylvania issued *sua sponte* ORDER *per curiam* Dismissing the Appeal No. 2299 EDA 2022, for "..Appellant has failed to file her Appellant brief."[43] See attached EXHIBIT: Fed. No. 28

271. On February 6, 2023, **Supreme Court** issued an Order denying petition for Writ of Mandamus for Emergency Stay, No. 135 MM 2022. See attached EXHIBIT: Fed. No. 29

272. On February 17, 2023, **Superior Court** issued an Order denying the Application to Reinstate the Appeal, filed on February 10, 2023. See attached EXHIBIT: Fed. No. 30

273. On March 15, 2023, Supreme Court issued an Order denying Writ of Mandamus No. 121 MM 2022. See attached EXHIBIT: Fed. No. 31

"The fundamental tool for appellate review is the official record of what occurred at trial. Only the facts that appear in this record may be considered by a court.[44] As recently as *McCaffrey v. Pittsburgh Athletic Association*, 448 Pa. 151, 293 A.2d 51 (1972), this Court held that "it is black letter law that an appellate court cannot consider anything which is not a part of the record in the case." Id. at 162, 293 A.2d at 57. Consistent with our responsibility to view only the record facts, we cannot accept the assertions in the trial court's written opinion that any reasonable doubt instruction

---

[42] Assigned Docket No. 135 MM 2022

[43] "Appellant's application, filed January 6, 2023, and entered on the docket as an Application for Reconsideration, is DENIED.
  In light of the fact that Appellant has failed to file her Appellant brief on or before January 6, 2023 as required, the appeal at 2299 EDA 2022 is hereby DISMISSED"

[44] The authorities are legion. See, e.g., Interstate Cemetery Co. Appeal, 422 Pa. 594, 595 n. 1, 222 A.2d 906, 907 n. 1 (1966); Kilian v. Allegheny County Distribs., 409 Pa. 344, 349, 185 A.2d 517, 519-20 (1962); Wolf v. Commonwealth, 403 Pa. 499, 504-05, 170 A.2d 557, 561 (1961); Brolasky's Estate, 309 Pa. 30, 41, 163 A. 292, 295-96 (1932); Kellerman's Estate, 242 Pa. 3, 14, 88 A. 865, 869 (1913); Walter v. Sun Fire Office, 165 Pa. 381, 385-86, 30 A. 945, 946 (1895); Central Bank of Pittsburgh v. Earley, 113 Pa. 477, 481-82, 6 A. 236, 237-38 (1886); Ohio v. Union Trust Co. of Pittsburgh, 137 Pa. Super. 75, 87, 8 A.2d 476, 482 (1939); Wible v. Shor, 102 Pa. Super. 527, 531, 157 A. 322, 323 (1931). Although all the cases cited involve civil litigation, any requirement that an appellate court is bound by the record facts applies a fortiori to criminal cases, where accused persons enjoy greater procedural and substantive rights.
Commonwealth v. Young, 456 Pa. 102, 116 n.15 (Pa. 1974)

was given other than that which appears in the record." **Commonwealth v. Young, 456 Pa. 102, 114-16 (Pa. 1974)**

274. Violation of Constitutionally Protected Rights, due process, equal protection clause First, Fourth, Fifth, Ninth, and Fourteenth Amendments Plaintiff was denied the right to take appeal on corrected record, denied stay in appeal pending mandamus in Supreme Court, was denied injunction, denied equal protection of law.

"In *Morris v. Galbraith*, **8 Watts 166, the Supreme Court**, with reference to the correction of a record, said:
   "If a mistake or fraud be committed in making up the record, it can neither be averred nor proved in a collateral proceeding, nor in an action founded upon it. The record must be received as absolute verity and speak for itself. If wrong, the only mode of having it corrected or set right is by an application to the court where the proceeding or judgment was had, of which the record is a memorial, to have it reformed according to the truth."
 In the case of *Justice v. Meeker*, 30 Pa. Super. Ct. 207, the plaintiffs and the justice of the peace presented their petition to court, averting that the transcript on file was not a true and correct transcript of the proceedings before the justice, the court directed the amendment made as prayed.
   On appeal the Superior Court, speaking through Judge Porter, said:
   "The order of the court permitting the amendment of the transcript was right; this was not an amendment of the proceedings before the justice, but the correction of mistakes in the transcript so as to make it correctly show what proceedings were had before the justice. When there are mistakes in a transcript they may be, and ought to be, corrected. The judgment is founded upon the record of the justice, and the transcript should be made to truly present that record; whether it does so is to be determined by the court below upon inspection of the docket, and all the papers and evidence before them. *Caldwell v. Thompson*, **1 Rawle 370**; *Miles v. Tanner*, **3 Penrose & Watts 95**; *Lyon v. Chalker*, **2 Watts 14.**"
_Halfast v. Kerr_, *1910 WL 3177, at \*3 (Pa. Com. Pl. 1910)*

   "A transcript gathers its virtue from the presumption that it is a correct copy of the record affected, and when that transcript is admittedly false, it is stripped of that virtue. When the truth is laid bare by a correct record and a true transcript thereof, the defendant was not entitled to an appeal. The justice either having discovered his mistake or repentant of his error, and obedient to the dictates of a quickened conscience, has corrected his record to correspond with the proceedings had before him."
_Halfast v. Kerr_, *1910 WL 3177, at \*4 (Pa. Com. Pl. 1910)*

   "Upon every principle of law every transcript must be a true copy of the record as it purports to be. Every docket should be a correct statement of the proceedings it records. Where such record is a false and the transcript is a true statement of the

proceedings, the record may be corrected to correspond with the transcript. Where such record is a correct statement of the proceedings, and the transcript is not a true copy thereof, it may be corrected to conform with the record."
*Halfast v. Kerr*, *1910 WL 3177, at \*4 (Pa. Com. Pl. 1910)*

"At a preliminary hearing held March 7, 1977, defendants pursuant to Pa.R.Crim.P. 141 sought to make tape recordings of the proceedings. The municipal court prohibited the recordings. On April 11, 1977, defendants filed with this Court applications for leave to file petitions for a writ of prohibition. We granted the applications and treated the petitions for writs of prohibition as petitions requesting this Court to assume plenary jurisdiction. We accepted plenary jurisdiction to resolve the question of whether a defendant may make a tape recording at a preliminary hearing when the proceedings are officially recorded. We hold that defendants are entitled to make such recordings."
*Wilson v. Blake, 475 Pa. 627, 628-29 (Pa. 1977)"*

And the Superior Court has departed from accepted judicial practices and abused its discretion when it denied Appellant the right to take her appeal based on correct record.

"it is black letter law that an appellate court cannot consider anything which is not a part of the record in the case." **Id. at 162, 293 A.2d at 57**.

"The fundamental tool for appellate review is the official record of what occurred at trial. Only the facts that appear in this record may be considered by a court."
*Commonwealth v. Young*, **456 Pa. 102, 114-16 (Pa. 1974)**

Whereas, the well-established case law is clear beyond dispute:

"The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal…[A]ny document which is not part of the officially certified record is deemed nonexistent…Simply put, if a document is not in the certified record, the Superior Court may not consider it.")
*Com. v. Preston, 904 A.2d 1, 6-7 (Pa. Super. 2006), 916 A.2d 632 (Pa. 2007)*

# **PART 10 a**
## SUPERIOR COURT OF PENNSYLVANIA

**Law firm Obermayer Rebmann Maxwell & Hippel LLP claim to represent Victor J. Maggitti Jr as counsel in Appeal No. 2299 EDA 2022, <u>when no evidence of such agency relationship ever existed.</u>**

275. On January 19, 2023, Law firm Obermayer Rebmann Maxwell & Hippel LLP and attorney Hillary J. Mooney submitted motion to Superior Court claiming to withdraw from representing Victor J. Maggitti Jr as counsel in Appeal No. 2299 EDA 2022, when no evidence of such agency relationship ever existed. See attached EXHIBIT: Fed. No. 32

276. On January 27, 2023, the Superior Court "GRANTED" Law firm Obermayer Rebmann Maxwell & Hippel LLP motion to withdraw. See attached EXHIBIT: Fed. No. 33

277. On January 30, 2023, Petitioner filed:

"PETITION/MOTION TO SHOW CAUSE FOR MATERIALLY FALSE STATEMEN by HILLARY J. MOONAY, attorney ID# 77647"

See attached EXHIBIT: Fed. No. 34

278. On January 30, 2023, Petitioner was not aware that the court had Dismissed *sua sponte* the Appeal No. 2299 EDA 2022, *per curiam* on Friday January 27, 2023.
See attached EXHIBIT: Fed. No. 28

279. Petitioner had 14 days to file a response challenging the filing by Attorney Hillary J. Mooney, and Obermayer Rebmann Maxwell & Hippel LLP.

January 19, 2023 + 14 days => **February 2, 2023.**

280. The Superior Court violated Petitioner's procedural due process right, by deciding a request before the court, before an opposing party had an opportunity to weigh in on the matter.

281. On February 10, 2023, Petitioner moved the Superior Court to VACATE THE VOID ORDER . See attached EXHIBIT: Fed. No. 35

282. On February 17, 2023, Superior Court issued an ORDER, that Plaintiff's February 10, 2023, application is DENIED. "Application for Relied". See attached EXHIBIT: Fed. No. 36

283. Same February 17, 2023, ORDER stated:

"The Prothonotary of this Court is no longer to accept any further filings in the above captioned appeal."

See attached EXHIBIT: Fed. No. 36

# PART 10 b

## SUPREME COURT OF PENNSYLVANIA

### Petition for Review and to Vacate a Void Order ORDER

284. On February 22, 2023, Plaintiff filed:

"PETITION FOR ALLOWANCE OF APPEAL Alternatively Petition for Review and to **Vacate a Void Order ORDER** of the Superior Court, Dated January 27, 2023, Granting "Motion For Leave to Withdraw as Counsel For Appellee, Victor J. Maggitti Jr." **IS A VOID ORDER** Court Had No Jurisdiction To Issue The Said Order  Court Had Not Established The Subject Matter Jurisdiction"

See attached EXHIBIT: Fed. No. 37

### Supreme Court "Error"

285. On February 23, 2023, Plaintiff received correspondence from Supreme Court's Prothonotary Office, which stated the following:

"This is to acknowledge receipt of your Petition for Allowance of Appeal of the Superior Court's **January 19, 2023 order,** permitting Respondent's counsel to withdraw. The Petition for Allowance of Appeal has **not** been accepted for filing as the **January 19, 2023 order** is **not** a final, appealable order.

The only procedural mechanism to appeal Superior Court's **final** order of January 27, 2023, dismissing the appeal, in this case, is by a Petition for Allowance of Appeal of the final order, which was accepted via a separate document and corrections request has been sent separately."

See attached EXHIBIT: Fed. No. 40

286. There was never any ORDER issued/dated on January 19, 2023, by Superior Court of Pennsylvania.

287. Plaintiff called the Prothonotary of the Supreme Court and explained that they had mase a mistake when they Dismissed the petitioners proper and timely filed Petition for Appeal, the Supreme Court had made a simple mistake by mixing-up the dates: January 19, 2023, the date of submission of interloper motion and void order rendered/dated by the court on January 27, 2023.

288. January 27, 2023, Void Order[45] is a **final** Order, because the second Order issued on the same date: January 27, 2023, DISMISSED[46] the Petitioner's Appeal Docket No. 2299 EDA 2022.

### INTERLOPER

289. The January 19, 2023, is the date when the Law Firm Obermayer Rebmann Maxwell & Hippel LLP and attorney Hillary J. Mooney submitted motion to Superior Court claiming to

---

[45] See attached EXHIBIT: Fed. No. 33
[46] See attached EXHIBIT: Fed. No. 33

withdraw from representing Victor J. Maggitti Jr as counsel in Appeal No. 2299 EDA 2022, when no evidence of such agency relationship ever existed.

290. The void order/judgment was issued by Superior Court on **January 27, 2023,**[47] and is a totally separate matter, **NOT involved in any way shape or form,** with any of the appeals filed by Petitioner Urve Maggitti, because the ex-husband Victor J. Maggitti was never part of the appeals, and none of the issues on appeals pertain to him in any way shape or form.

291. Victor J. Maggitti's name is listed on the caption simply because the court's rules require to use the title of the original trial court caption for appeals filed in appellate courts.

### Non-Party to Appeals

292. Victor J. Maggitti was never part of the appeals filed by Petitioner Urve Maggitti. On January 3, 2022, Victor J. Maggitti Jr, provided notarized affidavit, stating:

> "…I do not consider myself involved in your appeal and have not retained counsel to represent me in the appeal."

### Court Without Jurisdiction

"A judgment rendered without jurisdiction is void."
***Cloman v. Cloman*, 229 Ark. 447, 316 S.W.2d 817 (1958).**

293. Superior Court had no subject matter jurisdiction, no jurisdiction over the party, to hear the motion filed by "interloper" law firm making unsubstantiated claims, nor grant the motion nor issue an ORDER dated on January 27, 2023, which is a void order, a nullity.

*"Where a court takes action beyond the power conferred on it by law (its jurisdiction), its action is a nullity."* ***Mitchell v. Milburn*, 199 A.3d 501 (Pa. Commw. Ct. 2018).**

294. Therefore, the totally unrelated "interloper" matter that was interjected by the Obermayer Rebmann Maxwell & Hippel LLP and attorney Hillary J. Mooney, **cannot and must not** be considered as part of Petitioner Urve Maggitti's Appeal Docket No. 2299 EDA 2022 - because it is not.

> "One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." *RESTATEMENT (SECOND) OF TORTS § 525 (AM. LAW INST. 1977).*

295. It would be beyond prejudicial to Petitioner's substantive rights, and clear due process violation, if an outside party that has no involvement with the case (on appeals) before the courts, is allowed to interject themselves into the matter by making unsubstantiated claims in direct contradiction to that of their purported client's[48]

> "Lack of subject matter jurisdiction is fatal at any stage of the proceedings, even when collaterally involved." **Strasburg Scooters, LLC v. Strasburg Rail Road, Inc., 2019 PA Super 158, 2019 WL 2135827 (2019).**

### Appeal for No. 2299 EDA 2022 - word limit exceeded

296. On February 23, 2023, Plaintiff received another correspondence from Supreme Court's Prothonotary Office, which stated that Plaintiff/Appellant had exceeded the word count and required that the defect be corrected by March 9, 2023.

See attached EXHIBIT: Fed. No. 41.

### Reason for the "Convenient" "Mistake"?

297. On March 7, 2023, Supreme Court Prothonotary Office sends communication to Plaintiff, sting:

> "Returned herewith, unfiled, is your "Request for Reconsideration of Petition for Allowance of Appeal, as Supreme Court Erroneously Denied the Timely and Appropriately filed Petition for Allowance of Appeal" as there is no Court order to which reconsideration could be sought."

See attached EXHIBIT: Fed. No. 42.

### Luck of the "Obermayer's"

298. With a simple convenient "mistake" about the non-existing "January 19, 2023"[49] Superior Court Order, not only did the Supreme Court sabotage the Plaintiff's ability to incorporate the petition to vacate Void Order, [50] - as Plaintiff had already submitted her Amended Appeal with corrected word count, Mailed on March 8, 2023, as the deadline to correct the 'word count" was set to march 9, 2023.[51]

---

[48]Reference to Victor J. Maggitti Jr.
[49] See attached EXHIBIT: Fed. No. 40
[50] See attached EXHIBIT: Fed. No. 37
[51] See attached EXHIBIT: Fed. No. 41.

But also "averted" the "decision on the merits" of the Void Order, and the Defendants at Law Firm Obermayer Rebmann Maxwell & Hippel LLP, "got lucky" once again.

# PART 11

## RETALIATION and INTIMIDATION
## Against Urve Maggitti As A The Witness And A Whistleblower

299. 38. On August 16th 2022, I, Urve Maggitti received phone call from Detective Steven Parkinson, Chester County District Attorney's Office, phone no. 610-344-5684.
Detective Steven Parkinson stated that he was:

> *"just following up in reference to a motion you filed stating that the court reporter was inaccurately transcribing court proceedings in your civil case, I was just interested in what was going on there with regard to you know the inaccuracies and hoping to speak to you about that."*

300. Detective Steven Parkinson requested to see me personally at his office on 4th floor, at the District Attorney's Office.

301. The motion that Detective Steven Parkinson referred to was filed by me in my divorce action, No. 2021-06762-DI, titled "Motion To Correct The Transcript Of Court Hearing Of March 11th 2022"

302. Detective Steven Parkinson informed me that he was in possession of the said motion pleadings and was aware that Judge Binder is the judge in the case.

303. I requested that Detective Steven Parkinson provide me in writing, via email the basis why I was contacted by him prior to any meeting. I have not heard from Detective Steven Parkinson since the phone call on August 16, 2022.

304. On August 18, 2022, Judge Binder DENIED Motion for "FINDINGS OF FACT AND CONCLUSION OF LAW" on what basis did the court issue its Order denying "MOTION TO CORRECT THE TRANSCRIPT OF COURT HEARING of MARCH 11th 2022" was filed on July 27th 2022.

305. On August 18, 2022. Complainant filed "PENNSYLVANIA RIGHT TO KNOW RECORDS REQUEST" in trying to determine what precipitated the need by Detective Steven Parkinson to contact her.

## Criminal Suspect - ?

306. On September 26, 2022, Complainant received a formal response from Ms. Lauren Remaley, Open Record's Officer, Chester County. The Reply states:

> "In regard to each part of your request that seeks emails, your request is denied as insufficiently specific pursuant to Section 703 of the RTKL as it relates to the requested emails (65 P.S. § 67.703). In regard to parts 1, 2, 3, 4, 5, 6, and 7 of your request, your request is denied pursuant to Section 708(b)(16) and/or (17) of the RTKL (65 P.S. § 67.708). As it relates to the remainder of your request, the County does not possess records responsive to your request."

## THE LAW

307. It's well established that courts are to be open to the public to attend and to witness the proceedings, and Complainant in Pennsylvania can't have rights not afforded to her as that would violate the 14th Amendment of Federal Constitution and are bound by Article 6 Clause 2. Art. VI, cl. 2. Clearly states:

> **"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."**

### Marbury v. Madison, 5 U.S. 137, 180 (1803)

> "...in declaring what shall be the *supreme* law of the land, the *constitution* itself is first mentioned; and not the laws of the United States generally, but those only which shall be made in *pursuance* of the constitution, have that rank."
> "Thus, the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a **law repugnant to the constitution is void; and that *courts*, as well as other departments, are bound by that instrument.**" *Marbury v. Madison*, 5 U.S. 137, 180 (1803)

### 14th Amendment to the Constitution of United States

> **"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."**
>        * * *

308. It is crystal clear that the Court was wrong when it denied the Complainant's right to use her own court reporter at the March, 11th 2022, Hearing.

During the hearing when Complainant stated that she had hired a court reporter as her witness, Judge Bret M. Binder stated on the record:

*"So no it's not possible, we have a court reporter here to take everything down. Outside court reporters for something in the courtroom is not permitted."*

309.  It is crystal clear that the Title 201 RULES OF JUDICIAL ADMINISTRATION, Title 201 Pa. Code Chapter 40. UNIFORM RULES GOVERNING COURT REPORTING AND TRANSCRIPTS – has violated substantive right of the Complainant, any litigant in the Commonwealth, by:

1) not having a process, a provision, by which Complainant, any litigant in the Commonwealth, would have an opportunity to inspect the Official Transcript that is provided by the Court for correctness or errors prior to its certification;

2) by not providing the Official Transcript for its proceedings automatically for inspection by the parties, instead the parties who want to inspect the original Transcript have to request it specifically.

310. The fact that the Court does not "permit" outside court reporters in the courtroom, is further compounding on the violation of substantive right of Complainant, any litigant in the Commonwealth, to have a witness, to the court proceeding, to have something other than the memory to rely upon- for the correctness of the proceeding in which important testimony under oath is taken and decisions made that have consequences for the Complainant, any litigant in the Commonwealth.   And on top of that the litigants are charged a fee for the production of the Original Transcript.

311.  Both Title 231 RULES OF CIVIL PROCEDURE and TITLE 234. RULES OF CRIMINAL PROCEDURE PART[52] have provisions to inspect the transcript of court proceeding or testimony, for correctness or errors prior to its certification;

---

[52] Title 231 RULES OF CIVIL PROCEDURE
231 Pa. Code Rule 4017 **Transcript of Testimony. Objections**
(c) When the testimony is fully transcribed a copy of the deposition with the original signature page shall be submitted to the witness for inspection and signing and shall be read to or by the witness and shall be signed by the witness, unless the inspection, reading and signing are waived by the witness

TITLE 234. RULES OF CRIMINAL PROCEDURE PART
Pa.R.Crim.P. Rule 141(c)(4) provides:

Furthermore, the Pa.R.Crim.P Rule 141(c)(4) provides that the defendant has a right to make written notes of the proceedings, or make a stenographic, mechanical or electronic record of the proceedings.

312.  In the case of *Wilson v. Blake*, 475 Pa. 627, 629-30 (Pa. 1977) the Supreme Court of Pennsylvania in reference to Rule 141(c)(4), the court stated:

> "The Rule says a defendant *"may, if he desires"* make use of any of the enumerated means of transcription. **It does not say that he may make those transcriptions only when the court fails to provide an official stenographer or when he is permitted to do so in the discretion of the court**. Such an account prepared by the defendant at his own cost permissibly supplements any official, court authorized record to which the defendant may have access."

And:
> "Rule 141(c)(4) promotes important policies. Official stenographic records are not infallible.[53]  Transcription by means other than stenographic recording, or by a second stenographer, ensures the defendant an accurate record."

The Court was correct in stating that "Official stenographic records are not infallible", as is in fact the case in this divorce action, where the official Transcript has many errors, where some of these "errors" are extremely substantial.

The Supreme Court of Pennsylvania in this case further stated:

> *"Of particular importance is a memorandum from the President Judge of the Municipal Court of Philadelphia to all judges of that court advising that defendants were not permitted to make a mechanical or electronic record at Municipal Court trials or preliminary hearings."*

pointing out that they have:

> *"..the King's Bench power of superintendency over lower courts vested in this Court by Article V, Section 10(2) of the Pennsylvania Constitution."*

---

(c) The defendant . . . may, if he desires:
(4) make written notes of the proceedings, or have his counsel do so, or make a stenographic, mechanical or electronic record of the proceedings.
Title 201 RULES OF JUDICIAL ADMINISTRATION
Title 201 Pa.   Code Chapter 40. UNIFORM RULES GOVERNING COURT REPORTING AND TRANSCRIPTS
 (B) (2) "transcripts are timely produced and are affordable to all parties"

[53] *"In recognition of this fact, the Legislature has provided a statutory procedure for correcting the official record. Act of May 11, 1911, P.L. 279, § 4, 12 Pa.C.S.A. § 1199 (1953); Commonwealth v. Young, 456 Pa. 102, 317 A.2d 258 (1974)." Wilson v. Blake, 475 Pa. 627, 630 n.2 (Pa. 1977).*

313. Parties to any legal action are not required by any law of the land to "trust" and "accept" any transcript of any court proceeding, as "true" and "correct" without the right to inspect it for its correctness and an opportunity to submit correction to the record/transcript if needed.

314. Complainant cannot see how anyone could possibly claim that the Rules and Codes etc., are different in the Civil Procedure that in the Criminal Procedure, as related to substantive rights to have fair and accurate record, and that that is accepted as fine.

315. Or that any of the Courts have a "right" to issue any memorandums advising judges not to permit to have litigants to make a mechanical or electronic records at trials or preliminary hearings, when that is clearly opposite to the substantial rights to have a fair and accurate record.

316. In fact existence of any such rule, code, memorandum etc. would be in direct violation of the 14th Amendment to the Constitution of United States[54] that clearly states:

*"No State shall deny to any person within its jurisdiction the equal protection of the laws."*

317. Furthermore, it would be in violation of Federal Constitution Art. VI, cl. 2.:

*"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."*

And as has been memorialized in the *Marbury v. Madison*, 5 U.S. 137, 180 (1803)
**"Law repugnant to the constitution is void; and that *courts*, as well as other departments, are bound by that instrument."** [55]

318. Urve Maggitti, have reason to believe, and do believe, that Defendants Hon. Bret M. Binder and his Agents and Co-Defendants Melanie McAteer, Suzie Marker, Lynn Phipps are attempting to "get back at me" for the "trouble" I have caused by exposing multitude of rule, and law and fiduciary duty violations by powerful law firm and an elected public servant the Hon.

---

[54] **"No State shall** make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; **nor deny to any person within its jurisdiction the equal protection of the laws."**
[55] "…in declaring what shall be the *supreme* law of the land, the *constitution* itself is first mentioned; and not the laws of the United States generally, but those only which shall be made in *pursuance* of the constitution, have that rank."   "Thus, the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a **law repugnant to the constitution is void; and that *courts*, as well as other departments, are bound by that instrument."** *Marbury v. Madison*, 5 U.S. 137, 180 (1803

Bret M. Binder. Therefore I have reason to believe, and do believe that it is an act of retaliation, witness and victim intimidation, and an act of official oppression directed at me and is in fact crime under:

> Pennsylvania Title 18 CRIMES AND OFFENSES, Chapter 49. Falsification and Intimidation, Subchapter B. Victim and Witness Intimidation § 4952 - Intimidation of witnesses or victims.

> Pennsylvania Title 18 - CRIMES AND OFFENSES, Chapter 49. Falsification and Intimidation, Subchapter B. § 4953. Retaliation against witness, victim or party.

> Pennsylvania Title 18 - CRIMES AND OFFENSES, Chapter 53 –Abuse of Office, § 5301 – Official Oppression

Judge BRET M. BINDER has violated the Canons of Code of Judicial Conduct which are anchored in the Article V, Section 17(b) of the Pennsylvania Constitution, which states, in pertinent part:

> "Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the (Pennsylvania) Supreme Court."

319 . Plaintiff Filed VERIFIED PRIVATE CRIMINAL COMPLAINT No. 7 against Hon. Bret M. Binder on October 24, 2023.

### Complaints Filed Against Hon. Binder

320. Plaintiff has filed eight (8) Private Criminal Complaints and eight (8) Judicial Complaint against Hon. Bret M. Binder, as well as a Bar Complaint filed . See attached EXHIBIT: Fed. No. 43 and 44, 47.

# PART 12

### * PROCEDURAL HISTORY *

### Criminal Complaint

321. February 06, 2023, "Police Criminal Complaint" was filed against Urve Maggitti, accusing her of:

> "Pennsylvania **Title 18 § 5103.1** "Unlawful Use of An Audio or Video Device in Court", "NCIC Extradition Code Type: C-Misdemeanor Surrounding States"

- for an incident alleged to have occurred on March 11, 2022. See attached EXHIBIT A

### Magistrate Issues Preliminary Hearing Notice

322. Magistrate Hon. Marc J. Lieberman on February 06, 2023, signed and issued Preliminary Hearing Notice, Docket No: MJ-15101-CR-0000022-2023.

And "Fingerprint Order" "to be fingerprinted in accordance with the criminal history record information act, 18 Pa.C.S. § 9112." See attached EXHIBIT A

### Recusal of Magistrate Hon. Marc J. Lieberman

323. On or about February 28, 2023, Magistrate Hon. Marc J. Lieberman, recused himself, reason stated as "conflict" and asked the case to be transferred. See attached EXHIBIT B

### Case Transferred to Magistrate Hon. Goch

324. The Preliminary Hearing was transferred to Magistrate Hon. Goch on March 01, 2023, Docket No: MJ-15203-CR-0000047-2023. See attached EXHIBIT B

325. On March 01, 2023, Magistrate Hon. Goch signed and issued Preliminary Hearing Notice, Docket No: MJ-15203-CR-0000047-2023, to take place on Wednesday March 29, 2023.

### Special Appearance *De Bene Esse* Motion To Dismiss

326. On March 23, 2023, Relator/Petitioner filed:

"SPECIAL APPEARANCE *DE BENE ESSE* MOTION TO DISMISS supported by Affidavit Of Fact, Brief In Support And Mandatory Judicial Notice"

### Writ of Certiorari[56] filed in Court of Common Pleas

---

[56] **42 Pa.C.S.A. § 934. Writs of certiorari**
Unless and until changed by general rule, the judges of the courts of common pleas, within their respective judicial districts, shall have power, in addition to the right of appeal under section 9 of Article V of the Constitution of Pennsylvania, to issue writs of certiorari to the minor judiciary.

Article V of the Constitution of Pennsylvania, SCHEDULE TO JUDICIARY ARTICLE, COURTS OTHER THAN IN THE CITY OF PHILADELPHIA AND ALLEGHENY COUNTY, GENERAL PROVISIONS:
**§ 26. Writs of certiorari**

327. On March 23, 2023, Relator/Petitioner filed emergency petition for writ of certiorari with Court of Common Pleas:

> "EMERGENCY PETITION for WRIT OF CERTIORARI
> or INTERLOCUTORY ORDER Docket No: MJ-15101-CR-
> 0000022-2023 and Docket No: MJ-15203-CR-0000047-2023"

328. On March 24, 2023, Hon. William P. Mahon, Court of Common Pleas issued an ORDER denying the petition:

> "AND NOW this day of March, 2023, the request for Writs of Certiorari in this matter are DENIED." (footnote 1)

> **Footnote 1**: "Urve Maggitti seeks these writs in conjunction with two criminal docket numbers: MJ-15-101-CR-22-2023 and MJ-15-203-CR-47-2023. The requested relief is only available for civil judgments. see Pa. R. Civ. P.M.DJ. 1001 and 1009."

See attached EXHIBIT C

329. Same Hon. William P. Mahon is currently presiding judge in Plaintiffs Tort action against Obermayer defendants, has just issued an order denying stay in the lawsuit, while aware that active appeal is pending before Supreme Court, and denied the Rule to Show cause in what capacity is Mathieu Shapiro appearing in the tort action: a defendant, or a counsel?

330.  It is clearly a conflict for co-defendant to be a counsel to his other co- defendants. Not only prejudicial to the co-defendants, but to the Plaintiff and the jury, undermining the integrity of the judicial sytsem. Yet, Hon. William P. Mahon does not seem to see any issues with one defendant defending all other defendants in same action.

See attached EXHIBIT: Fed. No. 23

### Writ of Certiorari Filed in Supreme Court

331. On March 28, 2023, Relator/Petitioner filed emergency petition for writ of certiorari with Supreme Court of Pennsylvania. [57]

---

Unless and until changed by rule of the Supreme Court, in addition to the right of appeal under section 9 of this article, the judges of the courts of common pleas, within their respective judicial districts, shall have power to issue writs of certiorari to the municipal court in the City of Philadelphia, justices of the peace and inferior courts not of record and to cause their proceedings to be brought before them, and right and justice to be done.

[57] PETITION FOR EMERGENCY INJUNCTIVE RELIEF to STAY the PRELIMINARY HEARING, Scheduled for Wednesday March 29, 2023, Docket No: MJ-15203-CR- 0000047-2023 and WRIT OF

**Preliminary Hearing on March 29, 2023**
**Before Magisterial District Judge Martin G. Goch**

332. On Wednesday March 29, 2023, Relator/Petitioner Urve Maggitti made at arms-length special appearance *de bene esse* under threat of criminal duress and coercion threatening Urve Maggitti's loss of freedom whereby her "failure to appear" would result in an arrest warrant against her and simultaneously will be "deemed to have waived [her] right to be present at any further proceedings."

333. The "Preliminary Hearing Notice" states:

> "**At the preliminary hearing you may**:
> 1. Be represented by counsel:
> 2 Cross-examine witnesses and inspect physical evidence offered against you:
> 3. Call witnesses on your behalf other than witnesses to testify to your good reputation only, offer evidence on your behalf and testify;
> **4. Make written notes of the proceeding, or have your counsel do so, or make a stenographic, mechanical, or electronic record of the proceedings.**"

See attached EXHIBIT A

334. Urve Maggitti had bought three tape recorders for the preliminary hearing and activated two of them in the court room.

### *Hon. Martin G. Goch: No Recording Allowed*

335. Magisterial District Judge Martin G. Goch, asked Urve Maggitti, that "looking at the facts of the case as alleged" if she is recording the hearing. Urve Maggitti responded that, yes, she is recording the hearing.

### *Hon. Martin G. Goch: You are Breaking the Law*

336. MDJ Martin G. Goch proceeded to state to Urve Maggitti the following, paraphrasing and quoting:

> You [Urve Maggitti] are not allowed to record, there is notice outside about no recording allowed.

If Urve Maggitti is going to record then "we are not going to proceed with anything" and

"You [Urve Maggitti] will not have a chance to hear what I [Hon. Martin G. Goch]

---

CERTIORARI and/or INTERLOCUTORY ORDER In ref: Docket No: MJ-15101-CR-0000022-2023 and Docket No: MJ-15203-CR-0000047-2023 and Chester County Common Pleas Docket No. 2023-02069-WC

have to say regarding your [Urve Maggitti] case."

"You [Urve Maggitti] are breaking the law."

### Hon. Martin G. Goch: I can have you arrested today!

"I [Hon. Martin G. Goch] can have you [Urve Maggitti] arrested today. Do you [Urve Maggitti] want me [Hon. Martin G. Goch] to do that?"

### Hon. Martin G. Goch: your recorder can be confiscated.

"In fact your [Urve Maggitti] recorder can be confiscated. The law says - it can be confiscated to make sure it is off."

### Illegal Seizure of Private property

337. MDJ Martin G. Goch ordered the female security guard/warden/constable to remove all three tape recorders from Urve Maggitti.

### Under Threat to "comply" or face an immediate Arrest

338. Urve Maggitti was forced under the direct threat of arrest to stop recording the Preliminary Hearing and hand over the three recorders to female security guard/warden/constable.

### Witnesses to Threats by MDJ Martin G. Goch against Urve Maggitti

339. During this whole time/incident there were by-standers sitting in the court room, there were at least two security guards/wardens/constables in the court room, and the whole thing was witnessed by employee of the Chester County District Attorney's office, who was upon information and belief one Dan Roland.

### Breach of Duty by District Attorney's Office

340. The Chester County District Attorney's office employee, who was upon information and belief one Dan Roland, witnessed the threats of arrest and confiscation of tape recorders made against Urve Maggitti by the Hon. Martin G. Goch.

These threats were made outside of court's jurisdiction and in violation of laws of Commonwealth of Pennsylvania and of the United States.

341. The Chester County District Attorney's office employee, who was upon information and belief one Dan Roland, did not object nor correct Hon. Martin G. Goch about his illegal, unconstitutional and prejudicial treats made against Urve Maggitti, her inalienable rights and against her private property.

### *Preliminary Hearing Postponed*

342. Hon. Martin G. Goch proceeded to inform that he received the emergency [58] writ of certiorari filing in the Supreme Court of Pennsylvania[59] filed on March 28, 2023, by Urve Maggitti, sent via over-night mail and email to all parties involved.

And Hon. Martin G. Goch was postponing the Preliminary Hearing to April 12, 2023[60] to allow the Supreme Court of Pennsylvania time to act on the writ of certiorari.

### *Equal Protection Under the Law*

343. Pa.R.Crim.P. 141(c)(4)." ***Wilson v. Blake, 475 Pa. 627, 632 (Pa. 1977)*** which was in effect in 1977 and is the current rule under **Pa.R.Crim.P. Rule 542** , firmly established that criminal defendants have the right to record the proceedings at his/her preliminary hearing by any of the means enumerated, (make written notes of the proceedings, or have counsel do so, or make a stenographic, mechanical, or electronic record of the proceedings.) even when an official stenographer is present. Any other interpretation would defeat the purposes served by the **Pa.R.Crim.P. Rule 542**.

### *Conversion of Right into "crime"*

344. The Magisterial District Judge Magistrate Hon. Marc J. Lieberman signed off on the summons' for criminal case against Urve Maggitti, a critical decision to the progression of the criminal process, and he did it knowing that the court had no jurisdiction of the subject matter and there was no probable cause to start any criminal process against Urve Maggitti.

> "The claim and exercise of a constitutional right cannot thus be converted
> into a crime." **Miller v. United States, 230 F.2d 486, 490 (5th Cir. 1956)**

### MALICIOUS PROSECUTION

> When criminal charges are maliciously filed in order to intimidate, harass, defame,
> or otherwise injure the party. The institution or continuation of criminal legal
> proceeding in the absence of probable cause for instituting the proceeding - is
> called malicious prosecution.

---

[58] PETITION FOR EMERGENCY INJUNCTIVE RELIEF to STAY the PRELIMINARY HEARING, Scheduled for Wednesday March 29, 2023 Docket No: MJ-15203-CR- 0000047-2023 and WRIT OF CERTIORARI and/or INTERLOCUTORY ORDER In ref: Docket No: MJ-15101-CR-0000022-2023 and Docket No: MJ-15203-CR-0000047-2023 and Chester County Common Pleas Docket No. 2023-02069-WC

[59] AMENDED writ of certiorari was filed on April 4, 2023.

[60] See attached EXHIBIT B

### *Witness and Whistleblower*

345. Urve Maggitti, has filed multitude of rule, and law and fiduciary duty violations throughout the Divorce action and Tort action, and has been trying to expose the wrong doing that she has been a firsthand witness to, being committed against the ex-husband and herself by those that should know better: including attorneys who owe fiduciary duty to their client and the elected judge Hon. Bret M. Binder, a public official.

346. Urve Maggitti has filed specific Private Criminal Complaints with Chester County District Attorney's Office, District Attorney Deb Ryan, relating to Hon. Bret M. Binder.

### *Illegal Use of Law Enforcement Against Witness*

347. The same District Attorney's Office, has not investigated any of those Private Criminal Complaints. Yet, the same Chester County District Attorney's Office has now filed official Police Criminal Complaint against Urve Maggitti.

348. I, Urve Maggitti, have reason to believe, and do believe that elected judge Hon. Bret M. Binder, a public official, has filed criminal complaint against me with the Chester County District Attorney's Office, in retaliation for my attempts to hold him accountable as an elected public official, as a judge who has the duty and obligation to be impartial in administration of justice and law.

349. I have reason to believe, and do believe that the criminal proceeding against me, is brought in retaliation against me as a witness, and with purpose to severely damage, to cause maximum amount of harm to my stellar reputation.

### *Witness Intimidation - Chilling Effect*

350. The parties involved in this malicious prosecution KNOW that the action is illegitimate. There is no reasonable ground, no probable cause, to bring this criminal proceeding against Urve Maggitti.

351. People involved[61]: include Magistrate Hon. Marc J. Lieberman, Detective Steven Parkinson- who knowing that there is no probable cause, no evidence of a crime, and no jurisdiction to issue any orders against Urve Maggitti, based on the charges as filed, went ahead and signed the Police Criminal Complaint and officially launched the criminal prosecution.

---

[61] Not all potential parties are named in this document.

## Violation of Pa. R. Crim. P. 542(C)(5)[62]

352.  As per **Pa. R. Crim. P. 542(C)(5)** the defendant may make written notes of the proceedings, or have counsel do so, or make a stenographic, mechanical, or electronic record of the proceedings.

This right exists even when an official stenographer is present. **Wilson v. Blake, 475 Pa. 627, 381 A.2d 450 (1977).**

353. In the case of **Wilson v. Blake, 475 Pa. 627, 629-30 (Pa. 1977)** the Supreme Court of Pennsylvania in reference to Rule 141(c)(4)[63], the court stated:

> "The Rule says a defendant *"may, if he desires"* make use of any of the enumerated means of transcription. **It does not say that he may make those transcriptions only when the court fails to provide an official stenographer or when he is permitted to do so in the discretion of the court.** Such an account prepared by the defendant at his own cost permissibly supplements any official, court authorized record to which the defendant may have access."
> And:
> "Rule 141(c)(4)[64] promotes important policies. Official stenographic records are not infallible.[65] Transcription by means other than stenographic recording, or by a second stenographer, ensures the defendant an accurate record."

The Supreme Court of Pennsylvania in this case further stated:

> "Of particular importance is a memorandum from the President Judge of the Municipal Court of Philadelphia to all judges of that court advising that defendants were not permitted to make a mechanical or electronic record at Municipal Court trials or preliminary hearings."

pointing out that they have:

> "..the King's Bench power of superintendency over lower courts vested in this Court by Article V, Section 10(2) of the Pennsylvania Constitution."

---

[62] § 132:412. Defendant's preliminary hearing rights as to evidence and witnesses; recording of proceedings, 26 Standard Pennsylvania Practice 2d § 132:412
[63] **Now: Pa. R. Crim. P. 542(C)(5).**
[64] **Pa. R. Crim. P. 542(C)(5).**
[65] "In recognition of this fact, the Legislature has provided a statutory procedure for correcting the official record. Act of May 11, 1911, P.L. 279, § 4, 12 Pa.C.S.A. § 1199 (1953); Commonwealth v. Young, 456 Pa. 102, 317 A.2d 258 (1974)." Wilson v. Blake, 475 Pa. 627, 630 n.2 (Pa. 1977).

354. **234 Pa. Code Rule 542. Preliminary Hearing**

> **"Paragraph (C) of the Rule provides a defendant shall be present at a preliminary hearing** except as otherwise provided in the rules, **"and may:** (1) be represented by counsel; (2) cross-examine witnesses and inspect physical evidence offered against the defendant; (3) call witnesses on the defendant's behalf, other than witnesses to the defendant's good reputation only; (4) offer evidence on the defendant's own behalf, and testify; and (5) **make written notes of the proceedings, or have counsel so, or make a stenographic, mechanical or electronic record of the proceedings."** Pa.R.Crim.P. 542(C).

**Commonwealth v. McClelland, 660 Pa. 81, 90, 233 A.3d 717, 722 (2020)**

### *Incompetence or Deliberate Violation of Law?*

355. Hon. Martin G. Goch, is a licensed attorney, practicing law since November 21, 1978. Attorney ID 29040.

356. Hon. Martin G. Goch is a Magisterial District Judge and knew or should have known, that the "Preliminary Hearing Notice" endorced by his judicial signature and official Seal as per Title 42 §1512 - which is sent out to all defendants that are issued the said notice, specifically on the face of it quotes the rights guaranteed under the **Pa. R. Crim. P. 542(C)(5) to defendants:**

> **" Make written notes of the proceeding, or have your counsel do so, or make a stenographic, mechanical, or electronic record of the proceedings."**

See attached EXHIBIT A and EXHIBIT B

357. These Rules Governing Standards of Conduct ("Conduct Rules") shall constitute the "canon of ... judicial ethics" referenced in Article V, Section 17(b) of the Pennsylvania Constitution, which states, in pertinent part: "Justices of the peace [now magisterial district judges] shall be governed by rules or canons which shall be prescribed by the [Pennsylvania] Supreme Court."

358. An independent, fair, honorable and impartial judiciary is indispensable to our system of justice. The Pennsylvania legal system is founded upon the principle that an independent, fair, impartial, and competent judiciary, composed of persons of integrity, will interpret and apply the law that governs our society.

The judiciary consequently plays a fundamental role in ensuring the principles of justice and the rule of law. The rules contained in these Conduct Rules necessarily require magisterial

district judges, individually and collectively, to treat and honor the judicial office as a public trust, striving to preserve and enhance legitimacy and confidence in the legal system.

359.  Magisterial district judges should uphold the dignity of judicial office at all times, avoiding both impropriety and the appearance of impropriety in their professional and personal lives.  They should at all times conduct themselves in a manner that garners the highest level of public confidence in their independence, fairness, impartiality, integrity, and competence.

360. The Conduct Rules are rules of reason that should be applied consistently with constitutional requirements, statutes, other court rules, and decisional law, and with due regard for all relevant circumstances.

361. Magistrate Hon. Martin G. Goch has breached the "Conduct Rules" and has violated constitutional requirements, statutes, other court rules, and decisional law when he threatened Urve Maggitti with arrest and confiscation of her private property, in violation of her inalienable and statutory right to record the Preliminary Hearing.

362.  Magistrate Hon. Martin G. Goch criminalized an exercise of constitutional right thus converting it into a crime.

363. Magistrate Hon. Martin G. Goch, as an agent, a servant of Government and a society whose existence and strength comes from constitutional safeguards, is serving law when he respects, not overrides, these guarantees.

364. Magistrate Hon. Martin G. Goch as an agent, a servant of Government,  overrode constitutional safeguards and acted outside his judicial capacity, outside his jurisdiction and outside of law against Urve Maggitti, against her inalienable and statutory rights and against her property, thereby disrespecting the law and overrode the constitutional guarantees.

> "These agents, servants of a Government and a society whose existence and strength comes from these constitutional safeguards, are serving law when they respect, not override, these guarantees.
>     The claim and exercise of a constitutional right cannot thus be converted into a crime." **Miller v. United States, 230 F.2d 486, 490 (5th Cir. 1956)**

### Preliminary Hearing Postponed

365. Hon. Martin G. Goch received the emergency [66] writ of certiorari filing in the

---

[66] PETITION FOR EMERGENCY INJUNCTIVE RELIEF to STAY the PRELIMINARY HEARING, Scheduled for Wednesday March 29, 2023 Docket No: MJ-15203-CR- 0000047-2023 and WRIT OF

Supreme Court of Pennsylvania[67] filed on March 28, 2023, by Urve Maggitti, sent via over-night mail and email to all parties involved.

366. Hon. Martin G. Goch postponed the Preliminary Hearing to April 12, 2023, to allow the Supreme Court of Pennsylvania time to act on the writ of certiorari.

### Amended Petition Filed in Supreme Court

367. On or about April 5, 2023, Relator/Petitioner filed AMENDED petition with Supreme Court :

> "[AMENDED] PETITION FOR EMERGENCY INJUNCTIVE RELIEF to STAY the
> PRELIMINARY HEARING,
> Scheduled for Wednesday April 12, 2023, at 9:00 am
> Docket No: MJ-15203-CR- 0000047-2023 and
> WRIT OF CERTIORARI and/or INTERLOCUTORY ORDER
> In ref: Docket No: MJ-15101-CR-0000022-2023 and
> Docket No: MJ-15203-CR-0000047-2023"

### At arms-length Special Appearance

368. On Wednesday April 12, 2023, Urve Maggitti again made at arms-length special appearance *de bene esse* under threat of criminal duress and coercion threatening Urve Maggitti's loss of freedom whereby her "failure to appear" would result in an arrest warrant against her and simultaneously will be "deemed to have waived [her] right to be present at any further proceedings."

### Preliminary Hearing Postponed Pending Writ of Certiorari

368. On Wednesday April 12, 2023, Hon. Martin G. Goch again postponed the Preliminary Hearing to April 26, 2023, to allow the Supreme Court of Pennsylvania time to act on the writ of certiorari.

### Improper Categorization of the Pleading by Supreme Court

369. On Wednesday, April 19, 2023, Relator/Petitioner called and spoke with Deputy Prothonotary Amy Dreibelbis:

a) to find out what was the status of the petition for writ of certiorari.

---

CERTIORARI and/or INTERLOCUTORY ORDER In ref: Docket No: MJ-15101-CR-0000022-2023 and Docket No: MJ-15203-CR-0000047-2023 and Chester County Common Pleas Docket No. 2023-02069-WC

[67] AMENDED writ of certiorari was filed on April 4, 2023.

b) and to have the court amend the official docket entry, because the court had listed the Relator's/Petitioner's petition to courts original jurisdiction for writ of certiorari as an appellate procedure under courts appellate jurisdiction.

370. The Relator/Petitioner, Urve Maggitti's April 5, 2023, petition for issuance of a writ of certiorari appears to have been misconstrued as a motion for injunctive relief by the Supreme Court of Pennsylvania.

371. Deputy Prothonotary Amy Dreibelbis, stated that:

"Pennsylvania Supreme Court **does not** issue writs of certiorari. Writs of certiorari are only issued by the United Sates Supreme Court."

And that "the court has docketed the petition properly under the Pennsylvania Appellate procedure" as a 'Petition for Emergency Injunctive Relief to Stay the Preliminary Hearing.' "

### Official Exception filed for the Record

372. On April 19, 2023, Relator/Petitioner, Urve Maggitti filed an EXCEPTION raising an exception to what appears to be an improper categorization of my April 5, 2023, petition for issuance of a writ of certiorari; it appears to have been misconstrued as a motion for injunctive relief.

To the extent that the former is purely ministerial and the latter involves judicial discretion, it appears harmful and prejudicial to misconstrue my petition in this way.

373. On April 21, 2023, Supreme Court of Pennsylvania returned the EXCEPTION as unfiled, stating:

"This is to acknowledge receipt of your Exception to Improper Categorization of April 5, 2023 Petition for Issuance of Writ of Certiorari received in the above-captioned matter.

Please be advised the following is being returned, unfiled, as not a proper pleading in this matter. As this case is currently before the Court, nothing further can be filed without a leave of Court. See Pennsylvania Rules of Appellate Procedure 2501(a)."

374. On April 24, 2023, Hon. Martin G. Goch postponed the Preliminary Hearing from April 26, 2023, to Wednesday May 24, 2023, to allow the Supreme Court of Pennsylvania time to act on the writ of certiorari.

375. On April 25, 2023, the Supreme Court of Pennsylvania issued an ORDER *Per Curiam*, stating:

"AND NOW, this 25th day of April, 2023, the Petition for Emergency Injunctive Relief to Stay the Preliminary Hearing is hereby DENIED."

### Writ of Prohibition filed in Supreme Court

376. On May 16, 2023, Relator/Petitioner, Urve Maggitti filed "PETITION FOR WRIT OF PROHIBITION" with the Supreme Court.

### Application to Stay Preliminary Hearing Pending Writ of Prohibition before Supreme Court.

377. On May 23, 2023, Relator/Petitioner, Urve Maggitti filed EMERGENCY APPLICATION FOR STAY The PRELIMINARY HEARING Pending PETITION FOR WRIT OF PROHIBITION filed in Supreme Court Of Pennsylvania in the Magisterial District Court. [68]

### Magisterial District Court DENIED to Issue the STAY

378. On May 24, 2023, Magisterial District Court verbally denied to stay the Preliminary Hearing despite the pending petition before the Supreme Court.

### Magisterial District Court sent the case to Court of Common Pleas

**FORMAL ARRAIGNMENT OTN R 47716-2 on Thursday June 15, 2023, at 9:15 am, in Room 4112, Fourth Floor of the Chester County Justice Center, in West Chester.**

### Preliminary Hearing May 24, 2023 Takes Place

379. On May 24, 2023, Urve Maggitti again made at arms-length special appearance *de bene esse* under threat of criminal duress and coercion threatening Urve Maggitti's loss of freedom whereby her "failure to appear" would result in an arrest warrant against her and simultaneously will be "deemed to have waived [her] right to be present at any further proceedings."

### Magistrate ignored pending writ of prohibition in the Supreme Court

380. Hon. Martin Goch proceeded with Preliminary Hearing on May 24, 2023, despite

---

[68] **EMERGENCY APPLICATION FOR STAY the PRELIMINARY HEARING on MAY 24, 2023, or alternatively an INJUNCTION, PENDING DECISION ON:** APPLICATION FOR LEAVE TO FILE ORIGINAL PROCESS for: PETITION FOR WRIT OF PROHIBITION BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF WRIT Docket No: MJ-15101-CR-0000022-2023 Magisterial District Court No. 15-1-01 Docket No: MJ-15203-CR-0000047-2023 Magisterial District Court No. 15-2-03

pending writ of prohibition in the Supreme Court challenging the proceeding. Magistrate allowed the prosecution to proceed with the hearing despite Plaintiff/Relator's objections.

### Magistrate Martin G. Goch AGAIN Threatened Plaintiff with Arrest and Contempt of Court

381. On May 24, 2023, Hon. Martin G. Goch again demanded that Plaintiff stop the recording her own Preliminary Hearing. When Plaintiff did not stop the recording the Hon. Goch threatened her with contempt of court and directed the bailiff to remove her tape recorder.

382. After the hearing the recorder was returned to the Plaintiff but the recorder had been wiped clean and the recording erased. The threats made in the open court by Hon. Goch were conveniently erased.

### Plaintiff/Relator is Accused of Violating of Title 18 § 5103.1

383. "Police Criminal Complaint" was filed on February 06, 2023, by Detective Steven Parkinson against Urve Maggitti. According to Detective Parkinson's own statement(s) it was his sergeant's who informed him that "there was a suspicion" that a "woman" had done something illegal.

384. The police criminal complaint was filed by Detective Steven Parkinson against Urve Maggitti, accusing her of violating:

> Pennsylvania **Title 18 § 5103.1**[69] "Unlawful Use of An Audio or Video Device in Court", "NCIC Extradition Code Type: C-Misdemeanor Surrounding States"

- for an incident alleged to have occurred on March 11, 2022. The Offense is defined as:[70]

> **"(a) Offense defined.--**A person commits an offense if the person in any manner and for any purpose uses or operates a device to capture, record, transmit or broadcast a photograph, video, motion picture or audio of a proceeding or person within a judicial facility or in an area adjacent to or immediately surrounding a judicial facility without the approval of the court or presiding judicial officer or except as provided by rules of court."

385. It is not only a conflict of interest AND not only hearsay of hearsay of hearsay but ALSO the anonymous initiator of all this didn't even assert any facts, only a mere suspicion, that started the criminal prosecution/persecution of Urve Maggitti.

---

[69] See attached EXHIBIT H
[70] Title 18 § 5103.1

386 . **Has the Commonwealth of Pennsylvania satisfied the essential elements of a crime under Title 18 § 5103.1 as against Plaintiff/Relator?**

NO. Commonwealth has not stated any crime, nor satisfied any of its essential element committed by the accused for it to be injured.

The offense that Plaintiff/Relator is being accused of by complainant Detective Steven Parkinson is not applicable to Plaintiff/Relator as per Statutory Construction Act, and under Pennsylvania Constitution.

387. **Can the General Assembly Alter or Amend any Existing Law to Change its Original Purpose?**

NO. Under Pennsylvania Constitution, the lawmakers are not allowed to pass any law except by a bill. And Pennsylvania Constitution strictly prohibits any change to the original purpose of an existing bill. Any amendment to an existing bill must retain the original purpose of that bill.

### Pa. Const. Article III, § 1. Passage of laws:

"No law shall be passed except by bill, and no bill shall be so altered or
amended, on its passage through either House, as to change its original purpose."

Therefore, both statutes must be read in context together as per statutory construction, as prescribed by Pa. Const. Article III, § 1.

388. **Is Title 18 §5103.1 an Amendment to Existing law added in 2018 by Act 94?**

YES. In 2018 the Act 94 added Amendment §5103.1 - "Unlawful use of an audio or video device in court" to Title 18, Chapter 51. Obstructing Governmental Operations, nestled directly under §5103. - "Unlawfully listening into deliberations of jury."

### What is Statutory Construction Act?

389. The Statutory Construction Act spells out rules which are intended for the just determination of every criminal proceeding. The rules shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay and as nearly as may be in consonance with the rules of statutory construction.

**1 Pa.C.S.A. § 1921(a).**

**Pa.R.Crim.P. 2** (emphasis added). The Statutory Construction Act spells out those rules of construction. One of the most fundamental rules is that "[E]very statute shall be construed, if possible to give effect to all its provisions." **1 Pa.C.S.A. § 1921(a).**

390. **Must the Pennsylvania Rule(s) of Criminal Procedure be in consonance with the rules of statutory construction?**

YES. These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay and as nearly as may be in consonance with the rules of statutory construction.

"When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections because there is a presumption that in drafting the statute, the General Assembly intended the entire statute to be effective. 1 Pa.C.S.A. § 1922. *See Commonwealth v. Mayhue*, 536 Pa. 271, 307, 639 A.2d 421, 439 (1994); *Commonwealth v. Berryman*, *supra* at 268, 649 A.2d at 965. Statute headings may be considered in construing a statute. 1 Pa.C.S.A. § 1924. However, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b); *Commonwealth v. Reeb*, 406 Pa. Super. 28, 34, 593 A.2d 853, 856 (1991), *appeal denied*, 530 Pa. 665, 610 A.2d 45 (1992). *Commonwealth v. Lopez*, 444 Pa.Super. 206, 663 A.2d 746, 748 (1995)

391. **Must the Laws on the Same Matter be Construed with Reference to Each Other?**

YES. One of the most fundamental rules is that every statute shall be construed, if possible to give effect to all its provisions.

"PARI MATERIA. Lat. Of the same matter; on the same subject; as, laws pari materia must be construed with reference to each other. Bac.Abr. "Statute," I, 3; Dupont v. Mills, Del., 196 A. 168, 177, 119 A.L.R. 174."[71]

**1 Pa.C.S.A. § 1932 Statutes in *pari materia***

(a) Statutes or parts of statutes are in *pari materia* when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in *pari materia* shall be construed together, if possible, as one statute.

---

[71] BLACK'S LAW DICTIONARY

392. **Do Statutes Exist Sentence by Sentence?**

NO. "Stated differently, sections of statutes are not to be isolated from the context in which they arise such that an individual interpretation is accorded one section which does not take into account the related sections of the same statute. Statutes do not exist sentence by sentence.

Their sections and sentences comprise a composite of their stated purpose. All sections and sentences that address that purpose are subsumed in each other and in the entire context of the statute.

A similar analysis is appropriate when considering a coordinate body of rules which has as its purpose the government of "criminal proceedings in all courts" of Pennsylvania, Pa.R.Crim.P."

> "Thus a rule is not to be construed in a vacuum, especially where, in a situation like the present, the interrelationship of rules is apparent."
> **Com. v. Revtai, 516 Pa. 53, 62-63 (Pa. 1987)**

393. **Is there a Pennsylvania Suggested Standard Jury Instruction for Title 18 §5103.1?**

NO. Pennsylvania Suggested Standard Criminal Jury Instructions do not exist for Title 18 §5103.1.

394. **Is there a Pennsylvania Suggested Standard Jury Instruction for Title 18 §5103?**

YES. Pennsylvania Suggested Standard Criminal Jury Instructions exists for Title 18 §5103.

> **PA-JICRIM 15.5103, Pa. SSJI (Crim), §15.5103**
> **15.5103 LISTENING INTO JURY DELIBERATIONS**
> 1. The defendant has been charged with unlawfully listening into deliberations of a jury. To find the defendant guilty of this offense, you must find that each of the following two elements has been proven beyond a reasonable doubt:
>
> *First,* **that the defendant listened into the deliberations of** a [grand] [petit] [[[[[[[traverse] [special] **jury, whether by** [his] [her] **own ear or by any scheme or device**; and
>
> *Second,* that the defendant did so intentionally.
> [2. A person "intentionally" listens into the deliberations of a jury if, when he or she listens, his or her conscious object is to listen and hear what the jurors are saying.]
>
> [3. A person commits this crime by intentionally listening into the deliberations of a jury. The [nature of the scheme or device by] [manner in] [[[[[[[purpose for] which he or she listens is legally immaterial.]

395. **Does the Jury Instruction Consolidate Unlawful "Listening" and Unlawful "Recording" Into One Jury Charge?**

YES. The language is very specific, and combines "**whether by [his] [her] own ear or by any scheme or device.**" And "[the scheme or device by] [manner in] which he or she listens is legally immaterial.

396. **To establish Prima Facie Case on a Charge, Must the Commonwealth Show Presence of Every Element Necessary to Constitute the Offense?**

YES. There must be prima facie evidence that an offense was committed and that defendant was the perpetrator of the offence, in order for charges to be bound over and sent to court after a preliminary hearing. The Commonwealth has the burden of proving a prima facie case at a preliminary hearing. See *Com. v. Mullen*, **460 Pa. 336, 333 A.2d 755 (1975).**

And to establish a prima facie case on a charge, the **Commonwealth must show the presence of every element necessary to constitute the offense**, as well as complicity of the accused in that offense. *Com. v. Lodise*, **276 Pa. Super. 484, 419 A.2d 561 (1980).** This includes evidence of *mens rea.*

397. **Is it Required to present evidence at the Preliminary Hearing which would justify the trial judge submitting the case to the jury at the trial?**

YES. Proof beyond a reasonable doubt is not required, but evidence which would justify the trial judge submitting the case to the jury at the trial is required. *Com. v. Wojdak*, **502 Pa. 358, 466 A.2d 991 (1983).** See also *Com. v. Snyder*, **335 Pa. Super. 19, 483 A.2d 933 (1984).**

398. **Did Commonwealth fail to present any essential elements of a crime against Plaintiff/Respondent under Title 18 §5103.1?**

YES. Commonwealth failed to present necessary elements of the crime as alleged against Plaintiff/Respondent.

Title 18 § 5103 "Unlawfully listening into deliberations of jury" which was amended in 2018 by adding § 5103.1 "Unlawful use of an audio or video device in court"
- which is specifically applicable to the deliberations of a jury, and extended the unlawful listening into deliberations of jury to include that it is also unlawful to use audio or video device to record the deliberation of jury.

**What are the essential elements of the crime to find the defendant guilty?**

399. The jury instruction is directing the jury that in order "to find the defendant guilty of this offense [§15.5103]" the jury "must find that each of the following two elements has been proven beyond a reasonable doubt:

*First,* that the defendant listened into the deliberations of a jury, whether by own ear or by any scheme or device; and

*Second,* that the defendant did so intentionally."

400. **Did the Commonwealth fail to link any essential elements to the alleged "defendant"?**

YES. The Commonwealth did not provide any evidence of the essential elements of the crime as alleged against alleged "defendant".

401. **Did the Commonwealth Prove a Probable Cause?**

NO. Detective Steven Parkinson based his statements on hearsay evidence from other individuals, who are not witnesses to the alleged "offense" nor are injured parties of the alleged "crime".

From his own admission in the said documents, Detective Steven Parkinson did not personally witness the events that he alleges in his statement and, based on the facts provided by him, did not have probable cause to effect a criminal complaint against alleged "Defendant." The "Affidavit of Probable Cause" is fatally flawed.

402. **Did the Commonwealth Submit Sufficient Evidence To Support Criminal Activity?**

NO. The Commonwealth failed to provide sufficient evidence to support any criminal activity by Urve Maggitti. Commonwealth has not stated any crime, nor satisfied any of its essential elements committed by the accused for it to be injured.

"Affidavit of Probable Cause" and Detective Steven Parkinson's testimony at the Preliminary Hearing are based only on hearsay of hearsay of hearsay from the anonymous initiator, based upon "mere suspicion" and not from any evidentiary fact.

Commonwealth has failed to allege sufficient facts to support the charge of *mens rea* and criminal conduct.

### What are Elements of Standing?

403. In this matter, standing consists of the plaintiff having **a legally cognizable interest** recognized by the courts or by statute.

404. **Does Detective Steven Parkinson Have Standing to bring Complaint against Urve Maggitti?**

NO.  There is NO Standing since:

A. Since Detective Steven Parkinson, serving as witness, is from the Commonwealth's Prosecutors Office, so the witness is the same as the prosecutor, Dan Roland. Thus, there is no plaintiff with a legally cognizable interest. Likewise, the Commonwealth lacks standing as well.

B. The legally cognizable interest alleged by the witness-prosecutor does not have any essential elements to create that interest which a court or statute could recognize for accusation of crime.

405. **Is The Principal Function Of A Preliminary Hearing Is To Protect An Individual's Right Against An Unlawful Arrest And Detention?**

YES. And none of the necessary elements of a crime that the alleged "Defendant" is accused of in the defective "Police Criminal Complaint" or in the fatally flawed "Affidavit of Probable Cause" have been alleged.

Therefore, such an order is without jurisdiction, is a nullity and is in fact a violation of 4th Amendment of U.S. Constitution, and PA Const Art. I § 8.

> "The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention." *McBride*, 595 A.2d at 591. "For all parties involved, it serves a core function, and it protects against unwarranted governmental intrusions upon a citizen's liberty." *Ricker*, 170 A.3d at 517
> **Commonwealth v. McClelland, 660 Pa. 81, 115, 233 A.3d 717, 737–38 (2020)**

406. **Is the Fingerprint Order as applied to Urve Maggitti Unconstitutional?**

YES. Urve Maggitti's right to be secure in her person, a right that would imminently be deprived by the instantly-threatened application of an intent to document convicted criminals in a national database, since Urve Maggitti has not yet even been charged, let alone convicted, is a serious violation of substantive right.

The court lacks all jurisdiction to issue the order to fingerprint alleged 'Defendant." There is no probable cause to issue such an order.

And none of the necessary elements of a crime that the alleged "Defendant" is accused of in the defective "Police Criminal Complaint" or in the fatally flawed "Affidavit of Probable Cause" have been alleged.

Therefore such an order is without jurisdiction, is a nullity and is in fact a violation of 4th Amendment of U.S. Constitution, and PA Const Art. I § 8.

> "The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention." *McBride*, 595 A.2d at 591. "For all parties involved, it serves a core function, and it protects against unwarranted governmental intrusions upon a citizen's liberty." *Ricker*, 170 A.3d at 517
> **Commonwealth v. McClelland, 660 Pa. 81, 115, 233 A.3d 717, 737–38 (2020)**

### 307. <u>Is Urve Maggitti Presumed Innocent until Proven Guilty?</u>

YES. Fingerprint order issued to a person who has not been convicted in the court

of law is a violation of the "presumption of innocence" a basic component of a fair

trial under the criminal justice system.

"Presumption of innocence, although not articulated in the Constitution, is a basic

component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S.

501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). ***Taylor v. Kentucky*, 436 U.S. 478, 479,

98 S. Ct. 1930, 1931, 56 L. Ed. 2d 468 (1978)**

"The principle that there is a presumption of innocence in favor of the accused is the

undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the

administration of our criminal law." ***Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394,

403, 39 L.Ed. 481 (1895)**. "*Taylor v. Kentucky*, **436 U.S. 478, 483, 98 S. Ct. 1930, 1933, 56 L.

Ed. 2d 468 (1978)**

"This Court has declared that one accused of a crime is entitled to have his guilt or innocence

determined solely on the basis of the evidence introduced at trial, and not on grounds of official

suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.

See,*e. g. Estelle v. Williams*, **425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)**. "*Taylor v.

Kentucky*, **436 U.S. 478, 485, 98 S. Ct. 1930, 1934–35, 56 L. Ed. 2d 468 (1978)**

_"While use of the particular phrase "presumption of innocence"—or any other form of words—may not be constitutionally mandated, the Due Process Clause of the Fourteenth Amendment must be held to safeguard "against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Estelle v. Williams, supra,* **425 U.S., at 503, 96 S.Ct., at 1693." _Taylor v. Kentucky,_ 436 U.S. 478, 485–86, 98 S. Ct. 1930, 1935, 56 L. Ed. 2d 468 (1978).**

308. **Did the Commonwealth Violate Urve Maggitti's Substantive Rights?**

YES. Commonwealth has violated PA Const Art. I § 8.[72] that secures Urve Maggitti the right to be secure in her person, and her possessions from unreasonable "searches and seizures". The Commonwealth is proceeding without probable cause, unsupported by oath or affirmation subscribed to by the affiant with standing.

309. **Did the Commonwealth Initiate the Criminal Proceeding against Urve Maggitti Properly?**

NO. The Commonwealth did not initiate the Criminal Proceeding against Urve Maggitti properly. Commonwealth violated PA Const Art. I §10 [73] by not initiating the criminal proceeding by indictment.[74]

---

[72] **PA Const Art. I § 8. Security from searches and seizures.** The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor **without probable cause, supported by oath or affirmation subscribed to by the affiant.**

[73] **§ 10. Initiation of criminal proceedings;** Except as hereinafter provided **no person shall**, for any **indictable offense, be proceeded against criminally by information**, except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger, or by leave of the court for oppression or misdemeanor in office. **Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided by law.**

[74] **Indictment** is the instrument holding the defendant for court after a grand jury votes to indict and authorizing the attorney for the Commonwealth to prepare an information.

*Comment:* The definition of indictment was amended in 2012 consistent with the adoption of the new indicting grand jury rules in Chapter 5 Part E. Under the new rules, the **indictment** is the functional **equivalent** of an issuing authority's order holding the defendant for court and that forms the **basis** for the **information** that is prepared by the attorney for the Commonwealth. **Formerly, an indictment** was defined as a **bill of indictment** that has been **approved by a grand jury** and

Art. I §10 provides that "no person shall, for any indictable offense, be proceeded against criminally by information."

### Art. I §10 is Codified into Title 42 Pa.C.S.A. § 8931

**(a) General rule.**--Except as provided in subsection (b), **no person shall, for any indictable offense, be proceeded against criminally by information,** except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger or by leave of court for oppression or misdemeanor in office.

310. **Does PA Const Art. I §10 Equally Apply to All Citizens of Commonwealth?**
YES. Pennsylvania Constitution does not carve out an exception for any class of citizens under Art. I §10. The language is all encompassing and applicable to all PERSONS with mandatory language SHALL: *"no person shall, for any indictable offense, be proceeded against criminally by information"*

311. **Does PA Const Art. I §10 Allow for an Option for some Courts of Common Pleas to initiate a criminal proceeding by information?**
YES. Art. I §10 provides that "Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided by law."

Art. I §10 has Codified permissive language "MAY" into Title 42

Pa.C.S.A. § 8931 subsection section B:

**(b) Criminal information.**--Each of the courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided or prescribed by law. The Administrative Office shall cause all orders of the Supreme Court entered under this subsection to be codified in the Pennsylvania Code.

312. **Is the Art. I §10, codified under Title 42 Pa.C.S.A. § 8931 subsection section B mandatory to all those citizens of Commonwealth, that happen to reside within jurisdiction**

---

properly returned to court, or which has been endorsed with a waiver as provided in former Rule 215.

**of the Courts of Common Pleas that have obtained "approval" from Supreme Court to initiation of criminal proceedings by information?**

NO. It would be violation of substantive rights of those citizens of Commonwealth if by virtue of residing in the jurisdiction of a court that has obtained "approval" to move without the Constitutional requirement to initiate a criminal proceeding without *indictment*[75] *by grand jury.*

It would clearly be unconstitutional and unequal application of law.

313. **Does the Pennsylvania Constitution Provide for right to Preliminary Hearing in initiation of criminal proceedings?**

NO. Pennsylvania Constitution does not provide for Preliminary Hearing as a right to initiate a criminal proceeding. Constitution states that no person shall, for any indictable offense, be proceeded against criminally by information.

### What is the Indictable Offense?

314. Indictable v. Non-Indictable:

In indictable offense is considered to be a criminal offense in which the accused may be incarcerated for a period of six or more months. The severity of the crime will result in the offense being separated into either a 1st, 2nd, 3rd, or 4th-degree indictable offense.

A non-indictable offense — which is considered either a disorderly persons or petty disorderly persons offense — are those crimes for which the accused may be incarcerated for a period less than six months.

315. **Has the Commonwealth Produced any evidence that Title 18 § 5103.1 is not an indictable offense?**

NO. Commonwealth has failed to produce any shred of evidence by its prosecutor's office Mr. Roland or Hon. Goch at the Preliminary Hearing nor anyone at the Common Pleas Court that Title 18 § 5103.1 is not an indictable offense.

---

[75] **Definition of Indictment: Indictment** is the instrument holding the defendant for court after a grand jury votes to indict and authorizing the attorney for the Commonwealth to prepare an information.

## DEMAND FOR EMPANELMENT OF GRAND JURY
## PRIMA FACIE EVIDENCE OF CRIMINAL ACTS BY DEFENDANTS

**Plaintiff incorporates by reference the facts set forth above as if set forth herein full.**

316. Plaintiff Urve Maggitti is seeking compliance with Title 42 U.S.C. § 1987 (Prosecution of violation of certain laws) that authorizes and requires, at the expense of the United States, to institute prosecutions against all persons violating Title 18 U.S.C. § 241 and 242, Title 18 U.S.C. § 1964 (a) (b) (c) and § 1968 (Civil investigative demand) and to cause such persons to be arrested, and imprisoned or bailed, for trial before a Court of the United States or the Territorial court having cognizance of the offenses. **See Pub. Law 106-274, Sec. 4 (d), Sept. 22, 2000, 114 Stat. 804**.

317. Plaintiff is also seeking compliance with Title 18 U.S.C. § 3 and § 4, that makes it a crime to fail to report a crime to proper authorities, hereby states the following statement of facts:

318. Plaintiff as a citizen of the Commonwealth of Pennsylvania., has probable cause supported by the facts to believe, and therefore believes that Defendants through false and fraudulent pretenses as a matter of custom and policy, have conspired to commit a common law fraud against insurance companies that are insuring licensed BAR association member.

319. All actions complained of fall within conduct indictable under specific provisions of the Organized Crime Control Act (OCCA) (P.L. 91-452, 84 Stat. 922) 1970 federal laws (18 U.S.C. § 1962 et seq. 1970) specifically designed to punish criminal activity by business enterprises relating to counterfeiting, securities fraud, theft, embezzlement, obstruction of justice, racketeering, money laundering, etc.

320. The specific goal of RICO is to punish the use of an enterprise to engage in certain criminal activity. A person who uses an enterprise to engage in a pattern of racketeering activity may be convicted under the RICO criminal statute Title 8 U.S.C. § 1963 (a) (Criminal penalties). An enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity."

321. It is a fact that all named individual Defendants acting in their official capacities as constitutional officers governed by the clearly established laws of the State of Pennsylvania as a

matter of custom and policy, through a clear pattern of abuses and official condemnation are truly violating clearly established laws of the United States of America as defined by Title 18 U.S.C. § 1341 (Frauds and Swindles) Title 26 U.S.C. § 7214 (a) (1) (Willful oppression under color of law), Title 18 U.S.C. § 1962 (a) (b) (c) and (d) (Prohibited activities), Title 18 U.S.C. § 241 (Conspiracy against rights), Title 18 U.S.C. § 242 (Deprivation of rights under color of law).

## COUNT ONE
### Violation of Civil and Substantive Rights While Acting Under Color of Law 42 U.S.C. § 1983 - Title 18 U.S.C. § 242

**Deprivation of rights under color of law by Judicial Defendants, Law Enforcement Defendants at District Attorney Office and Sheriff's office.**

Plaintiff, Urve Maggitti incorporates by reference the facts set forth above as if set forth herein full. and all the attached exhibits, and all footnotes in this action, with the same force and effect as if herein set forth.

## COUNT TWO
### Violation of Civil and Substantive Rights While Acting Under Color of Law 42 U.S.C. § 1983 - title 18 U.S.C. § 242

**Deprivation of rights under color of law by all Defendant Judicial Defendants, Law Enforcement Defendants at District Attorney Office and Sheriff's office.**

Plaintiff, Urve Maggitti incorporates by reference the facts set forth above as if set forth herein full. and all the attached exhibits, and all footnotes in this action, with the same force and effect as if herein set forth.

## COUNT THREE
### Violation of Civil and Substantive Rights While Acting Under Color of Law 42 U.S.C. § 1983 - Title 18 U.S.C. § 242

**Deprivation of  rights under color of law by all Defendants.**

Plaintiff, Urve Maggitti incorporates by reference the facts set forth above as if set forth herein full. and all the attached exhibits, and all footnotes in this action, with the same force and effect as if herein set forth.

"The Fifth Amendment to the Federal Constitution prevents the Federal Government or its agencies from depriving any person of his property without due process of law. The Fourteenth Amendment to the Federal Constitution, and all the various state constitutions, prevent any action by a state which would accomplish such deprivation. These provisions securing defined property rights against invasion by state authority are limitations upon the lawmaking power of the legislature as well as upon the powers of the other departments of the state government." *Buchanan vs. Warley, 245 U.S. 60, 62 L Ed 149, 38 S Ct 16; Telegraph Co. vs. Davenport, 97 U.S. 369, 24 L Ed 1047; Rees vs. Watertown, 86 U.S. 107, 22 L Ed 72.*

"Where rights are acquired by a citizen under the existing law, there is no power in any branch of the government to take them away except by due process of law. The purpose of this clause is to exclude arbitrary power from every branch of the government. It has been asserted that the guaranty should be enforced even against persons assuming to act under the authority of the government. The guaranty is violated whenever any person, by virtue of public position under the federal or state government, deprives another of any right protected by that amendment. The guaranty may be violated by unfairness or corruption of officers in the performance of administrative functions." *United States vs. Lee, 106 U.S. 196, 27 L Ed 171,1 S Ct 240; Chicago, B. & Q. R. Co. vs. Chicago, 166 U.S. 226, 41 L Ed 979, 17 S Ct 581; Norris vs. Alabama, 294 U.S. 587, 79 L Ed 1074, 55 S Ct 579; Mooney vs. Holohan, 294 U.S. 103, 79 L Ed 791, 55 S Ct 340, 195 ALR 406, reh den 294 U.S. 732, 79 L Ed 1261, 55 S Ct 511*

## COUNT FOUR
### Conspiracy to interfere with civil rights
### 42 U.S.C. § 1985 - Title 18 U.S.C. § 241
### Conspiracy against rights - All Defendants.

Plaintiff, Urve Maggitti incorporates by reference the facts set forth above as if set forth herein full. and all the attached exhibits, and all footnotes in this action, with the same force and effect as if herein set forth.

## COUNT FIVE
### Action for Neglect to Prevent
### While Acting Under Color of Law 42 U.S.C. § 1986

### Action for Neglect to Prevent by - All Defendants.

Plaintiff, Urve Maggitti incorporates by reference the facts set forth above as if set forth herein full. and all the attached exhibits, and all footnotes in this action, with the same force and effect as if herein set forth.

322. This cause of action is brought by Plaintiff, Alphonso Faggiolo, against all Defendants

named for their willful, wanton, malicious, and abusive, conduct under color of law and for their negligence's and failure to prevent or aid in preventing the deprivation of Plaintiff's constitutionally protected rights under the Fifth and Fourteenth Amendments of the United States Constitution within the meaning of Title 42 U.S.C. § 1986.

It is a fact that all Defendants acted with a reckless indifference to the protected federal rights of Plaintiff, Urve Maggitti, when Defendant, engaged in conduct with a callous disregard for whether the conduct violates Plaintiff's protected federal rights. *Howard vs. Adkison, 887 F.2d 134, 138 (8th Cir. 1989).*

All Defendants named herein are clearly acting under color of official authority,  while lacking all appearances of due process and the rule of law in violation of Title 18 U.S.C. § 242. Defendants have clearly violated Plaintiff's constitutional rights secured by the Constitution of Pennsylvania Article I § 9 and the Fourth, Fifth and Fourteenth Amendments of the United States Constitution under color of law."The guaranty is violated whenever any person, by virtue of public position under the federal or state government, deprives another of any right protected by that amendment. The guaranty may be violated by unfairness or corruption of officers in the performance of administrative functions." Chicago, B. & Q. R. Co. vs. Chicago, 166 U.S. 226, 41 L Ed 979, 17 S Ct 581; Norris vs. Alabama, 294 U.S. 587, 79 L Ed 1074, 55 S Ct 579; Mooney vs. Holohan, 294 U.S. 103, 79 L Ed 791, 55 S Ct 340, 98 ALR 406, reh den 294 U.S. 732, 79 L Ed 1261, 55 S Ct 511.

## RELIEF SOUGHT

323.  Wherefore, Plaintiff Urve Maggitti, seeks to secure injunctive relief and recover compensatory and punitive damages for monetary loss, intentional infliction of mental and emotional distress, impairment of reputation, personal humiliation, and deprivation of fundamental constitutional rights suffered by Plaintiff due to all Defendants for their color of law actions performed in their individual capacity against Plaintiff under Title 28 U.S.C. § 1343 (a)

(4). *See Slicker vs. Jackson, 215 F.3d 1225, 1231 (11th Cir. 2000)*.

324. It is a fact that Defendants acting as state actors, under color of law, deprived the Plaintiff of substantive rights to property ownership, due process, and the equal protection of the law. Plaintiff's constitutional rights, procedural due process, and the equal protection of the laws, have been directly violated under color of law by all Defendants named within the meaning of Title 42 U.S.C. § 1983. *See Parratt vs. Taylor, 451 U.S. 527, 535 (1981)*.

> *"The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections."* **West Virginia Board of Education vs. Barnette, 319 U.S. 624, 638 (1943)**.

345. It is a fact that Plaintiff possesses the constitutional right to procedural and substantive due process, to exercise first amendment right free from governmental interference, and the equal protection of the laws of the United States of America and of the several states of the American union at the time the violations occurred.

## Monetary Loss and Real Damages

## Compensatory Damages

## Punitive Damages

Defendants felonious and malicious conduct is being done in a manner exhibiting a wanton and a willful disregard of Plaintiff's rights, safety, health, mental well being.

*"In a case brought against both individuals and government entities, the jury instructions should expressly state that punitive damages may be assessed only against the individual defendants for their respective conduct."* **Young Apartments, Inc. vs. Town of Jupiter, Fla., 529 F.3d 1027, 1047 (11th Cir. 2008)**.

## Damages Restated

Therefore, on the issue of relief, Plaintiff requests:

**A.** Judgment against on all counts pleaded within this complaint,

**B.** Real damages to be calculated later.

**C.** Threefold real damages in accordance with the civil remedies afforded to victims under **18 U.S.C. §2333** as pleaded in this complaint under **18 U.S.C. §2331,**

**D.** Punitive damages of 200 times awarded in accordance's with the laws of torts pursuant to *Pacific Mutual Life Insurance Company vs. Cleopatra Haslip et al, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991),*

**E.** Any applicable statutory damages or penalties,

**F.** Compensation for any fees and costs of this suit,

**G.** Any other relief found just and reasonable by this Court.

## INJUNCTION

Pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. Proc. 65, it is appropriate and requested that this Court issue preliminary and permanent injunctions enjoining the and its named individual employees, agents, and/or agencies, from enforcing or implementing its policy, practice, or custom, of enforcing, any policies related to Plaintiff and/or Plaintiff's rights.

## JURY DEMAND

A jury trial on all triable issues, pursuant to Fed. R. Civ. Proc. 38 and the Seventh Amendment of the United States Constitution.

The court grant such other and further relief as may be proper.

Signature: _____    Dated: _____

Urve Maggitti
58 E Swedesford Road, Apt 327
Malvern, PA 19355

EXHIBIT: Fed. No. 1
Private Criminal Complaint Against Attorney's February 28, 2022
Filed with: Deb Ryan, Chester County District Attorney
Against: Hillary J. Moonay, David A. Nasatir, Mathieu J. Shapiro, Thomas A. Leonard III, and
Nicholas Poduslenko from law firm Obermayer Rebmann Maxwell & Hippel LLP

EXHIBIT: Fed. No. 2
Tort Action Filed Against Obermayer Rebmann Maxwell & Hippel LLP
Docket NO. 2022-01774-TT
Against: Hillary J. Moonay, David A. Nasatir, Mathieu J. Shapiro, Thomas A. Leonard III, and
Nicholas Poduslenko

EXHIBIT: Fed. No. 3
Sheriff Office Docket Entry 3/10/2022

EXHIBIT: Fed. No. 4
Sheriff Office, Tuesday, April 5, 2022, Ms. Rosana Castro email

EXHIBIT: Fed. No. 5
Mail Room, Account Activity by Date, County of Chester Department of PRO

EXHIBIT: Fed. No. 6
On April 11th, 2022 the Plaintiff's email to Ms. Rosana Castro

EXHIBIT: Fed. No. 7
On April 13th, 2022, Ms. Debra Hunter email Response

EXHIBIT: Fed. No. 8
Email(s) Plaintiff and the Sheriff Office

EXHIBIT: Fed. No. 9
Email(s) Plaintiff and Debbie Hunter, Sheriff Office

EXHIBIT: Fed. No. 10
Email to Rosana Castro, Deputy Clerk, County of Chester Office of the Sheriff,
Fredda L. Maddox, Sheriff of Chester County PA
Kevin D. Dykes, Chief Deputy Sheriff of Chester County PA
Deb Ryan, District Attorney of Chester County PA

EXHIBIT: Fed. No. 11
Payment Processed by Sheriff Office

EXHIBIT: Fed. No. 12
Payment Processed by Prothonotary Office

EXHIBIT: Fed. No. 13

Private Criminal Complaint against Rosana. April 26, 2022

EXHIBIT: Fed. No. 14
"Replacement Forms" by the Sheriff Office
EXHIBIT: Fed. No. 15
Sheriff Office Civil Process of Service

EXHIBIT: Fed. No. 16
Court Order, Dated November 17, 2021, Docket No. 2021-01444-DI
FILED December 21, 2021 by Judge Bret M. Binder

EXHIBIT: Fed. No. 17
Docket No. 2021-01444-DI, PRAECIPE TO TRANSFER DOCUMENT TO CORRECT FILE"
Dated January 4, 2022, FILED January 5, 2022, signed by Hillary J. Moonay

EXHIBIT: Fed. No. 18
Case Summary Report, Docket No. 2021-01444-DI

EXHIBIT: Fed. No. 19
ORDER, December 22, 2022, Supreme Court of Pennsylvania

EXHIBIT: Fed. No. 20
January 10, 2023, Plaintiff filed in the Supreme Court: "1. APPLICATION FOR
CLARIFICATION  2. APPLICATION FOR RECONSIDERATION RE: Maggitti, U., Pet. v.
CCP JudgeNo. 72 MM 2022 Lower Appellate Court Docket No: Trial Court Docket No: 2022-
01774-TT"
EXHIBIT: Fed. No. 21
ORDER, February 28, 2023, Supreme Court of Pennsylvania

EXHIBIT: Fed. No. 22
April 28, 2023, Hon. Anthony T. Verwey Recused Himself from Tort Action
No: 2022-01774-TT.
EXHIBIT: Fed. No. 23
June 5, 2023, Plaintiff filed "Motion To Show Cause" Tort Action
No: 2022-01774-TT.

EXHIBIT: Fed. No. 24
ORDER by Hon. MAHON   issued on June 6, 2023
Tort Action No: 2022-01774-TT.

EXHIBIT: Fed. No. 25
November 18, 2022, Superior Court issued an ORDER
Appellate Docket NO.  2299 EDA 2022

EXHIBIT: Fed. No. 26

December 23, 2022, the Superior Court issued an ORDER
Appellate Docket No. 2299 EDA 2022

EXHIBIT: Fed. No. 27
December 30, 2022, the Superior Court ORDER
Appellate Docket No. 2299 EDA 2022

EXHIBIT: Fed. No. 28
January 27, 2023, the Superior Court ORDER
Appellate Docket No. 2299 EDA 2022

EXHIBIT: Fed. No. 29
February 6, 2023, Supreme Court ORDER
REF: Writ of Mandamus for Emergency Stay, No. 135 MM 2022.

EXHIBIT: Fed. No. 30
February 17, 2023, Superior Court
Appellate Docket No. 2299 EDA 2022

EXHIBIT: Fed. No. 31
March 15, 2023, Supreme Court ORDER
Denying Writ of Mandamus No. 121 MM 2022.

EXHIBIT: Fed. No. 32
January 19, 2023, Law firm Obermayer Rebmann Maxwell & Hippel LLP "MOTION FOR
LEAVE TO WITHDRAW AS COUNSEL FOR APPELLEE, VICTOR J. MAGGITTI, JR."

EXHIBIT: Fed. No. 33
January 27, 2023, the Superior Court "GRANTED" Law firm Obermayer Rebmann Maxwell &
Hippel LLP motion to withdraw

EXHIBIT: Fed. No. 34
January 30, 2023, Petitioner filed: "PETITION/MOTION TO SHOW CAUSE FOR
MATERIALLY FALSE STATEMEN by HILLARY J. MOONAY, attorney ID# 77647"

EXHIBIT: Fed. No. 35
February 10, 2023, Petitioner moved the Superior Court to VACATE THE VOID ORDER

EXHIBIT: Fed. No. 36
February 17, 2023, Superior Court ORDER

EXHIBIT: Fed. No. 37
June 24, 2022, Plaintiff filed Petition for Writ of Mandamus, No. 72 MM 2022,

EXHIBIT: Fed. No. 38
On August 15, 2022, Plaintiff/Relator filed:
"Application for Leave to File Reply to Answer *Writ of Mandamus* Alternatively "Application for Leave to File an Amended Petition for Writ of Mandamus" Docket No. 2022-01774-TT County of Chester, Court of Common Pleas"

EXHIBIT: Fed. No. 39
February 22, 2023, Plaintiff filed:
"PETITION FOR ALLOWANCE OF APPEAL Alternatively Petition for Review and to Vacate a Void Order ORDER

EXHIBIT: Fed. No. 40
February 23, 2023, Supreme Court, Referencing non existing Order.


EXHIBIT: Fed. No. 41
February 23, 2023, Supreme Court, Ref: word limit exceeded

EXHIBIT: Fed. No. 42
March 7, 2023, Supreme Court Prothonotary Office

EXHIBIT: Fed. No. 43

EXHIBIT: Fed. No. 44
JUDICIAL BOARD COMPLAINT'S
Filed Against REF: Hon. Bret M. Binder No, 1, 2, 3, 4. 5. 6. 7. 8

EXHIBIT: Fed. No. 45
Response's FROM JUDICIAL CONDUCT BOARD COMPLAINT
REF: Hon. Bret M. Binder No, 1, 2, 3, 4. 5. 6. 7. 8

EXHIBIT: Fed. No. 46
Chester County District Attorney Office Written Communications for Three Criminal Complaints filed by Plaintiff:
1. Against Hon. Binder file on May 9, 2022 - DA: "lacks Probable cause, lacks prosecutorial merit, DA discretion" dated May 12, 2022.
2. Against Moonay, Nasatir, Shapiro, Leonard, Poduslenko filed on 02/28/2022
DA: "the Private Criminal Complaints…filed…has been disapproved by the District Attorney's Office due to lack of prosecutorial merit." dated May 11, 2022.
3. Against Rosana Castro filed on 04/26/2022 - DA: "lack of prosecutorial merit." dated May 5, 2022.

EXHIBIT: Fed. No. 47
BAR Complaint Against Hon. Bret M. Binder
February 26, 2023

EXHIBIT: Fed. No. 48
February 26, 2023, BAR Complaint's Against:
HILLARY J. MOONAY, DAVID A. NASATIR, MATHIEU J. SHAPIRO, THOMAS A.
LEONARD III, NICHOLAS PODUSLENKO, MELISSA BLANCO

EXHIBIT: Fed. No. 49
March 20, 2023, Response from Office of Disciplinary Counsel ref Obermayer Defendnats

EXHIBIT: Fed. No. 50
Hon. Martin G. Goch, Criminal Complaint

EXHIBIT: Fed. No. 51
Hon. Martin G. Goch, Judicial Complaint

EXHIBIT: Fed. No. 52
Obermayer Bio's

EXHIBIT: Fed. No. 53
Supreme Court Does Not

EXHIBIT: Fed. No. 54
Judicial Complain Hon. Lieberman

# ACKNOWLEDGMENT
# AFFIDAVIT
## (Verification)

STATE OF PENNSYLVANIA  )
COUNTY OF CHESTER    )

I, Urve Maggitti, the undersigned Affiant hereto, do hereby declare under penalties of perjury under the laws of the Commonwealth of Pennsylvania and the United States of America, that the foregoing accounting of facts are true and correct to the best of my current knowledge and belief.

I am over the age of 18 years of age, am a resident of the Commonwealth of Pennsylvania, have personal knowledge of the matters of this affidavit, and am capable of making such affidavit.

Pursuant to 28 U.S. Code § 1746 (1) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 6 / 13 /2023.

Signed: _____
　　　　　Urve Maggitti

Notary as JURAT CERTIFICATE

State of Pennsylvania _____Chester County_____

BEFORE ME personally appeared Urve Maggitti who, being by me first duly sworn, executed the foregoing in my presence and stated to me that the facts alleged therein are true and correct according to her own personal knowledge.

_____

Notary Public,
My commission expires: 11|05|2023

COMMONWEALTH OF PENNSYLVANIA - NOTARY SEAL
Eliza Pettineo, Notary Public
Chester County
My Commission Expires 11/05/2023
Commission Number 1294465