**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| URVE MAGGITTI,<br>         **Plaintiff,**<br><br>      v.<br><br>BRET M. BINDER, ANTHONY T. VERWEY, WILLIAM P. MAHON, MARTIN G. GOCH, MARC J. LIEBERMAN, JOHN HALL, DEBRA TODD,  DEB RYAN, DANIEL E. ROLAND, FREDDA L. MADDOX, ROSANA CASTRO, DEBBIE HUNTER, JACK A. PANELLA, BENJAMIN D. KOHLER, AMY DREIBELBIS, HILLARY J. MOONAY, DAVID A. NASATIR, MATHIEU J. SHAPIRO, THOMAS A. LEONARD III, NICHOLAS PODUSLENKO, MELISSA BLANCO, DAVID LADOV, ENRICO PAGANELLI, WILLIAM C. WENNER, NANCY L. CLEMENS, Rev. JAMES P. MCCLOSKEY, SUSAN P. GANTMAN, RENEE COHN JUBELIRER, ANDREW E. MASICH, Ph.D., MICHAEL BRUNELLE, SCOTT B. COOPER, SUDHIR R. PATEL, TARA MOBLEY, THOMAS J. FARRELL, RAYMOND S. WIERCISZEWSKI, JESSE G. HEREDA, DANA C. BELELLA, LAURA K. MOHNEY, KIMBERLY M. HENDERSON, JERRY M. LEHOCKY, DION G. RASSIAS, JOSHUA M. BLOOM, CELESTE L. DEE, LAURA E. ELLSWORTH, CHRISTOPHER M. MILLER, ROBERT J. MONGELUZZI, GRETCHEN A. MUNDORFF, JOHN C. RAFFERTY, JR., ROBERT L. REPARD, DAVID S. SENOFF, SHOHIN H. VANCE, RAMONA M. MARIANI, ANTHONY P. SODROSKI, HAROLD E. CIAMPOLI, JR., KRISTA K. BEATTY, JAMES M. FOX, JANA M. PALKO, ANNA M. CIARDI, BRIDGET GALLOWAY OWEN, | CIVIL ACTION<br><br><br><br>NO.  23-2273 |

**STEVEN PARKINSON, WILLIAM
JUDGE, CHRISTINE DONOHUE, KEVIN
M. DOUGHERTY, DAVID N. WECHT,
SALLIE UPDYKE MUNDY, P. KEVIN
BROBSON, and MOTION'S JUDGE(S),**
Superior Court of Pennsylvania,
                    Defendants.

## MEMORANDUM

**HODGE, J.**                                                    **June 26, 2026**

Before the Court are five Motions to Dismiss Plaintiff Urve Maggitti's ("Plaintiff" or "Ms. Maggitti") Second Amended Complaint (ECF Nos. 179, 180, 181, 183, and 184), and the oppositions thereto (ECF Nos. 188, 189, 190, 191, 192). Also before the Court is Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 187) and the opposition thereto (ECF No. 193). For the following reasons, the Motion for Leave to File is denied, and the Motions to Dismiss are granted.

## I.    BACKGROUND

### A.    Factual Background[1]

As detailed below, Ms. Maggitti's claims arise from circumstances sparked by a mistakenly misfiled document, which ultimately led to numerous lawsuits, petitions to the Pennsylvania Bar, a criminal conviction of Ms. Maggitti by a jury, and a multitude of appeals. Nearly every person Ms. Maggitti came in contact with during these events is named as a defendant in this action. The facts from the Second Amended Complaint are as follows.

### 1.    The First Divorce Action

In 2021, Ms. Maggitti and Victor Maggitti ("Mr. Maggitti") decided to dissolve their marriage. (ECF No. 71 at 41 ¶ 9.) Their divorce action was filed on March 5, 2021, in the Court

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

of Common Pleas of Chester County, Docket No. 2021-01441 (the "First Divorce Action").[2] (*Id.*at 40 ¶ 1.)  Defendant the Honorable Bret Binder ("Judge Binder") was the presiding judge over the action. (*Id.* at 40 ¶ 2.) In the First Divorce Action, Ms. Maggitti was represented by Defendant Enrico Pagnanelli ("Pagnanelli")[3] (*id.* at 81 ¶ 239), and Mr. Maggitti was represented by Defendant David Ladov ("Ladov") at Obermayer Rebmann Maxwell & Hippel LLP ("Obermayer") (*id.* at 81 ¶ 238). On May 6, 2021, a praecipe to withdraw the complaint in divorce was filed in the First Divorce Action, and the case was closed. (*Id.* at 82 ¶ 241.)

### 2.    The Second Divorce Action

The Maggittis commenced a second divorce action, Docket No. 2021-06762 ("Second Divorce Action"), on August 24, 2021.[4] (*Id.* at 84 ¶ 254.) Prior to their marriage, they had entered into a prenuptial agreement. (*Id.* at 41 ¶ 10.) To effectuate the Second Divorce Action, reportedly an amendment was needed to the prenuptial agreement based on a "meeting of the minds" between Mr. and Ms. Maggitti in August 2021. (*Id.* at 42 ¶ 23.) Defendant Hillary Moonay ("Moonay"), an attorney at Obermayer, refused to make this amendment to the prenuptial agreement. (*Id.* at 42 ¶ 24.) Plaintiff alleges that attorneys at Obermayer convinced Mr. Maggitti that an amendment to the prenuptial agreement between Mr. and Ms. Maggitti "was not 'adequate'" and instead, Moonay rewrote the original prenuptial agreement as a Marital Settlement Agreement. (*Id.* at 41 ¶¶ 17–18, 42 ¶ 25.) The Marital Settlement Agreement included a clause asserting that Mr. Maggitti would be the moving party and file documents as necessary to move the divorce forward. (*Id.* at 43 ¶ 28.)

---

[2] The Court takes judicial notice of *Maggitti v. Maggitti*, Docket No. 2021-01441-DI (Chester Cnty. Ct. of Common Pleas). *See* Fed. R. Civ. P. 201; *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001).

[3] The Second Amended Complaint contains various spelling of Pagnanelli's name. The Court adopts the spelling used in Pagnanelli's Motion to Dismiss (ECF No. 179).

[4] The Court takes judicial notice of *Maggitti v. Maggitti*, Docket No. 2021-06762-DI (Chester Cnty. Ct. of Common Pleas). *See supra* n.2.

Plaintiff asserts that it was essential for personal, financial, and tax reasons for the divorce to be finalized in 2021. (*Id.* at 41 ¶ 13.) Specifically, Mr. Maggitti would lose approximately one million dollars if the divorce did not take place in 2021. (*Id.* at 89 ¶ 272.) On November 24, 2021, Ms. and Mr. Maggitti signed the documents needed to obtain a divorce decree in the presence of a notary public. (*Id.* at 46 ¶ 44.) The documents needed to be filed by November 29, 2021 in order to obtain a divorce in the 2021 calendar year. (*Id.* at 46 ¶ 47.) The documents were filed with the court's prothonotary office on November 24, 2021. (*Id.* at 47 ¶ 49.)

On January 4 or 5, 2022, Plaintiff learned that the documents necessary to obtain a divorce were filed into the First Divorce Action rather than the Second Divorce Action because Obermayer drafted the documents with the wrong docket number. (*Id.* at 47 ¶ 53–54.) Plaintiff alleges that, to remedy the situation, Defendant Mathieu Shapiro ("Shapiro") directed her to re-sign the previously executed documents in order to obtain the divorce decree. (*Id.* at 48–49 ¶ 64.) Plaintiff disagreed with this approach, and instead filed a motion urging the court to deem the already executed documents to be timely filed, and asked Moonay to support her motion. (*Id.* at 49–50 ¶¶ 68, 70.) On January 26, 2022, Obermayer filed a petition to enforce the Marital Settlement Agreement. (*Id.* at 51 ¶ 72.) However, Moonay had also filed in the First Divorce Action a praecipe to transfer document to the correct file on January 5, 2022, which Plaintiff asserts was not served on her. (*Id.* at 84 ¶ 259, 85–86 ¶¶ 261–63.)

On May 25, 2022, Plaintiff inspected the case file in the First Divorce Action, and discovered a court order entered December 21, 2021, stating that the divorce complaint was withdrawn on May 6, 2021. (*Id.* at 82 ¶ 242; ECF 71-1 at 531.) This Order alerted that the documents drafted by Moonay and signed by the Maggittis in November 2021 were filed in the First Divorce Action rather than the Second Divorce Action. (ECF No. 71 at 83–84 ¶ 252.) The

order was filed with enough time for the parties to remedy the error and file the documents in the Second Divorce Action. (*Id.* at 84 ¶ 257.) Plaintiff asserts that this order was "assumedly" sent to Pagnanelli and Ladov, as counsel of record in the First Divorce Action. (*Id.* at 82 ¶ 243.) Plaintiff emailed Pagnanelli in August asking for correspondence and documents he has from either the First or Second Divorce Action. (*Id.* at 82 ¶ 247.) Pagnanelli responded that she has everything he has received, though "[t]here may be an order since filing, I would need to try and find it." (*Id.* at 83 ¶ 248.) Plaintiff responds with information regarding the December 2021 order, to which Pagnanelli replies that he has "received no orders on this case since [he] left it." (*Id.* at 83 ¶ 250.)

On March 11, 2022, an evidentiary hearing in the Second Divorce Action was held (the "March 11 Hearing"). (*Id.* at 62 ¶ 146.) Plaintiff hired a certified court reporter for this hearing, and asked Judge Binder if it was possible for her to have that court reporter "as [her] witness to take down this stuff." (*Id.* at 62 ¶ 149.) Judge Binder replied that it was not possible because outside court reports are not permitted, and that there already was a court reporter. (*Id.*) Five days after the hearing, Plaintiff ordered the official transcript, prepared by Defendant Bridget Galloway Owen ("Owen") from the Chester County Court Reporter's Office, which Plaintiff asserts contained 203 errors. (*Id.* at 63 ¶¶ 154–55, 64 ¶ 159.) Plaintiff filed a motion to correct the transcript based on audio that Plaintiff personally recorded during the hearing. (*Id.* at 64 ¶¶ 156, 158.) Moonay opposed the motion to amend the transcript. (*Id.* at 64 ¶ 159.) Judge Binder denied the motion. (*Id.* at 65 ¶ 162.) Plaintiff asserts that one of the substantive errors in the transcript destroys her tortious interference cause of action in her tort action against Obermayer. (*Id.* at 69 ¶¶ 184–86.)

The final decree in the Second Divorce Action was issued on August 18, 2022. (*Id.* at 120 ¶ 433.)

### 3.      Writ of Mandamus

Plaintiff challenged the subject matter jurisdiction of the court in the March 11 Hearing in a writ of mandamus to the Pennsylvania Supreme Court, filed on November 23, 2022 (Docket No. 121 MM 2022). (*Id.* at 108 ¶ 372, 121 ¶ 440.) She sought an order directing the trial court to correct the record and for all proceedings to be stayed until the Supreme Court ruled on all issues raised in the mandamus. (*Id.* at 121 ¶ 440.) The clerk of the Pennsylvania Supreme Court informed Plaintiff that she had to file a request to stay the appeal process with the Superior Court, which Plaintiff then did. (*Id.* at 121 ¶¶ 441–42.) The Superior Court denied the motion, as well as a subsequent emergency motion and emergency application for clarification Plaintiff filed.[5] (*Id.* at 122 ¶¶ 443–47.)

The Pennsylvania Supreme Court issued a per curiam order denying the writ of mandamus without stating its basis. (*Id.* at 108 ¶ 373.)

### 4.      The Tort Action

Plaintiff filed a tort action in the Chester County Court of Common Pleas against Defendant Obermayer attorneys Moonay, David Nasatir ("Nasatir"), Shapiro, Thomas Leonard ("Leonard"),

---

[5] Separately, Plaintiff makes various allegations relating to Moonay's motion to withdraw as counsel for Mr. Maggitti on appeal. (*Id.* at 124 ¶ 456.) She asserts that the Superior Court violated her procedural due process rights by granting Moonay's motion to withdraw on January 27, 2023, before she had an opportunity to respond. (*Id.* at 129 ¶¶ 485, 488–89.) Also on January 27, 2023, the Superior Court dismissed the appeal sua sponte. (*Id.* at 129 ¶ 487.) Plaintiff appealed the January 27, 2023 order granting the motion to withdraw to the Pennsylvania Supreme Court. (*Id.* at 130 ¶ 494.) The Supreme Court's Prothonotary Office responded that the January 19, 2023 order was not appealable, but the appeal of the January 27, 2023 order "was accepted via a separate document." (*Id.* at 130–31 ¶ 495.) The Prothonotary Office erred in its reference to the January 19, 2023 order, which Plaintiff had not appealed, and Plaintiff spoke with the office who stated they had simply mixed up the date of the motion and the order. (*Id.* at 131 ¶¶ 496–98.)

and Nicholas Poduslenko ("Poduslenko") on March 10, 2022 (the "Tort Action").[6] (*Id.* at 78 ¶ 224.) Judge Binder was assigned as the presiding judge in the Tort Action.[7] (*Id.* at 79 ¶ 225.)

Plaintiff filed the process of service for the Tort Action at the Office of the Sheriff and paid the processing fee. (*Id.* at 71 ¶¶ 80, 82–84.) Defendant Rosana Castro ("Castro"), the deputy clerk of the Sheriff's Office in Chester County, handled the transaction. (*Id.* at 71 ¶ 81.) Plaintiff asserts that service was not made by the sheriff as required under 231 Pa. C.S.A. § 401. (*Id.* at 71–72 ¶¶ 85–90.) Castro informed Plaintiff that the documents were sent in "the envelopes that [Plaintiff] provided with the addresses on them." (*Id.* at 57 ¶ 114.) Defendant Debbie Hunter ("Hunter"), Support Staff Supervisor in the Chester County Office of the Sheriff, informed Plaintiff that Castro processed the paperwork accordingly, the envelopes were mailed via regular mail, and she would prepare replacement forms. (*Id.* at 59 ¶ 129.) The replacement forms had signatures from Defendant Hunter and Defendant Fredda Maddox ("Sheriff Maddox"),[8] Sheriff of Chester County. (*Id.* at 59 ¶ 130.)

Shapiro entered his appearance as attorney for his co-defendants in the Tort Action. (*Id.* at 114 ¶¶ 398–99.)[9] Defendant Melissa Blanco ("Blanco"), attorney at Obermayer, also represented the defendants in this action. (*Id.* at 114 ¶ 403.) In April 2022, Shapiro and Blanco attached the transcript of the March 11 Hearing to their preliminary objections in this action. (*Id.* at 114 ¶ 403,

---

[6] Plaintiff has also filed "Bar Complaints, too numerous to count, against attorneys" at Obermayer. (*Id.* at 95 ¶ 311.)

[7] Plaintiff moved to disqualify Defendant Binder from the civil tort action, which was denied. (*Id.* at 108 ¶¶ 374–75.)

[8] Plaintiff also alleges that she received mail signed by Sheriff Maddox stating that she received a summons to appear for jury duty and the Office of Jury Services has yet to hear a response. (*Id.* at 177 ¶¶ 800–01.) Plaintiff asserts that she never received the summons to which it refers. (*Id.* at 177 ¶ 802.)

[9] Plaintiff filed a motion for Shapiro to show his authority to act as counsel for his co-defendants. (*Id.* at 114 ¶ 402.)

79 ¶¶ 226–27.) At that time, Plaintiff's appeal regarding the transcript was pending, and was ultimately denied in August 2023. (*Id.* at 114 ¶ 403 & n.89.) Plaintiff alleges the transcript contained confidential provisions of the Marriage Settlement Agreement. (*Id.* at 115 ¶ 405.)

Numerous judges presided over the Tort Action at various points. On March 2, 2023, Defendant the Honorable Anthony Verwey ("Judge Verwey") was assigned to preside over the Tort Action following Judge Binder's sua sponte recusal. (*Id.* at 109–110 ¶¶ 382–83, 385.) Plaintiff filed a motion to stay the action pending an appeal on "the underlying evidence issues," which Judge Verwey granted without addressing the evidentiary issue raised by Plaintiff. (*Id.* at 110 ¶¶ 384–85.) In May 2023, Defendant the Honorable William Mahon ("Judge Mahon") was assigned to preside over the Tort Action following Judge Verwey's recusal. (*Id.* at 113 ¶¶ 394–95.) Plaintiff then filed another motion for continuance and stay, which Judge Mahon denied. (*Id.* at 113 ¶¶ 396–97.) Judge Mahon recused himself in July 2023. (*Id.* at 116 ¶ 411.)

### 5.    The Criminal Action

Plaintiff received a call from Defendant Steven Parkinson ("Detective Parkinson"), Detective at the Chester County District Attorney's Office, on August 16, 2022, regarding the motion Plaintiff filed to correct the March 11 Hearing transcript, and he requested to see Plaintiff in his office. (*Id.* at 134 ¶¶ 513–14.) Plaintiff submitted a Right to Know request to determine why Detective Parkinson had called her. (*Id.* at 134 ¶ 519.) She received no records in response, and the reply to her appeal of the request stated that "even if the request for emails was more specific and/or narrowed, and responsive emails existed (beyond the records that the County received from the Detectives), the emails would likely relate to an ongoing criminal investigation and be exempt from disclosure." (*Id.* at 135 ¶ 523.) Plaintiff filed a further appeal, which was assigned to Judge Mahon, whose only order in the Right to Know appeal was to recuse himself. (*Id.* at 135–36 ¶¶ 527–28.)

On August 18, 2022, Defendant Magistrate Judge Marc Lieberman ("Judge Lieberman") signed a search warrant submitted by Detective Parkinson and approved by Defendant William Judge ("William Judge"), District Attorney, which permitted the search of the USB flash drive attached to Plaintiff's reply in support of her motion to correct the transcript of the March 11 Hearing. (*Id.* at 169 ¶¶ 767–68.) The accompanying affidavit of probable cause stated that Chester County Detective Sergeant Walton notified Detective Parkinson on August 10, 2022 that a person may have recorded a hearing in Judge Binder's chambers, and that the Chester County Prothonotary Office had specific information regarding the incident. (*Id.* at 169 ¶ 772.) The affidavit further asserts that Detective Parkinson then contacted the Chester County Prothonotary Office, who provided him with "documents related to the 'motion' and the 'attached sealed envelope labeled USB flash drive exhibit A.'" (*Id.* at 169–70 ¶¶ 772–73.)

On February 6, 2023, a Criminal Complaint was filed against Plaintiff accusing her of violating 18 Pa. C.S.A. § 5103.1 "Unlawful Use of An Audio or Video Device in Court," Docket Number MJ-15101-CR-0000022-2023. (*Id.* at 139 ¶ 541.) The complaint was filed by Detective Parkinson, who stated he was informed "there was a suspicion" that a "woman" had done something illegal. (*Id.* at 152 ¶ 706.) Judge Lieberman signed and issued the preliminary hearing notice and order for Plaintiff to be fingerprinted. (*Id.* at 139 ¶ 542.) Judge Lieberman later recused himself from the case, and the case was then assigned to Defendant Magistrate Judge Martin Goch ("Judge Goch"). (*Id.* at 139 ¶¶ 543–44.)

Plaintiff filed a writ of certiorari or interlocutory order regarding her criminal dockets in the Court of Common Pleas. (*Id.* at 140 ¶ 547.) Judge Mahon[10] denied the order because "[t]he

---

[10] Judge Mahon issued this order two months before he was assigned to the Tort Action. (*Id.* at 140 ¶ 548, 113 ¶¶ 394–95.)

requested relief is only available for civil judgments." (*Id.* at 140 ¶ 548.) Plaintiff filed an emergency petition for writ of certiorari with the Pennsylvania Supreme Court. (*Id.* at 141 ¶ 552.)

Plaintiff had her preliminary hearing in the Criminal Action on March 29, 2023 before Judge Goch, at which she brought three tape recorders, two of which were activated in the court room. (*Id.* at 141 ¶¶ 553–55.) Judge Goch asked Plaintiff if she was recording the hearing, to which she responded yes, and Judge Goch informed her that she was not allowed to record the proceeding. (*Id.* at 142 ¶¶ 556–58.) Judge Goch ordered that Plaintiff's three tape recorders to be removed. (*Id.* at 142 ¶ 562.) Defendant Dan Roland ("Roland"), an employee of the Chester County District Attorney's office, was present during this exchange. (*Id.* at 143 ¶¶ 565–66.) Judge Goch then postponed the hearing because of Plaintiff's emergency writ of certiorari. (*Id.* at 143 ¶ 567.)

Plaintiff spoke with Defendant Amy Dreibelbis ("Dreibelbis"), Deputy Prothonotary of the Pennsylvania Supreme Court, regarding the status of Plaintiff's writ of certiorari and regarding the official docket entry listing the petition for original jurisdiction as an appellate procedure. (*Id.* at 145 ¶ 676.) Dreibelbis informed Plaintiff that the Pennsylvania Supreme Court does not issue writs of certiorari, and so it had been correctly docketed under the Pennsylvania Appellate Procedure. (*Id.* at 145 ¶ 678.) That same day, Plaintiff filed an exception to the characterization of her writ of certiorari as a motion for injunctive relief. (*Id.* at 145 ¶ 679.) That filing was returned as an improper pleading in the matter. (*Id.* at 145 ¶ 680.) On April 25, 2023, the Pennsylvania Supreme Court issued a per curium order denying Plaintiff's petition. (*Id.* at 146 ¶ 682.)

On May 16, 2023, Plaintiff filed a "petition for writ of prohibition" with the Pennsylvania Supreme Court. (*Id.* at 146 ¶ 685.) She then filed an application to stay the preliminary hearing in her criminal case while her latest petition was pending, which Judge Goch denied. (*Id.* at 146 ¶¶ 686–87.)

On May 24, 2023, the postponed preliminary hearing was held in Plaintiff's criminal case. (*Id.* at 147 ¶ 688.) Plaintiff brought a tape recorder to the hearing, which she confirmed to Judge Goch that she was using. (*Id.* at 147 ¶ 674.) Roland again was present at this hearing, and he also asked Ms. Maggitti if she was recording the proceeding, to which she confirmed she was recording. (*Id.* at 149 ¶ 682.) When Plaintiff refused to turn off the recording device as Judge Goch directed, Judge Goch ordered the removal of the tape recorder. (*Id.* at 149 ¶ 684.) The tape recorder was removed and was returned to Plaintiff after the hearing concluded. The tape recorder did not contain the recording of the exchange between the Court and Plaintiff prior to its confiscation at the hearing. (*Id.* at 150 ¶ 689.)

Also at the May 24, 2023 hearing, Detective Parkinson testified, under direct examination by Roland, that he listened to the recordings from the device at the March 11 Hearing, and that the transcript of that proceeding is a fair and accurate representation of the recording he listened to. (*Id.* at 156–57 ¶ 711.)

On July 20, 2023, the case was reassigned to Defendant Judge John Capuzzi Sr. ("Judge Capuzzi"). (*Id.* at 164 ¶ 742.) Plaintiff filed an emergency motion to stay the criminal action pending the decision in a declaratory judgment action that she filed, which Judge Capuzzi denied. (*Id.* at 164 ¶ 745, 165 ¶ 750.)

At an August 23, 2023 hearing, Plaintiff challenged the court's subject matter jurisdiction. (*Id.* at 168 ¶ 756.) Judge Capuzzi stated that the court had subject matter jurisdiction because the offense took place in Chester County. (*Id.* at 167 ¶ 755.) Plaintiff continued to raise the issue of jurisdiction following Judge Capuzzi's determination, resulting in Judge Capuzzi holding Plaintiff in contempt of court. (*Id.* at 168 ¶¶ 757–78.)

11

In October 2023, Plaintiff filed motions to stay the criminal case and to disqualify Judge Capuzzi.[11] (*Id.* at 181 ¶¶ 827–28.) Judge Capuzzi denied both motions.[12] (*Id.* at 181 ¶¶ 829–30.) He also issued an order that, notwithstanding Ms. Maggitti's refusal to comply with his earlier order to sign the "Waiver of Counsel Colloquy," he found she knowingly, intelligently, and voluntarily elected to represent herself. (*Id.* at 179 ¶ 813, 183 ¶ 841.)

On January 9, 2024, Ms. Maggitti attended a hearing in the Criminal Action. (*Id.* at 186 ¶ 857.) She again challenged the court's subject matter jurisdiction and moved to stay the case pending her declaratory judgment action, which was denied. (*Id.* at 186 ¶¶ 857, 859.) She then moved to strike the evidence obtained from the Prothonotary Office. (*Id.* at 186 ¶ 860.) As Ms. Maggitti objected during the Assistant District Attorney's argument, Judge Capuzzi said that he would order for her to be muzzled if she did not stop her objections. (*Id.* at 186 ¶ 862.) In the middle of the hearing, he ordered for her to be taken into custody—Ms. Maggitti was handcuffed, taken into a cell. (*Id.* at 187 ¶¶ 864–65.) She was held in the cell for over an hour, and then taken back into the courtroom. (*Id.* at 187 ¶ 868.) Judge Capuzzi ordered for her to be fingerprinted on or by January 19, 2024. (*Id.* at 187 ¶ 869.)

### B.    Procedural History

This action has a lengthy procedural history. Plaintiff filed her complaint in Civil Action 23-2273 on June 14, 2023. (ECF No. 1.) Summonses were issued to all defendants on June 16, 2023, and sent to Plaintiff. (ECF No. 4.) Plaintiff filed an amended complaint on September 7,

---

[11] Plaintiff also alleges that a habeas case she filed was assigned to Judge Binder. (*Id.* at 184 ¶¶ 844–45.) She filed a motion to disqualify Judge Binder from the case, which Judge Capuzzi denied. (*Id.* at 185 ¶¶ 850, 853.)

[12] Plaintiff filed an emergency petition with the Pennsylvania Supreme Court to disqualify Judge Capuzzi from presiding over her criminal case. (*Id.* at 184 ¶ 843.) The court denied Plaintiff's petition. (*Id.*)

2023, and an "Amended and Supplemental Complaint" on September 8, 2023. (ECF Nos. 5, 7.) Additionally, Plaintiff filed three additional lawsuits originating factually from her divorce case: 23-1184, 23-3185, and 23-4359. (*See* ECF No. 50 at 2.)

On December 2, 2023, Judge Slomsky consolidated the four actions and granted the motions to dismiss in all four cases. (ECF No. 50.)[13] He granted leave for Plaintiff to file an amended complaint encompassing both Civil Action Nos. 23-2273 and 23-4359. (*Id.* at 11.) The other two actions were dismissed with prejudice and closed. (ECF No. 12.) The case was subsequently reassigned to this Court.

On January 30, 2024, Plaintiff filed the Second Amended Complaint. (ECF No. 71.) On February 12, 2024, Plaintiff filed a Motion for Leave to File an Amended Complaint. (ECF No. 78.) On July 22, 2024, the Court granted Plaintiff leave to file a Third Amended Complaint, limited to 75 pages, that shall be filed on or before August 22, 2024. (ECF No. 101.). A Third Amended Complaint was not filed.

Plaintiff has repeatedly raised to this Court the issue of service. This Court held a conference on February 16, 2024, during which the issue of service on Defendants was raised and subsequently addressed. On February 26, 2024, the Court ordered that service shall be made on all Defendants at addresses provided in Exhibits to the order. (ECF No. 84.) At a June 5, 2024 hearing, the Court affirmed that service was done properly.

Following a course of appeals filed by Plaintiff, motions to stay pending appeal, and a show cause hearing, the Court on October 9, 2025 set a briefing schedule for Defendants' motions to dismiss the Second Amended Complaint. (ECF No. 168.) Defendants filed five motions to dismiss.

---

[13] Plaintiff later filed a fifth action, 23-5141, which this Court consolidated with the remaining consolidated cases on September 9, 2024. (ECF No. 124.)

(ECF Nos. 179, 180, 181, 183, 184.) Plaintiff requested an extension of time to file responses in opposition, which the Court granted and extended to March 24, 2025. (ECF No. 186.) On March 23, 2025, Plaintiff filed a motion for leave to file an amended complaint. (ECF No. 187.)[14] The following day, on the extended deadline, Plaintiff filed responses in opposition to the motions to dismiss. (ECF Nos. 188, 189, 190, 191, 192, 193.)

### C.    Parties

Ms. Maggitti has sued sixty-eight defendants in this action. Of those sixty-eight, fifteen are judges or justices in Pennsylvania state courts: Judge Binder, Judge Verwey, Judge Mahon, Judge Goch, Judge Lieberman, Judge John Hall, Judge Jack A. Panella, Judge Capuzzi, Chief Justice Debra Todd, Justice Christine Donohue, Justice Kevin M. Dougherty, Justice David N. Wecht, Justice Sallie Updyke Mundy, Justice P. Kevin Brobson, and the unnamed "Motion's Judge" of the Superior Court (the "Judicial Defendants"). (ECF No. 71 at 40 ¶ 2, 110 ¶ 383, 113 ¶ 395, 139 ¶ 544, 139 ¶ 542, 164 ¶ 746, 242, 164 ¶ 742, 184 ¶ 843, 226.) Three of the Defendants are employees of Pennsylvania state courts: Deputy Prothonotary of the Superior Court Benjamin D. Kohler, Deputy Prothonotary of the Pennsylvania Supreme Court Amy Dreibelbis, and Owen (the "Court Staff Defendants"). (*Id.* at 112 ¶ 393, 145 ¶ 676, 71 ¶ 191.)

Ten of the Defendants are or were members of Pennsylvania's Judicial Conduct Board: William C. Wenner, Nancy L. Clemens, Rev. James P. McCloskey, the Honorable Susan P. Gantman, the Honorable Rene Cohn Jubelirer, Andrew E. Masich Ph.D., Michael Brunelle, Scott B. Cooper, Sudhir R. Patel, and Tara Mobley (the "Judicial Conduct Board Defendants"). (ECF No. 183[15] at 8.) Nine of the Defendants are associated with the Office of Disciplinary Counsel:

---

[14] An opposition to this motion was filed on March 24, 2026. (ECF No. 193.)
[15] The Second Amended Complaint lacks sufficient factual allegations to identify the role of several Defendants. The Court therefore cites to Motions to Dismiss where necessary.

Thomas J. Farrell, Raymond S. Wierciszewski, Ramona M. Mariani, Anthony P. Sodroski, Harold E. Ciampoli Jr., Krista K. Beatty, James M. Fox, Jana M. Palko, and Anna M. Ciardi (the "Office of Disciplinary Counsel Defendants"). (*Id.* at 9.) Sixteen Defendants are members of the Disciplinary Board or its administrative staff: Jesse G. Hereda, Dana C. Belella, Laura K. Mohney, Kimberly M. Henderson, Jerry M. Lehocky, Dion G. Rassias, Joshua M. Bloom, Celeste L. Dee, Laura E. Ellsworth, Christopher M. Miller, Robert J. Mongeluzzi, Gretchen A. Mundorff, John C. Rafferty, Jr., the Honorable Robert L. Repard, David S. Senoff, and Shohin H. Vance (the "Disciplinary Board Defendants"). (*Id.* at 10.)

Eight of the Defendants are attorneys in private practice. Pagnanelli is an attorney in private practice at the law firm Testa & Pagnanelli LLC. (ECF No. 71 at 81 ¶ 239.) Seven of the Defendants are attorneys at the law firm Obermayer Rebmann Maxwell & Hippel LLP: Moonay, Nasatir, Shapiro, Leonard, Poduslenko, Blanco, and Ladov (the "Obermayer Defendants"). (*Id.* at 21 n1.)

Three Defendants are in the Chester County Sheriff's office: Sheriff Maddox, Castro, and Hunter. (*Id.* at 59 ¶ 129, 60 ¶ 136.) Lastly, four Defendants are in the Chester County District Attorney's Office: Deb Ryan, Roland, William Judge, and Parkinson (*Id.* at 60 ¶ 136, 149 ¶ 682, 168 ¶ 766.)

## II.    MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Shortly after filing her Second Amended Complaint, Plaintiff filed a motion for leave to amend her complaint. (ECF No. 78.) The Court granted that motion on July 22, 2024, and ordered that her amended complaint must be filed on or before August 22, 2024. (ECF No. 101.) Plaintiff filed no motion for an extension of this deadline. Over a year later, the Court set a briefing schedule for motions to dismiss the Second Amended Complaint, which was discussed orally in a hearing and later memorialized in an order. (ECF No. 168.) At no point in the hearing did Plaintiff raise

that she sought to amend her complaint. Defendants filed their motions to dismiss the Second Amended Complaint. Plaintiff then sought an extension to file her oppositions—which the Court granted. Only on the eve of her extended opposition deadline did Plaintiff seek leave to file a third amended complaint.

Plaintiff's motion is governed by Federal Rule of Civil Procedure 15(a)(2). Under this rule, court leave is required for a party to amend its pleadings, which a court "should freely give when justice so requires." Fed. R. Civ. P. 15(a)(2).[16] The Court has discretion on whether to grant leave to amend. *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). A court may deny a motion for leave to amend if (1) amendment would be futile, (2) the moving party demonstrated undue delay, bad faith, or dilatory motives, (3) amendment would prejudice the non-moving party, or (4) the moving party was put on notice of deficiencies in its pleadings but chose not to resolve them. *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). The Court's discretion under Rule 15 is based on the animating principle "to make pleadings a means to achieve an orderly and fair administration of justice." *Griffin v. County Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 227 (1964).

Delay alone is an insufficient basis to deny leave to amend. *Cureton v. Nat'l Coll. Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). However, an undue delay—that is, a delay that places an "unwarranted burden on the court," may be prejudicial to Defendants, or indicates a lack of diligence—is sufficient to justify a discretionary denial of leave. *Id.* "[T]he party seeking leave to amend bears the burden of explaining the reasons for the delay." *LePage's Inc. v. 3M*, No. 97-3983, 1998 WL 631960, at *4 (E.D. Pa. Sept. 2, 1998).

---

[16] A party may also amend its pleadings with the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). Here, no Defendants have consented to the amendment.

Plaintiff explains that the August 22, 2024 deadline passed without her amended complaint being filed because she filed several motions regarding service. (ECF No. 187 at 3.) These motions regarding service were decided by this Court on September 9, 2024. (*Id.*) Plaintiff asserts that her nearly two-year delay is not undue because she has been "an active pro se litigant simultaneously pursuing related proceedings in this Court, the Third Circuit Court of Appeals, the Superior Court of Pennsylvania, and the Pennsylvania Supreme Court." (*Id.* at 4.) She asserts there has been no dilatory motive because her new amended complaint "has been under continuous preparation" and she never previously asserted that she did not intend to amend her complaint. (*Id.* at 5.) She further asserts that she has been actively preparing her amended complaint "throughout the period following ECF 101" (*id.* at 4), and so she has been actively preparing this amendment since July 22, 2024.

This Court has consistently granted extensions requested by Plaintiff in this litigation, as it understands that a pro se litigant lacks the skilled knowledge and sophistication of trained legal counsel, and often requires more time than an attorney to prepare a filing. Plaintiff has also demonstrated she is aware of how to seek extensions and capable of making such requests. Curiously, no such effort was made here. Instead, over a year and a half after the original deadline for the Third Amended Complaint, after Rule 12 motions have been filed regarding the Second Amended Complaint, Plaintiff asserts her new complaint has been under continuous preparation.

This action has been pending for approximately three years. Defendants had already filed earlier motions to dismiss, and sometimes multiple motions to dismiss. Yet, the case remains in the pleading stage. The orderly and fair administration of justice is of paramount importance to this Court and is its duty. Thus, the Court has determined that at this stage, the matter will be better

served here by addressing the pending motions to dismiss. Such a sequence will permit Plaintiff to amend any claims dismissed without prejudice.

### III.   MOTIONS TO DISMISS

#### A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citation omitted). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Applying the principles of *Iqbal* and *Twombly*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This three-prong inquiry involves the following: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

When a plaintiff is proceeding pro se, the court must liberally construe the litigant's pleadings. *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011). While a pro se litigant's pleadings are held to less stringent standards than pleadings drafted by lawyers, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**B.     Discussion**

Across the five motions to dismiss, Defendants independently but consistently argue that the Second Amended Complaint should be dismissed pursuant to Rule 8 and Rule 12(b)(6), that certain Defendants are subject to various immunity doctrines, and that certain claims are barred under various doctrines.

In many of her oppositions, Plaintiff raises arguments that this Court has heard repeatedly regarding the lack of proper service. As the Court has stated before, a party may raise a challenge to the sufficiency of service only as a defense. *See* Fed. R. Civ. P. 4. Moreover, by filing motions under Rule 12, Defendants have waived any potential challenge to service or personal jurisdiction. *See* Fed. R. Civ. P. 12(h)(1). Thus, as has been determined by this Court previously, the issue of proper service on Defendants is moot. The issue of proper service need not be raised by Plaintiff and will not be entertained further by this Court.

**1.     Rule 8**

Federal Rule of Civil Procedure 8 requires that a complaint contain a "short and plain statement of the claim" and be "simple, concise, and direct." Rule 8 seeks to prevent imposing "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Plaintiff's earlier complaint was dismissed under Rule 8. (ECF No. 50.) Here, Defendants raise that Plaintiff's Second Amended Complaint should also be dismissed under Rule 8. Indeed, the same reasoning of ECF No. 50 applies here. Plaintiff's Second Amended Complaint is 299 pages, contains thirty causes of action, and attaches voluminous exhibits spanning over 10,000 pages. Yet even with this extreme length, the Second Amended Complaint provides no facts relevant to many of the Defendants. Rule 8 not only begs, but compels the dismissal of the Second Amended Complaint.

Beyond this threshold deficiency, the Second Amended Complaint substantively fails on several grounds which cannot be remedied through amendment. The Court will therefore address the arguments raised by Defendants under Rule 12.

### 2.      Immunity Doctrines

Defendants assert that various immunity doctrines bar claims against them. The Court takes each in turn.

### a)      Judicial Immunity

Judicial officers are immune from suit for acts performed in their judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). This immunity applies to judicial officers sued in their individual capacity. *See, e.g.*, *Parrish v. Muldrow*, No. 1:24-CV-00670, 2025 WL 2633212, at *7 (M.D. Pa. July 24, 2025), *report and recommendation adopted*, No. 1:24CV670, 2025 WL 2335888 (M.D. Pa. Aug. 13, 2025) (collecting cases). Judicial immunity applies even if "the action [they] took was in error, was done maliciously, or was in excess of [their] authority," *Stump*, 435 U.S. at 356, and it extends to allegations of conspiracy. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). In order for judicial immunity to apply, the court in which the judge sits must have jurisdiction over the subject matter, and the judge must perform a judicial act. *Stump*, 435 U.S. at 359. A judge will be subject to liability only in a "clear absence of all jurisdiction." *Id.* at 356. Acts that are merely in "excess of jurisdiction" remain subject to immunity protection. *Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 769 (3d Cir. 2000). Moreover, the jurisdiction inquiry is focused on subject matter jurisdiction. *Figueora v. Blackburn*, 208 F.3d 435, 444 (3d Cir. 2000).

All of the facts alleged in Plaintiff's Second Amended Complaint related to the Judicial Defendants concern or are related to judicial acts. For many Judicial Defendants, the allegations are sparse. There are no factual allegations related to Judge Hall, Judge Panella, or any unnamed Motion's Judges in the Superior Court of Pennsylvania. Plaintiff alleges that the Supreme Court

of Pennsylvania denied her writ of mandamus without stating its basis. (ECF No. 71 at 108 ¶ 373.) She asserts that Judge Verwey granted a motion to stay without addressing an evidentiary issue, subsequently denied the motion to stay, and that he later recused himself from the Tort Action. (*Id.* at 110 ¶¶ 384–86, 113 ¶ 394.) Plaintiff alleges Judge Mahon denied a motion for continuance, and that he later recused himself from the Tort Action. (*Id.* at 113 ¶¶ 396–97, 141 ¶ 551.) Plaintiff also alleges Judge Mahon denied her request for Writs of Certiorari related to her criminal matters while presiding over the Tort Action. (*Id.* at 140 ¶¶ 548–550.) Plaintiff alleges that Judge Lieberman signed off on a search warrant despite knowing Detective Parkinson violated certain laws. (ECF No. 71 at 174 ¶ 786.) Plaintiff does not allege any lack of jurisdiction in these actions, nor is there any "clear absence of all jurisdiction" for these actions. Justices Todd, Donohue, Dougherty, Wecht, Mundy, and Brobson, and Judges Hall, Panella, Verwey, Mahon, and Lieberman, and Motion's Judges are entitled to immunity for the conduct alleged in the Second Amended Complaint and therefore any claims against them are dismissed with prejudice. *See, e.g.*, *Williams v. Stack*, No. 23-2685, 2024 WL 3548766, at *1 (3d Cir. July 26, 2024) (per curiam) (approving a district court's dismissal with prejudice when claims are dismissed on judicial immunity grounds).

Plaintiff's allegations regarding Judge Binder similarly all relate to judicial acts: ruling on motions, issuing orders, and conducting a hearing. (*See, e.g.*, ECF No. 71 at 62 ¶ 148, 65 ¶ 152, 82 ¶ 242, 93 ¶ 295, 100 ¶ 339.) However, Plaintiff also alleges Judge Binder lacked subject matter jurisdiction at the March 11 Hearing because no pleading regarding the "validity" of the Marital Settlement Agreement was before the court. (ECF No. 71 at 199.) If there were a clear absence of jurisdiction, immunity would not apply. But Pennsylvania Courts of Common Pleas "have unlimited original jurisdiction of all actions and proceedings." 42 Pa. C.S.A. § 931(a). The

21

enforceability of a contract is well within its jurisdiction. Even if there were an error in addressing the validity of the Marital Settlement Agreement sua sponte,[17] such action by Judge Binder was not taken in the clear absence of all jurisdiction. Judge Binder is therefore entitled to immunity for the conduct alleged in the Second Amended Complaint and thus all claims against him are dismissed with prejudice.

Plaintiff alleges Judge Goch, when presiding over the Criminal Action, ordered the seizure of the tape recorders she had with her after Plaintiff stated she was recording the proceeding and being told she was not allowed to record. (ECF No. 71 at 142 ¶¶ 556–62, 149 ¶ 684.) She alleges Judge Goch made multiple threats of arrest to Plaintiff for recording the proceeding. (*Id.* at 142 ¶ 559, 143 ¶ 683.) She also alleges that Judge Goch incorrectly found the Commonwealth satisfied probable cause, and without probable cause the court lacked jurisdiction. (*Id.* at 160–61 ¶¶ 722–24, 162 ¶ 731.) Additionally, she alleges that Judge Goch allowed the prosecution to proceed despite her objection due to her pending writ of prohibition. (*Id.* at 150 ¶¶ 689–90.) Maintaining control of a courtroom is a judicial function, and presiding over preliminary hearings is similarly an important and significant role of the judge. The role of the judge exists and is clear regardless of whether or not Ms. Maggitti chooses to see it, understand it, or believe that Judge Goch made the correct legal determination. *See Muhammad v. Weis*, No. 08-cv-3616, 2009 WL 2525454, at *14 (E.D. Pa. Aug. 17, 2009). All Pennsylvania Courts of Common Pleas have subject matter jurisdiction over violations of the Crimes Code. *Com. v. Bethea*, 828 A.2d 1066, 1074–75 (Pa. 2003). Judge Goch's determination of probable cause was not made in clear absence of

---

[17] The March 11 Hearing was an evidentiary hearing on the petition to enforce the Marital Settlement Agreement. "A court cannot enforce a contract unless it can determine what it is." *Ingrassia Const. Co. v. Walsh*, 486 A.2d 478, 484 (Pa. 1984) (internal citation omitted). It is not abnormal for a court to determine whether the essential elements of a contract were met in order for that court to determine if it can be enforced.

jurisdiction. Judge Goch performed his role as a jurist and is therefore entitled to immunity for this conduct alleged in the Second Amended Complaint. Thus, those claims against Judge Goch are dismissed.

However, Plaintiff also asserts that that Judge Goch tampered with the confiscated recorders by erasing what Plaintiff had recorded during the proceeding. (*Id.* at 150 ¶¶ 687–91.) The Judicial Defendants did not specifically address the application of judicial immunity for this allegation, however, the Claim must be dismissed because Plaintiff has not pled sufficient facts from which the Court can draw a reasonable inference of liability. The Court interprets Count 7 to be brought under § 1983 as the Second Amended Complaint does not identify a cause of action. A plaintiff alleging a § 1983 claim must allege the defendant's personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, there is no evidence or suggestion that Judge Goch was ever in possession of the tape recorder. Judge Goch ordered "the female security guard/warden/constable/bailiff to physically remove Plaintiff Urve Maggitti's tape recorder" (ECF No. 71 at 150 ¶ 687), and the recorder was handed back to Plaintiff after the hearing was over (*id.* at 150 ¶ 689). Because Plaintiff's allegations are wholly speculative and conclusory, any further amendment is futile, and thus Count 7 is dismissed with prejudice.[18]

Plaintiff alleges Judge Capuzzi ordered that she sign the "Waiver of Counsel Colloquy" (ECF No. 71 at 179 ¶ 813), found that Plaintiff voluntarily elected to proceed as a self-represented party (*id.* at 183 ¶ 841), held her in contempt of court (*id.* at 180 ¶ 821), denied certain motions

---

[18] Plaintiff has repeatedly made the same wholly speculative and conclusory allegations across multiple forums which have similarly been rejected. (*See, e.g.*, ECF No. 71 at 151–52 (describing the private criminal complaint and judicial complaint filed against Judge Goch); ECF No. 50 at 10 n.7.) "Given the conclusory nature of the allegations, the lack of any new or timely asserted facts, and Plaintiff's repeated attempts to litigate the same issues across multiple forums," amendment is futile. *Dickerson v. New Jersey Inst. of Tech.*, No. CV 19-8344, 2025 WL 2125116, at *6 (D.N.J. July 29, 2025).

(*e.g.*, *id.* at 181 ¶¶ 829–30, 186 ¶ 860, 188 ¶ 878), and issued certain orders (*e.g.*, *id.* at 187 ¶¶ 874–75). She also alleges he threatened to have a muzzle placed on Plaintiff and had her taken into custody. (*Id.* at 186 ¶¶ 863–64.) She alleges that the Commonwealth did not have subject matter jurisdiction nor in personam jurisdiction over her in the Criminal Action (*Id.* at 180 ¶ 817)—neither of which impinge on judicial immunity because, as stated above, Judge Capuzzi was not operating in the clear absence of subject matter jurisdiction. All of the allegations involve judicial acts or maintaining order in the courtroom, which are subject to immunity as discussed above. While some of Judge Capuzzi's comments were alleged to be harsh, judicial immunity does not dissolve because the statements made appear to be or were, in fact, harsh. *See Stump*, 435 U.S. at 356. Judge Capuzzi is therefore entitled to immunity for the conduct alleged in the Second Amended Complaint and thus all claims against him are dismissed with prejudice.

### b)    *Quasi-Judicial Immunity*

"Prothonotaries performing ministerial duties mandated by statute are entitled to quasi-judicial immunity because their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as part of their function." *Malcomb v. Beaver Cnty. Penn. (Prothonotary)*, 616 F. App'x 44, 45 (3d Cir. 2015) (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993)) (citation modified); *see Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 772–73 (3d Cir. 2000). Unless a prothonotary is alleged to act beyond their discretion, outside the scope of their duties, or contrary to their direction in their role, quasi-judicial immunity applies. *Malcomb*, 616 F. App'x at 45.

Plaintiff argues that the Court Staff Defendants performed administrative functions rather than adjudicative functions, and so they are not covered by quasi-judicial immunity. (ECF No. 191 at 5–6 (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)).) However, the case cited does not

support this conclusion. In *Forrester*, the Supreme Court held that a judge's decisions to dismiss a subordinate court employee were not judicial acts for which he is absolutely immune from suit. 484 U.S. at 220–21. By contrast, the administrative tasks Plaintiff alleges Dreibelbis engaged in are precisely the type of ministerial tasks subject to quasi-judicial immunity. Specifically, she alleges that Dreibelbis responded to Plaintiff's question regarding her writ of certiorari. (ECF No. 71 at 145 ¶¶ 676–78.) Plaintiff alleges no facts related to Kohler. Claims against Dreibelbis and Kohler are dismissed with prejudice under quasi-judicial immunity.

Plaintiff's claims relating to Owen involve her handling of the transcript of the March 11 Hearing and thus are similarly subject to quasi-judicial immunity. Specifically, Plaintiff alleges that Owen failed to notify Plaintiff before certifying the transcript, despite "the duty of the official stenographer . . . [to] notify the parties interested or their counsel that [the transcript] will be duly certified and filed." (ECF No. 71 at 71 ¶¶ 193–94.) However, Plaintiff identifies no basis for this duty, nor is the Court able to identify any such duty in the Pennsylvania Court's Uniform Rules Governing Court Reporting and Transcripts, Pa. St. J. Admin Rule 4000 *et seq.* Claims based on Owen's handling and processing of the transcript are therefore subject to quasi-judicial immunity and dismissed with prejudice.

However, Plaintiff further alleges in a conclusory manner that Owen tampered with the transcript. Such tampering, were it sufficiently alleged, would be outside the scope of a prothonotary's official duties and thus she is not entitled to quasi-judicial immunity.[19] Because Plaintiff's allegations are wholly speculative and conclusory, amendment is futile, and so, Count 5 is dismissed with prejudice.

---

[19] Owen, however, may be entitled to qualified immunity. *See Kunkle v. Naugle*, 660 F. App'x 132, 135 (3d Cir. 2016).

The Judicial Conduct Board Defendants, Office of Disciplinary Counsel Defendants, and Disciplinary Board Defendants are also entitled to quasi-judicial immunity. *See Murphy v. Off. of Disciplinary Couns.*, 820 F. App'x 89, 91 (3d Cir. 2020); *Lokuta v. Sallemi*, No. 13-cv-288, 2013 WL 5570227, at *10 (M.D. Pa. Oct. 9, 2013). To the extent their actions are prosecutorial in nature, they are protected by prosecutorial immunity. *See Kwasnik v. Leblon*, 228 F. App'x 238, 244 (3d Cir. 2007); *Haagensen v. Supreme Ct. of Pa.*, 651 F. Supp. 2d 422, 434 (W.D. Pa. 2009), *aff'd*, 390 F. App'x 94 (3d Cir. 2010). Plaintiff pleads no facts related to any of the Defendants in these groups, and their only relation to the allegations is based on their role on these Boards. Thus, claims against them are dismissed with prejudice.

### c)      *Prosecutorial Immunity*

Prosecutors are entitled to absolute immunity in civil suits concerning criminal matters in their individual capacity. *See Imbler v. Pachtman*, 424 U.S. 409, 425–28; *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). Plaintiff alleges Roland was present while Judge Goch confiscated her tape recorders, and that he asked in court during the Criminal Action if Plaintiff was recording. "[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler*, 424 U.S. at 430. Allegations against Roland relate only to his in-court role as the prosecutor in the Criminal Action, and therefore he is entitled to absolute immunity, and claims against him are dismissed with prejudice.

Plaintiff brings claims against William Judge for his role in signing off on the search warrant application. William Judge's role in the search warrant application is in connection with "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings," *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (internal citation omitted), and so he is entitled to absolute immunity and claims against him are dismissed with prejudice.

26

### d)    *Qualified Immunity*

Defendants Castro, Hunter, Sheriff Maddox, and Detective Parkinson argue that they are entitled to qualified immunity. Qualified immunity is an affirmative defense that is pled by a defendant government official sued in their individual capacity. Government officials performing discretionary functions are generally shielded from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). This immunity from liability is qualified—if an official knew or reasonably should have known that the action they took would violate the constitutional rights of a plaintiff, they are not entitled to immunity. *Id*. at 817–18. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A government official is not protected from suit or civil liability if their conduct violates a clearly established statutory or constitutional right and a reasonable person would have known their conduct was unlawful. *Id.*

Courts apply a two-step approach in evaluating claims of qualified immunity. First, "a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (citation modified). Second, a court must determine whether that right was "clearly established" at the time of the alleged misconduct. *Id.*; *see also Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014).

27

In Counts 10, 11, 12, and 19,[20] Plaintiff asserts Defendants Castro,[21] Hunter, and Sheriff Maddox violated the Fourth Amendment in connection with the alleged service of process issues related to the Tort Action. Plaintiff's pleading is deficient in asserting a violation of a constitutional right as she does not allege how the service of process violated her Fourth Amendment rights. Because such deficiency is capable of amendment, the Court dismisses the claims against these Defendants pursuant to Rule 12(b)(6) and reserves any determination on qualified immunity.

Detective Parkinson is entitled to qualified immunity for the claims against him related to the search warrant application. Plaintiff asserts that a prothonotary support staff member gave Detective Parkinson court filings when Detective Parkinson did not have a search warrant. (ECF No. 71 at 170 ¶¶ 773–74.) But Plaintiff has failed to allege a constitutional violation because she retained no privacy interest in the court filing. S*ee Livingstone v. Hugo Boss Store, Atl. City, NJ*, No. CV2101971, 2021 WL 3910149, at *6 (D.N.J. Sept. 1, 2021) ("Neither is there a reasonable expectation of privacy for publicly recorded court filings."); *c.f. Van Zee v. Hanson*, 630 F.3d 1126, 1129 (8th Cir. 2011) (finding no expectation of privacy in juvenile records that were requested to be disclosed). Such claims against Detective Parkinson are therefore dismissed with prejudice.

---

[20] Plaintiff did not stately clearly in her filing whether she asserts a different factual basis for Count 19 as to these Defendants. As the only facts regarding Castro and Hunter relate to the Tort Action service of process, the Court interprets Count 19 to relate to those same facts, and so qualified immunity applies to Count 19 for the same reasons as the other counts. To the extent Plaintiff incorporates her facts related to Sheriff Maddox in connection with her failure to receive a jury summons (ECF No. 71 at 177 ¶¶ 800–05), Plaintiff fails to allege a violation of a constitutional right to not receive follow up correspondence related to a jury summons.

[21] Moreover, while Plaintiff firmly asserts all Defendants are sued in their individual capacities only, the Second Amended Complaint asserts: "Defendant Rosana Castro, in her official capacity as a Deputy Clerk, County of Chester Office of the Sheriff, had a statutory duty to process papers presented for processing and that duty is non-discretionary." (ECF No. 71 at 62 ¶ 143.) Castro is subject to quasi-judicial immunity for this ministerial task. *See supra* III.B.2.b.

### 3.     The Conspiracy Claims

Of Plaintiff's thirty causes of action, Counts 13, 14, 15, 16, 24, and 25 are all common law conspiracy claims. Additionally, Count 21 is a § 1985(2) claim,[22] and Count 22 is a § 1985(3) claim.[23] Every subsection of § 1985 requires, at minimum, that "two or more persons in any State or Territory conspire." *See* 42 U.S.C. § 1985. Plaintiff therefore must allege a conspiracy for these claims. While the specific Defendants for each count vary, these claims are brought against specific Judicial Defendants, Judicial Staff Defendants, private attorney Defendants, and defendants in the Chester County District Attorney's office.

To allege a conspiracy, a plaintiff must plead that there was "an agreement, understanding, or 'meeting of the minds' to violate the plaintiff's rights." *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009) (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008); *see Mikhail v. Kahn*, 991 F. Supp. 2d 596, 645 (E.D. Pa.), *aff'd*, 572 F. App'x 68 (3d Cir. 2014); *see also Faber v. City of Patterson*, 440 F.3d 131, 134 (3d Cir. 2006) (noting that a conspiracy is a necessary element of a claim under § 1985). "A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged

---

[22] 28 U.S.C. § 1985(2) provides, in relevant part,  that an action for damages may be brought: "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . . with intent to deny to any citizen the equal protection of the laws." Section 1985(2) is concerned with "conspiratorial conduct that directly affects or seeks to affect parties, witnesses or grand or petit jurors." *Brawer v. Horowitz*, 535 F.2d 830, 839 (3d Cir. 1976).

[23] 28 U.S.C. § 1985(3) provides, in relevant part, that an action for damages may be brought: "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."

improper actions." *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480–81 (10th Cir. 1990)). Bare allegations of conspiracy are insufficient. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). Further, a civil rights conspiracy requires "a predicate federal violation." *Dondero v. Lower Milford Twp.*, 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019), *aff'd*, 5 F.4th 355 (3d Cir. 2021).

Plaintiff asserts that certain Defendants intended "to cover up legal malpractice and negligence" of Obermayer. (*E.g.*, ECF No. 71 at 207, 247.) She alleges other Defendants acted in concert to deprive her of her rights through the Criminal Action. (*Id.* at 204.) She also asserts that various Defendants "engaged in an ongoing criminal enterprise" to deprive Plaintiff of her rights and otherwise retaliate against her. (*Id.* at 234, 236, 244.)

Plaintiff does not allege any agreement between the Defendants for any of these claimed conspiracies. Moreover, she has not alleged any facts from which a conspiratorial agreement can be inferred. *See Great W. Mining*, 615 F.3d at 178. The facts that have been alleged do not support an inference of any agreement among Defendants. The conspiracy claims therefore must be dismissed.[24] Because the absence of facts in support of a conspiracy could be remedied through amendment, such dismissal is without prejudice.

### 4.    State Action

Plaintiff's § 1983 claim (Count 19), which she has brought against Defendants including the Obermayer Defendants, requires the Defendants to be acting under color of law. Section 1983 "protects against constitutional violations by the State, but not against wrongs done by individuals." *Mikhail v. Kahn*, 991 F. Supp. 2d at 642 (internal quotation omitted). The question

---

[24] Plaintiff's § 1985 claims further fail because she must allege a "class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (addressing § 1985(3)); *Davis v. Twp. of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999) (addressing § 1985(2)). Plaintiff has not pled any facts from which the Court can infer a class-based discriminatory animus.

therefore is whether the alleged infringement of constitutional rights is "fairly attributable" to the state. *Id.* As the *Mikhail* court explained, a private party can only be characterized as a "state actor" if there is "something more," for which the Supreme Court has articulated various tests. *Id.* at 643 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

The Obermayer Defendants do not become state actors by litigating a case. *See Angelico v. Lehigh Valley Hosp. Inc.*, 184 F.3d 268, 277 (3d Cir. 1999). Plaintiff has alleged conspiracy, and private parties may be liable under § 1983 "only if they have engaged in a 'joint activity' with state actors." *Mikhail*, 991 F. Supp. 2d at 644 (quoting *Hoai v. Vo*, 935 F.2d 308, 313 n.5 (D.C. Cir. 1991)). But here, like *Mikhail*, Plaintiff has not pled facts "from which the Court can infer a meeting of the minds necessary to render any of the otherwise private parties state actors." *Id.* at 647. The Obermayer Defendants therefore are not state actors, and the claim is therefore dismissed without prejudice.

### 5. Malicious Prosecution

While Plaintiff's filing lacks clarity throughout, the Court interprets Count 18 as a malicious prosecution claim. In order to plead a claim for malicious prosecution, the criminal proceeding must have ended in Plaintiff's favor. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). A jury found Plaintiff guilty of violating 18 Pa. St. § 5103.1, and she was sentenced to one year of probation. *Com. v. Maggitti*, CP-15-CR-1735-2023 (Ct. Common Pleas Chester Cnty.).[25] Plaintiff's appeal was dismissed, and her petition for allowance of appeal to the Pennsylvania Supreme Court was denied. *Com. v. Maggitti*, 2859 EDA 2024 (Superior Ct. of Pa.).[26] While the criminal proceeding has not ended in Plaintiff's favor, to the extent collateral

---

[25] The Court takes judicial notice of this docket. *See supra* n.2.
[26] The Court takes judicial notice of this docket. *See supra* n.2.

appeal remains available such that Plaintiff could obtain an outcome in her favor, the Court dismisses this count without prejudice.

### 6. Negligent Infliction of Emotional Distress

Count 26 asserts common law negligent infliction of emotional distress against all Defendants. A cause of action for negligent infliction of emotional distress is recognized where: (1) a defendant owed the plaintiff a pre-existing duty based upon a special relationship; (2) plaintiff was subjected to a physical impact; (3) plaintiff was in a zone of danger; or (4) plaintiff observed a tortious injury of a close relative. *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197–98 (Pa. Super. Ct. 2008), *aff'd*, 26 A.3d 83 (Pa. 2011). Regardless of the category of her claim, Plaintiff must have experienced some form of physical manifestation of emotional suffering. *Id.* at 200. The Second Amended Complaint is devoid of any such allegation, and so the claim is dismissed without prejudice.

### 7. Section 1986

In Count 23, Plaintiff brings a claim under § 1986 against all Defendants for neglecting to prevent the deprivation of her civil rights. However, relief under § 1986 is available only when a predicate wrongful act was actually committed. Where no § 1985 cause of action exists, there cannot be liability under § 1986. *See Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980). Because Plaintiff failed to state a claim under § 1985, her § 1986 claim must be dismissed without prejudice.

### 8. Plaintiff's Demand for Empanelment of Grand Jury

In her oppositions, Plaintiff asserts that she does not seek to compel prosecution of third parties. (*See, e.g.*, ECF No. 188 at 8; ECF No. 192 at 10.) The Second Amended Complaint, however, explicitly demands the empanelment of a grand jury. (ECF No. 71 at 259.) But "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."

*Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Mikhail*, 991 F. Supp. 2d at 646–47 ("[F]ederal courts lack the power to direct the filing of criminal charges."). Plaintiff's demand for empanelment of a grand jury is therefore dismissed.

### 9.      Plaintiff's Claim for Declaratory Judgment

Count 1 of Plaintiff's Second Amended Complaint seeks declaratory judgment asking three questions. (ECF No. 71 at 195–96.) She also has a separate list of seventeen questions on which she seeks declaratory judgment. (*Id.* at 277–78.)

Federal courts have a continuing obligation to assure they have jurisdiction, and thus can raise the issue of standing sua sponte. *Wayne Land & Min. Grp., LLC v. Delaware River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020). A plaintiff seeking declaratory judgment must have standing under Article III. *Khodara Env'l, Inc. v. Blakey*, 376 F.3d 187, 193 (3d Cir. 2004). A plaintiff "has Article III standing if there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotation omitted). Further, the action must be ripe. *See Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462–63 (3d Cir. 1994). Determining whether a declaratory action is ripe requires the Court to look to (1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment. *Khodara*, 376 F.3d at 196.

"For there to be an actual controversy the defendant must be so situated that the parties have adverse legal interests." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 648 (3d Cir. 1990) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2757, at 582–83 (2d ed. 1983)). Several of Plaintiff's posed questions are unrelated to Defendants, and for questions which are related to Defendants, no Defendant contends they have an adverse legal interest. For instance, Plaintiff asks, "Must the Defendants comply with Federal law, Pennsylvania

33

law, the United States Constitution, and the Constitution of the Commonwealth of Pennsylvania?"
(ECF No. 71 at 196.) No Defendant asserts otherwise, and Plaintiff's allegation that they contend
otherwise is insufficient to form the basis of an actual controversy to give this Court jurisdiction.
*See Step-Saver*, 912 F.2d at 648. Plaintiff therefore lacks standing to seek declaratory judgment.

## IV.    CONCLUSION

For the aforementioned reasons, the Motion for Leave to File an Amended Complaint is
denied, and the Motions to Dismiss are granted. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**